# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CO., DANIEL HORANYI, JEANETTE LEE, & LAUREN HAVINS,<br><br>Defendants. | Case No.: 3:24-cv-2251-BAS-MSB |

**DECLARATION OF LUCAS MARKOWTIZ IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF**

I, Lucas Markowitz, being of lawful age, declare as follows.

1. I serve as lead counsel on behalf of my firm, Mitchell Sandler LLC, which is retained by Plaintiff Luminate Home Loans, Inc. ("Luminate").

2. On December 4, 2024, following the Court's recording of the Verified Complaint filed in this case, I sent cease and desist letters individually via email to Better Mortgage Company ("Better") through its General Counsel and to each of Daniel Horanyi, Jeanette Lee, and Lauren Havins ("Individual Defendants") ("collectively "Defendants"), attaching copies of the stamped Complaint. *See, e.g.* Cease and Desist Letter to Better attached as Exhibit 1.

3. The letter instructed Defendants to preserve all evidence related to this dispute and to cease and desist their misappropriation of Luminate's trade secrets and confidential and proprietary information, the violation of the Individual Defendants' employment obligations and fiduciary duties to Luminate, and the Defendants' tortious interference with Luminate's employment contracts with its other employees. *Id.*

4. Better referred this matter to outside counsel, Jeremy Suiter, at the firm of Stradling Yocca Carlson & Rauth LLP and the Individual Defendants also retained

counsel who would represent them all, Jason Murtagh at Buchanan Ingersoll & Rooney PC.  *See* Email Exchanged Between Counsel attached as Exhibit 2.

5. Over the course of the last three weeks, we engaged on behalf of Luminate with counsel for the Defendants through multiple meetings and emails in an effort to manage this matter without filing a motion for injunctive relief with the Court.  *Id.*

6. Luminate proposed entering into a stipulated injunction between the Parties and offered to craft this more narrowly than it would otherwise seek from the Court to limit the scope of remaining disputes and to reserve that Defendants were not admitting to any of the allegations made in the Complaint.  *See id.*

7. Luminate further offered, given the Parties apparent interest in working towards a full resolution of the case, that such a stipulated injunction could be drafted and agreed upon but not filed with the Court unless upcoming efforts to reach a resolution of this dispute failed.  *Id.*

8. Better was unwilling to agree to these terms, referencing that they would only enter into a private agreement through which they would enact the relief proposed by Plaintiff – collecting, segregating, and preventing further use of any alleged Luminate trade secrets and confidential and proprietary information, as well as notifying any employees they were recruiting from Luminate that they were not to bring such materials from Luminate, and having any employees once hired sign an affidavit that they did not bring any such material from Luminate.  *Id.*

9. This framework was not agreeable to Luminate as it provided no mechanism for monitoring and enforcement to confirm Defendants' compliance or hold them accountable for violations.  Given that the Verified Complaint establishes Better's prior direct requests from Luminate's employees to provide this material and that Better used these materials to establish competing retail loan operations, as well as manipulating the Individual Defendants' trusted positions at Luminate to solicit numerous employees while at the Company, Luminate was skeptical of any

1  representations that Better would now fully comply with such obligations without
2  oversight or sufficient penalties for noncompliance.

3  10. Better's counsel provided a written proposal of the actions they were
4  prepared to commit to via private agreement on Friday, December 20, 2024. *See id.*
5  Their proposal confirmed they did not agree to any oversight of their collection
6  efforts of Luminate's materials and that there was not enforcement elements or
7  penalties for failing to comply. *See id.* It also entitled Better to unilaterally back out
8  of this process and continue using this material with only three days' notice. *See id.*
9  Moreover, Better demanded as a condition for their proposal that Luminate also
10 provide Better with additional trade secrets and confidential and proprietary
11 information regarding its NEO division, which they termed as belonging to NEO,
12 despite NEO never having been its own independent entity or company. *See id.* This
13 also throws into question what material Better represented they would actually
14 preserve, collect, and segregate regarding Luminate's trade secrets and confidential
15 information if they held that much of the material was NEO data, even though that
16 was solely a division within Luminate. *See id.* Defendants' proposal further reserved
17 that their segregation efforts would only include information obtained by individuals'
18 regarding the period in which they worked at Luminate, without preserving
19 Luminate's rights to the trade secrets and confidential and proprietary information
20 for the NEO division that Luminate purchased when acquiring the division from
21 Celebrity Home Loans in December 2022. *See id.*

