1   JASON E. MURTAGH (SBN 294830)
    jason.murtagh@bipc.com
2   BUCHANAN, INGERSOLL & ROONEY, LLP
    600 West Broadway, Suite 1100
3   San Diego, CA 92101-3387
    Telephone:  619 346 7592
4   Facsimile:  619 702 3898

5   Attorney for Defendants
    Daniel Horanyi, Jeanette Lee and Lauren Havins

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10                          **SAN DIEGO**

11   LUMINATE HOME LOANS, INC.,          Case No.:  24-cv-2251-BAS-MSB

12                   Plaintiff,          **DECLARATION OF CHRIS
                                         LEDLIE IN SUPPORT OF
13           vs.                         DEFENDANTS' OPPOSITION TO
                                         PLAINTIFF'S EMERGENCY
14   BETTER MORTGAGE CO.,                MOTION FOR A TEMPORARY
     DANIEL HORANYI, JEANETTE            RESTRAINING ORDER AND
15   LEE, & LAUREN HAVINS,               PRELIMINARY INJUNCTION
                                         AND FOR EXPEDITED
16                   Defendants.         DISCOVERY**

17

18                                       Complaint Filed:  December 2, 2024

19

20   I, Chris Ledlie, declare as follows:

21       1.      I am over the age of 18 and competent to testify to the matters set forth

22   herein. The statements contained in this declaration are based on my personal

23   knowledge, and if called as a witness, I could and would testify competently thereto.

24       2.      I submit this declaration in support of Defendants' oppositions to

25   Luminate Home Loans. Inc.'s ("Luminate") Motion for a temporary restraining order,

26   preliminary injunction, and expedited discovery.

27       3.      I have two decades of experience in the mortgage industry. I am a co-

28   founder, member and manager of Neo Services LLC ("NEO"), a California limited

                                        1

1  liability company.

2      4.     In or around January of 2021, I and others formed Neo Services LLC as

3  an independent company. NEO was designed to address inefficiencies in retail

4  mortgage operations.

5      5.     Since its formation, it is my understanding and belief that NEO has

6  continually owned its own intellectual property, and all other assets of its mortgage

7  business, including its "Neo Home Loans" trademark.

8      6.     While operating as a separate unit under the umbrella of Celebrity Home

9  Loans in 2021-2022, NEO maintained its independence, trademarks, and proprietary

10  information, leveraging Celebrity's infrastructure solely for compliance and

11  administrative tasks. NEO developed its proprietary "The NEO Way" workflow and

12  continued operating autonomously, despite using certain shared services.

13      7.     I understand that Luminate alleges that it "acquired" NEO's intellectual

14  property from Celebrity.  But Celebrity never held an ownership interest in NEO or

15  its assets, including its intellectual property. In fact, to the best of my knowledge, NEO

16  has never authorized the sale of any NEO intellectual property to any entity (including

17  Celebrity, Luminate or Better).

18      8.     Upon information and belief, it would be impossible for NEO's

19  intellectual property to be sold without my knowledge because I am one of its

20  managing members under the LLC Agreement.

21      9.     I understand that Luminate has alleged that NEO "utilized Luminate's

22  extensive trade secrets and the insight … acquired from Luminate."  I do not believe

23  that this statement is true.  From the time of its formation, I and other managers of

24  NEO developed and used proprietary financial models, workflows, and training

25  programs that became, and continue to be, the cornerstone of NEO's operations,

26  whether at Celebrity, Luminate, or Better. Luminate and NEO operated separately,

27  and NEO did not adopt Luminate's processes (which would not have been useful or

28  relevant to the vast majority of NEO's business anyway).

DECLARATION OF CHRIS LEDLIE
Case No.:  24-cv-2251-BAS-MSB

10.     On or about August 8, 2022, Luminate CEO Taryn Reuter and Luminate Co-Founder Eric Lovins met with me and other NEO leaders, including Danny Horanyi, Ryan Grant, and Mark Robinson, to explore the possibility of collaboration.

11.     These initial discussions set the stage for key meetings that followed. On or about August 29, 2022, I and other members of NEO's leadership visited Luminate's corporate office to discuss a potential partnership in greater detail. During this meeting, our NEO team and Mr. Reuter's Luminate team addressed a range of topics, including stock grants, warrants, profit-and-loss structures, and the possibility of NEO acquiring Luminate's existing retail mortgage arm and production team.

12.     A follow-up meeting occurred on or about September 15, 2022, where NEO and Luminate continued refining the terms of their partnership.

13.     At the time we joined Luminate, its retail mortgage division was relatively small and inactive, with less than half of the annual production of NEO.

14.     NEO had a fully independent profit and loss sheet at Luminate, and we were responsible for our own business.

15.     During our time at Luminate, NEO overwhelmingly utilized only materials it had developed itself, including its own proprietary financial models, workflows, and training programs.

16.     On October 25, 2024, I and other members of NEO's leadership team, including Daniel Horanyi and Ryan Grant, attended a meeting with Mr. Reuter and other members of Luminate's leadership team via video conference.  As Mr. Horanyi began to speak, Mr. Reuter told Mr. Horanyi that he was terminated. Mr. Reuter also terminated Mr. Grant. I was surprised by this development, as I believed that negotiations with Luminate were ongoing.