22 11. Defendants' counsels designated during these discussions that they
23 would accept service on behalf of their clients. *See id.* Moreover, they identified
24 that based on Luminate's good faith efforts to reach a reasonable resolution without
25 motion practice, if a motion for injunctive relief was deemed necessary, they would
26 not assert a defense that Luminate was not diligent in seeking relief from the Court
27 during this period in the context of analyzing irreparable harm. *See id.*

28 12. Our office has assisted Luminate since early 2024 with efforts to modify

their business operations through which the Company's NEO division could become its own corporate entity as a wholly owned subsidiary of Luminate's parent company, Luminate Bank. Numerous contracts were drafted and business plans developed by Luminate, then reviewed with the NEO division managers, to effectuate this restructuring, but it has not occurred to date.

13. Luminate experienced additional employee departures from its NEO division on December 9, 2024, to join Better. Communications from the Company's remaining NEO managers demonstrate Defendants intend to effectuate their plans to bring most, if not the entirety, of Luminate's NEO division to Better by the end of February, 2025 as they scale up their operations.

14. Luminate's investigation into the Defendants' misconduct is ongoing, including its analysis of the work devices and monitoring records of Luminate's NEO managers who surreptitiously coordinated with Better. A review of the access records for Sydney Lynn, a now former Direct of Finance at Luminate revealed that she downloaded numerous files to a flash drive on October 25, 2024. *See* External Drive Download Record attached as Exhibit 3. This occurred shortly after Luminate terminated other managers of its NEO division and, if Ms. Lynn's termination had also been imminent that day, Defendants could have lost access to this invaluable Company data.

15. Luminate carefully protects its confidential information by maintaining it on secure data platforms and servers accessible only to Luminate employees with the requisite authorization to access the information and requires such employees to acknowledge the sensitive and protected nature of the material they are entrusted with as well as their obligations to safeguard it.

16. Further analysis by Luminate's IT Department of this activity confirmed that Ms. Lynn downloaded 3,998 Luminate files to this flash drive containing trade secrets and confidential and proprietary information about the Company, including training materials, employee roster and salary lists, employment and third-party

4

contracts, business strategies, loan processing procedures, loan profit margins, financial details for Luminate's divisions and branches, economic models, revenue and performance reviews, completed loan information, secondary market sales data, loan lead lists and leads. *See* Spreadsheet Detailing Contents of Flash Drive attached as Exhibit 4. Upon information and belief, this includes nonpublic information on Luminate borrowers. *See id.*

17. Luminate terminated Ms. Lynn's employment on December 5, 2024. Upon terminating Ms. Lynn, the Company notified her that it was aware of the flash drive she created and the extensive sensitive data she obtained. Luminate's counsel then sent Ms. Lynn a formal Separation Letter, which included a demand for the immediate return of the flash drive and her Luminate work computer in prepaid shipping packages provided by the Company. *See* Separation Letter attached hereto as Exhibit 5.

18. After follow-up efforts by Plaintiff's counsel, Defendant Lynn finally shipped her Luminate work computer back to the company on December 16, 2024. *See* Email Communication with Defendant Lynn attached as Exhibit 6. She also confirmed her continued possession of the flash drive and alleged that she had not disseminated its contents with outside parties such as Better or other former Luminate employees. *See id.* Yet Defendant Lynn did not agree to return this flash drive and its data to Luminate, nor did she consent to sending it to a secure third-party forensic discovery vendor. *See id.*

19. During a meeting with Defendants' counsel on December 17, 2024, regarding the proposal for a stipulated injunction in this case, Defendants' counsel identified that, while Ms. Lynn had not formally come to work for Better as of yet, they expected she would be officially hired soon. They made no response regarding Luminate's ongoing efforts to retrieve this flash drive with troves of valuable company data.

20. On December 23, 2024, Luminate filed suit against Ms. Lynn in the

5

United States District Court for the District of Nevada, where she resides, for statutory and common law claims regarding her participation in this scheme and her retention of the flash drive. The company is also seeking a Temporary Restraining Order and Preliminary Injunction in that jurisdiction to compel Ms. Lynn to return the flash drive.

I declare under the penalties of perjury pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct.

                                                */s/ Lucas Markowitz*
                                                Lucas Markowitz

Executed this 23rd Day of December, 2024