17.     Mr. Reuter then said I would not be terminated, but instead would be kept on to oversee the transition of the remaining NEO team to Better Mortgage Corp. ("Better").

3

DECLARATION OF CHRIS LEDLIE

Case No.:  24-cv-2251-BAS-MSB

18.    That same day, Mr. Reuter sent a company-wide email stating that Luminate would wind down NEO, with a completion date by the end of February 2025.

19.    On or about October 29, 2024, I met with Mr. Reuter to discuss NEO's transition to Better. Among other things, we discussed the expenses and severance packages for separated NEO employees. Mr. Reuter told me Luminate did not have an interest in recruiting or retaining any NEO employees.

20.    On or around October 30, 2024, Mr. Reuter sent an email to a third party with a copy to me, stating that "the NEO group will be transitioning to Better."

21.    On or around November 1, 2024, Mr. Reuter emailed me his approval to send desk rentals and Marketing Services Agreement information to external sources.

22.    On or around November 5, 2024, Courtney Nuness, Luminate's Chief of Staff, emailed me a list of items that NEO employees should leave at Luminate during their transition to Better. She gave her approval for employees to send Marketing Services Agreement, leases, and desk rentals.

23.    On or around November 8, 2024, I met with Luminate's leadership team, including Ms. Nuness, to discuss NEO's financials. As noted previously, prior to its termination, NEO accounted for more than 50% of Luminate's production.

24.    On or around November 11, 2024, Ms. Nuness sent an email recapping our NEO transition meeting. In that email, she stated that effective December 1, 2024, there should be no more employee loans at Luminate Home Loans because "they can start at Better."

25.    On or around November 12, 2024, Ms. Hoefener emailed me to express remorse about not being able to retain a particular NEO employee, but said "my hope is Better may be able to take her on for the time being."

26.    Also on or around November 12, 2024, I email Ms. Nuness an initial transition roster titled "Better Move Roster" which included a column for Better start dates and titles. In response, Ms. Nuness suggested adjustments to those dates in order

DECLARATION OF CHRIS LEDLIE
Case No.:  24-cv-2251-BAS-MSB

1    to avoid offboarding NEO employees during Christmas.

2        27.    On or around November 18, 2024, Ms. Nuness emailed me an updated

3    version of the "Better Move Roster" and suggested that NEO employees be offboarded

4    in early December.

5        28.    On or around November 20, 2024, Ms. Nuness approved my proposed

6    offboarding plan for NEO employees.

7        29.    On or around November 27, 2024, I sent an internal email to Luminate

8    with a roadmap for the NEO transition to Better.

9        30.    On or around December 2, 2024, Ms. Nuness cancelled a meeting I had

10    scheduled to go over the action items for the NEO winddown.

11        31.    On or around December 5, 2024, Mr. Reuter told me he terminated

12    NEO's Director of Finance Sydney Lynn the day before. He admitted he did not want

13    to terminate Ms. Lynn, and he had done so only because his "attorneys" insisted. I

14    asked him if there was anything I needed to do differently, and he said I did not.

15        32.    Later that same day, I sent an email to Mr. Reuter stating, in sum or

16    substance, "I want to get an update out that yesterday was Syd's last day at Luminate.

17    She is going to be transitioning to Better effective ASAP to focus on preparing for our

18    team's transition." Mr. Reuter approved my email.

19        33.    On or around December 6, 2024, I called Mr. Reuter and Mr. Lovins to

20    express my fear of personal liability and to confirm that they still wanted me to lead

21    the NEO transition from Luminate to Better. Both Mr. Reuter and Mr. Lovins said I

22    did not have any liability, and I was fulfilling their expectations.

23        34.    Later that evening, I received a text message from Mr. Lovins saying he

24    admired the way I have handled this situation.

25        35.    On or around December 9, 2024, I received an email from Brit Scott,

26    Luminate's director of vendor compliance, who told me I could share documents she

27    had prepared to transfer NEO's utilities and printer leases to Better.

28

DECLARATION OF CHRIS LEDLIE
Case No.:  24-cv-2251-BAS-MSB

36.    On or around December 10, 2024, I sent an email to Mr. Reuter and Ms. Nuness asking who we should transfer the NEO domain to at Better.  Both responded and said that I should ask Better to email Mike Pelham, Luminate's Head of Information Security.

37.    On or around December 12, 2024, I emailed an updated "Better Move Roster" within Luminate.

38.    By around December 16, 2024, I began receiving noticeably less guidance from Luminate regarding NEO's wind down and transition to Better.

39.    On or around December 23, 2024, I received a text message from Mr. Reuter and Mr. Lovins again complimenting me on how I was handling the situation.

40.    On or around December 31, 2024, I emailed another updated "Better Move Roster" within Luminate.

41.    On or around January 3, 2025, I sent a resignation email to Luminate due to my increasing fear of facing liability from Luminate. Mr. Lovins called that same day to thank me for my work.

42.    I do not possess any of the emails referenced in my declaration, but copies should be available on Luminate's email servers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2025 in Southlake, Texas.

_____

Chris Ledlie

DECLARATION OF CHRIS LEDLIE
Case No.:  24-cv-2251-BAS-MSB