# **EXHIBIT A**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC., | Case No.: 3:24-cv-2251-BAS-MSB |
| Plaintiff, | **DECLARATION OF TARYN REUTER IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF** |
| v. | |
| BETTER MORTGAGE CO., DANIEL HORANYI, JEANETTE LEE, & LAUREN HAVINS, | |
| Defendants. | |

## DECLARATION OF TARYN REUTER IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

I, Taryn Reuter, being of lawful age, declare as follows.

1.     I am over the age of 18 and competent to testify to the matters set forth herein. The statements contained in this declaration are based on my personal knowledge, and if called as a witness, I could and would testify competently thereto.

2.     I submit this declaration in support of Plaintiff's Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery ("Plaintiff's Motion") in response to claims raised by Defendants in their Opposition Briefs and accompanying declarations, in addition to the facts and exhibits I attested to previously in Plaintiff's Verified Complaint.

3.     I serve as the Chief Executive Officer of Plaintiff Luminate Home Loans, Inc. ("Luminate" or "the Company").

4.     Luminate has operated as a qualified, licensed, mortgage lender since 1998, first operating as the entity AMEC Home Loans before rebranding to Luminate Home Loans, Inc. in 2020.

5.     During those more than twenty years of operations, through the investment of our time, money, ingenuity and business sense, Luminate's retail loan operations expanded considerably in terms of geographic scope, employees, offices,

1

volume, and revenue.

6.      Luminate always closely guarded our policies, procedures, contracts, business models, loan offerings, and pricing. Protecting this information facilitated the growth we have achieved.

7.      Luminate carefully protects its confidential information by maintaining it on secure data platforms and servers accessible only to Luminate employees with the requisite authorization to access the information and requires such employees to acknowledge the sensitive and protected nature of the material they are entrusted with as well as their obligations to safeguard it.

8.      Contrary to Defendants' allegations, Luminate's retail loan operations were robust prior to Luminate's Asset Purchase Agreement with Celebrity Home Loans LLC ("Celebrity") which led to the creation of Luminate's NEO division. A true and correct copy of that Asset Purchase Agreement was attached as Exhibit A to Plaintiff's Motion. In 2021 and 2022, Luminate originated over $2 billion through its retail loan operations with over 6,500 mortgage units. At the time of acquiring the NEO Division from Celebrity, these retail loan operations included nearly twenty branches, and employed more than two hundred people around the country. Luminate had also obtained Fannie Mae GSE approval, and Freddie Mac GSE approval.

9.      Luminate's strong financial position and continuing growth enabled it to consider opportunities to absorb branches or divisions from struggling competitors such as Celebrity. Defendant Horanyi, Ryan Grant, and Chris Ledlie, all acknowledge in their respective declarations that Celebrity was struggling financially in 2022 despite the presence of its NEO Home Loans Division. Celebrity effectively closed in February 2023 following wholesale employee layoffs and suspension of mortgage lending licenses.

10.     Celebrity's difficulties were well known in the industry during 2022 as it announced closures of large portions of its business and layoffs throughout the

year. Therefore, Luminate began investigations into whether parts of Celebrity's business and assets might be a good fit for an acquisition to continue expanding Luminate.

11. To explore this potential opportunity, Luminate began communications with Celebrity executives and managers. This included Daniel Horanyi, Chris Ledlie, and Ryan Grant, who served as Division Presidents at Celebrity for its NEO Home Loans Division but included many others. Celebrity approved this process and sanctioned the exploration of this opportunity to avoid their potential closure of the division and layoff of its employees, as was occurring with the rest of Celebrity's business. Celebrity's NEO Division had contributed to their significant company losses, but we saw potential to turn it into a profitable asset through better stewardship.

12. The mutual interest in this potential acquisition by Luminate led to further discussion and business analysis with Luminate entering into Nondisclosure Agreements with Celebrity and relevant managers to assess the value and costs associated with the purchase.

13. Mr. Horanyi attached a copy of his personal Nondisclosure Agreement (NDA) to his declaration that he signed to participate in those conversations and analyses. Contrary to Defendants' emphasis of Mr. Horanyi including "NEO Home Loans," within his signature block, the Agreement itself does not identify NEO Home Loans as the corresponding party and there is no registered company by that name. He signed the agreement personally, but the incorporated entity Defendants now claim to be the owner of some of the information at issue in this case was NEO Services LLC, not NEO Home Loans. NEO Services LLC did not sign this or any other agreements with Luminate.

14. Celebrity's NDA with Luminate authorized sharing extensive business information, operational details, and performance data so Luminate could evaluate the assets of this potential acquisition and the parties could arrive at an appropriate

3

price. A true and correct copy of that NDA between Luminate and Celebrity is attached hereto as Exhibit 1. The acquisition process was conducted openly with Celebrity's knowledge and approval given its financial performance was forcing closures and layoffs across its operations, unlike the facts related to the Individual Defendants' coordination with Better.

15.     NEO Services LLC never entered into any nondisclosure agreement as part of this acquisition analysis, it did not agree to share any of the information Luminate reviewed, which Defendants now baselessly allege were its property rather than Celebrity's. Moreover, NEO Services LLC never had any partnership, contract, or other formal business relationship with Celebrity as part of Celebrity's operation of its NEO Division, and it did not have any contractual relationship with Luminate regarding Luminate's NEO Division. Neither Luminate nor Celebrity had any written agreements with Neo Services LLC.

16.     Daniel Horanyi was an employee of Celebrity prior to the creation of Celebrity's NEO Division and prior to the incorporation of the company entitled NEO Services LLC, which Mr. Horanyi, Mr. Grant, and Mr. Ledlie identify themselves as founding in January 2021 and being the members of.

17.     NEO Services LLC is not a licensed mortgage lender. It does not have employees, it does not conduct any retail loan operations, it does not maintain offices, it could not contract with vendors for Luminate's NEO Division. It did not own the rights to any data stemming from Luminate's retail loan operations and the performance of Luminate's employees within its NEO Division. It would violate federal and state mortgage lending laws for NEO Services LLC to engage in the services central to this case.

18.     When Luminate engaged in negotiations to acquire these assets from Celebrity and hire Defendant Horanyi along with many others who were previously employed by Celebrity, there was never a discussion of rights or information belonging to NEO Services LLC. It was clearly articulated that all individuals would

be solely employed by Luminate and the Company would be operating this group as a division within Luminate's existing retail lending operations rather than breaking up existing employee teams or managerial relationships to intersperse them with Luminate's existing operations. Luminate's Organization Chart, which needed to be available to government regulators, shows how its NEO Division fit within the overall company structure, which was understood by the incoming employees. *See* Luminate Organization Chart, a true and correct copy of which is attached as Exhibit 2.

19.     Luminate at all times retained authority and control over the operations of its NEO Division. This was not a partnership as Defendants have described it. While Luminate fostered a collaborative environment and accepted input from managers, it had final say on all business operations including but not limited to the compensation of employees (including the Individual Defendants and other NEO managers), the pricing of loans, what products to offer, the allocation of costs for branches, and sole authority to enter into contracts whether with vendors and counterparties or for other business expenses.  Luminate paid for all costs associated with the Domains for its NEO Division as Division Presidents, such as Ryan Grant and Josh Mettle, submitted those costs to Luminate for reimbursement, which were approved. *See* Domain Reimbursement Records, a true and correct copy of which is attached as Exhibit 3.

20.     This NEO Division could not function independently from Luminate. Beyond the licensures of Luminate which were required to even engage in this field, Luminate provided all business operations necessary for its NEO Division to work. This included, without limitation, finance, accounting, funding capacity and planning, payroll, contract administration, benefits administration, hiring and onboarding, performance management, conflict resolution, loan product expansion and roll-out, product oversight, mortgage operations oversight and management, investor relations, mortgage trading and hedging, system administration and

automation, information security, desktop and network support, compliance, licensure administration for loan originators and branches, training, quality control, audit administration, risk mitigation, legal, communication, marketing and social media oversight and creation, mortgage loan operations (manufacturing) appraisal desk management, disclosure desk management, post-closing and shipping activities, selling and servicing loans, including but not limited to the administration of state and federal exams and audits and the consolidated oversight of Luminate Bank.

21.     The NEO Division and its managers could not cut checks, file taxes, interact with governing bodies, agencies, and regulators, approve expense reports, service or sell loans, and administer core functions of business operations. Their responsibilities were limited to manufacturing parts of a mortgage loan in process and day-to-day managerial oversight of the employees in the NEO Division.

22.     This business structure was clearly disclosed to and understood by all NEO Division managers prior to the acquisition and maintained throughout these employees' time working at Luminate.

23.     For example, when discussing one of the vendor contracts, Defendant Horanyi confirmed via email that, when signed, "NEO was officially a registered DBA of the legal entity Celebrity Home Loans," but "the registered DBA 'NEO' under Luminate Home Loans has never signed a contract with Cornerstone." *See* Horanyi Email and Cornerstone Contract, a true and correct copy of which is attached as Exhibit 4. The signatory on that contract which listed the client as "NEO Home Loans," was one of its managing directors, Jeff Carter, who ultimately did not come to Luminate from Celebrity. *See id.*

24.     Prior to Defendant Horanyi and other employees joining Luminate, I met with them to discuss the details of their employment. I conveyed clearly that they would be Luminate employees and Luminate would retain all rights related to the information it purchased from Celebrity as well as any information the employees gained access to during their employment with Luminate. Defendant Horanyi's

contract reflects this fact. I did know Defendant Horanyi registered the trademark for the NEO Home Loans insignia that Celebrity's NEO division used and we agreed Luminate's NEO Division should use the same design to maintain branding. That was the only area where there was even an arguable claim that any aspect of Celebrity's NEO division, including the relevant intellectual property, was not wholly owned by Celebrity. All contracts, such as for office leases and printers were assigned from Celebrity to Luminate as part of this acquisition. Defendant Horanyi did not reserve rights to that trademark or any other information when entering into his employment contract. We discussed that these employees would all be at-will and free to leave Luminate at any time if they did not like the change from Celebrity. In Defendant Horanyi's case, we agreed and put into his contract that after leaving, he would be allowed to solicit specific employees he helped bring over from Celebrity, if any. He contractually agreed he would not solicit any other individuals employed by Luminate because of the privileged information he was given access to about the Company and its employees as a Division President. I was also clear he would only be allowed to solicit people he helped bring to Luminate if he did things the right way by coming to us first about his departure, not breaching his contract, and without taking our information. In no terms did he have the ability to surreptitiously solicit any employees when considering or preparing to announce his resignation. He certainly did not have authority to use Luminate's proprietary information to solicit anyone or to direct employees to get reimbursed from Luminate when hearing his solicitation pitch.

25. The business relationship between Luminate and its NEO Division was clearly articulated to the Individual Defendants and other NEO division managers at every turn. For example, in July 2024, Chris Ledlie and Sydney Lynn sought to finalize a recruiting contract agreement and get approval from Luminate to pay the recruiting firm that assisted with the hiring of a loan coordinator to Luminate's NEO Division. *See* Recruiting Invoice Email, a true and correct copy of which is attached

as Exhibit 5. Luminate's Director of Marketing, Risk, and Vendor Compliance, Brittney Scott, who confirmed Luminate would pay this recruiting costs for its employee, reiterated that "that NEO is not a legal entity (they are presently a dba) and is not authorized to enter into or sign agreements in their name or in the name of LHL." *Id.* Lauren Havins was similarly advised when seeking Luminate's approval to proceed with a contract for the NEO Division for a vendor to assist with regulatory compliance that included confidentiality provisions for the protection of Luminate's business and customer information. *See* Lenders Compliance Group Email, a true and correct copy of which is attached as Exhibit 6. She was informed that "the draft [contract] will need to be updated to reflect Luminate as the Company/Client as NEO is not a legal entity and is not authorized to enter contracts.  If the services are for the exclusive use of NEO, we may be able to reference NEO as a dba of LHL." *Id.*

26.     After acquiring its NEO Division, Luminate considerably expanded and improved its operations, turning a division with millions in losses under Celebrity that continued to struggle in its first few months with Luminate, into a profitable operation. Luminate accomplished this through introducing an entrepreneurial operating model, Traction - EOS, and business consultant and facilitator, which Defendant Horanyi referred to numerous times as 'life changing.' Luminate also hired additional employees to expand operations and directed valuable changes to the leadership structure and staffing model the NEO Division previously utilized.

27.     During 2024, Luminate explored the potential to spin its NEO business off into a wholly owned subsidiary of its parent company, Luminate Bank, which would have been owned and run by the NEO managers, including Defendant Horanyi, rather than continuing as simply a division.

28.     Luminate provided these managers with incredible insight into how this process could be done and what their obligations moving forward would be to run it, as well as providing additional access to information about Luminate as a whole to understand how the business itself runs beyond the individual NEO Division. Based

on the substantial interest they expressed, Luminate devoted considerable time and costs to effectuating this potential business change. Luminate incurred significant attorneys' fees in preparing for this process and many contracts were drawn up and negotiated between Luminate and the NEO managers, including Defendant Horanyi.

29.     Of course, there would be no reason to engage in such extensive spin off discussions if NEO was, as Defendants now claim, a separate entity already.

30.     The contracts Luminate created for this purpose were subsequently taken by Defendants to try to create the same type of arrangement at Better instead of with Luminate.

31.     Defendants did not disclose their discussions with Better as alleged in their declarations. On the contrary, I first confronted Defendant Horanyi and the other NEO managers about potential discussions they may be having with Better in July of 2024. I did so after Luminate's Chief Financial Officer, Bekka Gustafson, flagged that one of our attorney bills related to our efforts to create the wholly owned subsidiary included time labeled as "Call with Danny on potential Better mortgage deal." *See* Attorney Invoice, a true and correct copy of which is attached as Exhibit 7. This billable work first appeared on May 31, 2024.

32.     When confronted regarding using Luminate's resources to seek legal advice related to this supposed Better Mortgage deal, Defendant Horanyi and the other NEO managers claimed that someone from Better approached them about leaving Luminate and going to Better, but that they told them they were not interested. The NEO managers recommitted to proceeding with plans to create a wholly owned subsidiary company for them as part of Luminate Bank and that they were not exploring any other opportunities.

33.     In the months that followed, the NEO managers became less engaged in this process and their interest in completing the spin off waned. In early October I asked Defendant Horanyi and the other managers again if they were talking with Better or any other competitors about potentially leaving given their focus with

Luminate seemed to be lacking. They staunchly denied it. At no point did the Individual Defendants apprise me or other Luminate executives that they intended to leave or that they sought to move any portion of the NEO Division to another mortgage lender.

34. Their actions during this period raised suspicions among me and the rest of Luminate's executive team, leading to a review of their work activity. This ultimately revealed their extensive coordination with Better.

35. By October 25, 2024, Luminate had a small but sufficient amount of evidence to warrant the termination of these NEO managers, however, the scope of their misconduct including the extensive and deliberate distribution of Luminate's trade secrets and confidential and protected information to Better detailed in the Complaint was not yet known.

36. Based on the termination of the NEO managers and their demonstrable efforts to work against Luminate in hopes of transitioning the operations of Luminate's NEO Division to Better, Luminate determined on October 25, 2024, that it would restructure its operations. Luminate began planning to reorganize its workforce to bring existing NEO Division team members within other areas of Luminate's retail loan operations. Those retail sales operations continue to be extensive for Luminate outside of the NEO Division.

37. At no point did Luminate consent to the solicitation of its employees or the sharing of its confidential information with Better. Luminate does not restrict its individual employees though, and people who wished to leave for Better have that right. Luminate confirmed it would work with those people who wanted to resign to effectuate a smooth offboarding but has endeavored to retain as much of its workforce as is practicable in the face of the departures.

38. Luminate understands it has an obligation to mitigate damages stemming from Defendants' legal violations. It has attempted to do that in such areas as are appropriate, including through discussion with Defendants about taking over

specific leases for offices where Defendants have been successful in targeting Luminate's workforce. Those solicitations though were not done in fair competition. Rather Luminate learned they were orchestrated by the NEO managers, in coordination with Better, for months while the managers continued to be Luminate employees. They used legitimate business meetings of Luminate's as cover for these extensive solicitation efforts that are continuing to bear fruit. Moreover, the Luminate branches and high producing loan officers they solicited were not limited to employees who came to Luminate from Celebrity. Having months of a head start in recruiting efforts is an invaluable asset in this competitive industry. It is also a significant advantage when the employee is given a false negative impression by a high-ranking supervisor that Luminate may not be the best place for the employee moving forward. However, Luminate has been successful in its efforts to retain some of these valuable employees, such as the top overall producer, Caleb LeGrande, who did not join Luminate from Celebrity, yet was solicited by Defendant Horanyi on a Luminate trip to Dallas and initially intended to leave for Better before reconsidering.

39. Luminate's investigation into the Defendants' misconduct is ongoing, including its analysis of the work devices and monitoring records of Luminate's NEO managers who surreptitiously coordinated with Better.

40. Luminate experienced additional employee departures from its NEO division on December 9, 2024, to join Better and continues to experience coordinated group departures. Communications from the Company's remaining NEO managers demonstrate Defendants intend to effectuate their plans to bring most, if not the entirety, of Luminate's NEO Division to Better by the end of February 2025, as they scale up their operations. This is causing severe interruption to Luminate's lending operations and will affect its revenue and customer relationships long into the future.

41. Defendants are not only targeting employees of Luminate to bring to Better but are also targeting the company's customers and leads. These borrowers are being solicited to move their business to Better under the misleading descriptions that

there is a "merger" happening, or that this is consensual by Luminate, or through disparaging marks they make about Luminate to borrowers. *See* Email Exchanges on Transition Communications to Borrowers, a true and correct copy of which is attached as Exhibit 8.

I declare under the penalties of perjury pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct.

*Taryn Reuter*
Taryn Reuter (Jan 17, 2025 21:14 CST)

Taryn Reuter

Executed this 17th Day of January, 2025

# Declaration of Taryn Reuter - Final

| | |
|---|---|
| Created: | 2025-01-18 |
| By: | Lucas Markowitz (lmarkowitz@mitchellsandler.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAkIYEdYYiMnTrIC6U4zOGYSCqmXeEKW5h |

## "Declaration of Taryn Reuter - Final" History

📄 Document created by Lucas Markowitz (lmarkowitz@mitchellsandler.com)
2025-01-18 - 2:45:38 AM GMT

✉ Document emailed to Taryn Reuter (taryn.reuter@goluminate.com) for signature
2025-01-18 - 2:45:41 AM GMT

📄 Email viewed by Taryn Reuter (taryn.reuter@goluminate.com)
2025-01-18 - 3:13:40 AM GMT

🖊 Document e-signed by Taryn Reuter (taryn.reuter@goluminate.com)
Signature Date: 2025-01-18 - 3:14:12 AM GMT - Time Source: server

✅ Agreement completed.
2025-01-18 - 3:14:12 AM GMT

**Adobe** Acrobat Sign

# EXHIBIT 1

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

Celebrity Financial, Inc. a U.S. Virgin Islands corporation (*"CFI"*), and
<u>Luminate Home Loans / Luminate Bank</u>(*"Interested Party"*), in consideration of the mutual covenants of
this Confidentiality and Nondisclosure Agreement (*"Agreement"*), hereby agree as follows:

1. In connection with discussion and/or negotiations between the parties regarding potential business transactions between CFI and Interested Party (*"Subject Matter"*), each party to this Agreement may wish to disclose its proprietary, confidential, or trade secret information (*"Information"*) to the other party on a confidential basis. The disclosing party may consider such Information confidential, proprietary, or trade secret under this Agreement because it has developed the Information internally, because it has received the Information subject to a continuing obligation to maintain the confidentiality of the Information, because such Information derives independent economic value (actual or potential) from not being generally known to and not being readily ascertained by proper means by other persons who can obtain economic value from its disclosure or use, or because of other reasons.

2. Information may be furnished in a tangible form, including electronic mail, or orally, including answering machine, voice mail box or similar medium. Notwithstanding the foregoing, if a reasonable person would know or have reason to believe that furnished information would be considered Information by the disclosing party, such Information shall be deemed to have been marked or identified in a manner to indicate that it is proprietary, confidential, trade secret or otherwise subject to limited distribution as provided herein. If the disclosing party fails to identify Information as proprietary, confidential, trade secret or otherwise subject to limited distribution as provided herein, and the party receiving Information (*"Recipient"*) would have no reason to believe the Information is proprietary, confidential, trade secret or otherwise subject to limited distribution as provided herein, such disclosing party may correct the omission by later notice consisting of a writing or statement, and the Recipient shall only be liable for unauthorized disclosures of such confidential information made subsequent to said notice. The existence and terms of this Agreement, and the fact and substance of discussions and correspondence between the parties concerning goods or services, shall be deemed Information.

3. With respect to Information disclosed under this Agreement, the Recipient shall:

   a. not disclose the Information to third parties without first obtaining the disclosing party's written consent. Subject to the provisions of this paragraph, this applies to Information required by interrogatories, requests for information or documents, subpoena, or similar process. In such a case, the disclosing party may provide its written consent indicating the extent to which it consents to disclosure or may seek an appropriate protective order. If the disclosing party does not seek a protective order or such is denied or does not provide written consent, and the Recipient is nonetheless, in the written opinion of its counsel, compelled to disclose such Information to any tribunal or else risk liability for contempt or suffer other censure or penalty, the Recipient may disclose such Information, limiting such disclosure as much as possible, to such tribunal without liability hereunder.

   b. hold the Information in confidence, exercising a degree of care consistent with the care used by the Recipient to protect its own proprietary or confidential information that it does not wish to disclose, but not less than reasonable care;

   c. restrict internal disclosure of and use of the Information solely to those directors, officers, employees, affiliates, and/or agents/consultants with a need to know solely for the purpose of evaluating the proposed business relationship between the parties and not disclose it to any other person;

    d.   advise those persons to whom the Information is disclosed of their obligations to keep and protect the confidentiality of the Information;

    e.   use the Information only in connection with continuing discussions by the parties concerning the Subject Matter, except as may otherwise be mutually agreed upon in writing; and

    f.   except for the purposes of evaluating the Subject Matter, not copy or distribute such Information or knowingly allow anyone else to copy or distribute such Information, and any and all copies shall bear the same notices or legends, if any, as the originals.

4. The Information shall be deemed the property of the disclosing party and, upon request, the Recipient shall return all Information received in tangible form (and marked proprietary or confidential) to the disclosing party or, with the prior written consent of the disclosing party, shall destroy or erase all such Information and certify to the disclosing party the Information has been destroyed or erased.

5. If either party loses or makes an unauthorized disclosure of the other party's Information, it shall notify such other party immediately and use reasonable efforts to retrieve the lost or wrongfully disclosed Information.

6. In the event a party or its directors, officers, employees, affiliates, and/or agents/consultants violates its obligations under this Agreement, such party shall indemnify the aggrieved party, including the aggrieved party's officers, directors, managers, agents and/or employees for any loss proximately arising from such violation.

7. The Recipient shall have no obligation to preserve the proprietary nature of any Information which:

    a.   was previously known to the Recipient free of any obligation to keep it confidential;

    b.   is or becomes publicly available by other than unauthorized disclosure;

    c.   is developed by or on behalf of the Recipient independent of any Information furnished under this Agreement; or

    d.   is received from a third party whose disclosure does not violate any confidentiality obligation.

8. Neither this Agreement, nor the disclosure of Information under this Agreement, nor the ongoing discussions and correspondence between the parties, shall constitute or imply a commitment or binding obligation between the parties or their respective affiliated companies, if any, regarding the Subject Matter.  If, in the future, the parties elect to enter into a binding commitment regarding the Subject Matter, such commitment will be explicitly stated in a separate written agreement executed by both parties, and the parties hereby affirm that they do not intend their discussions, correspondence, and other activities to be construed as forming a contract regarding the Subject Matter or any other transaction between them without execution of such separate written agreement.

9. This Agreement shall benefit and be binding upon the parties hereto and their respective successors and assigns.

10. This Agreement shall be governed by and construed in accordance with the laws of the territory of the United States Virgin Islands without regard to choice of law principles.

11. This Agreement shall become effective as of the date set forth below (*"**Effective Date**"*).  Disclosures of Information between the parties under this Agreement may take place for a period (*"**Information Disclosure Period**"*) of one (1) year after the Effective Date.  The obligations of the parties contained in Paragraphs 3, 4, 5, and 6 shall survive and continue beyond the expiration of the Information Disclosure Period indefinitely.

12. The parties acknowledge that in the event of an unauthorized disclosure, the damages incurred by the

DocuSign Envelope ID: 8B268A59-700E-4683-8849-CC7DDBEC7420

aggrieved party may be difficult if not impossible to ascertain, and that such aggrieved party may seek injunctive relief as well as monetary damages against a party that breaches this Agreement.

13. This Agreement constitutes the entire understanding between the parties with respect to the Information provided hereunder. No amendment or modification of this Agreement shall be valid or binding on the parties unless made in writing and executed on behalf of each party by its duly authorized representative.

14. Neither party is responsible or liable for any business decisions made or inferences drawn by the other party in reliance on this Agreement or in reliance on actions taken or disclosures made pursuant to this Agreement or shall be liable to or through the other hereunder for amounts representing loss of profits, loss of business, or special, indirect, consequential, or punitive damages, whether based on contract, tort, including negligence, or otherwise.

15. **NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY NATURE WHATSOEVER WITH RESPECT TO ANY INFORMATION DISCLOSED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR AGAINST INFRINGEMENT.**

16. The parties acknowledge that this Agreement does not restrict the ability of the parties to engage in their respective businesses, nor does it limit either party's use or application of any information or knowledge acquired independently of the other without a breach of this Agreement in the course of such party's business.

17. This Agreement may be executed in one or more counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Facsimile signatures to this Agreement shall be deemed to be binding upon the parties.

Each party represents that it has caused this Agreement to be executed on its behalf as of the date written below by a representative empowered to bind that party with respect to the undertakings and obligations contained herein.

Executed and effective _____10/26/2022_____, 2022.

"CFI"                                              "Interested Party"
CELEBRITY FINANCIAL, INC.

_DAVID ROBNETT_____        _T S R_____
(SIGNATURE)                                        (SIGNATURE)
DAVID ROBNETT                                      Taryn Reuter

_____             _____
                                                   (PRINT NAME)
CEO                                                Chairman and CEO

_____             _____
                                                   (TITLE)

Celebrity Financial, Inc.                              **Proprietary and Confidential**

# DocuSign®

## Certificate Of Completion

Envelope Id: 8B268A59700E46838849CC7DDBEC7420
Subject: Complete with DocuSign: NDA-CFI(Luminate).pdf
Source Envelope:
Document Pages: 3
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 2
Initials: 0

Status: Completed

Envelope Originator:
John Matheson
One MidAmerica Plaza, ste 800
oakbrook terrace, IL 60181
john.matheson@celebfinancial.com
IP Address: 172.84.216.82

## Record Tracking

Status: Original
    10/26/2022 1:08:30 PM

Holder: John Matheson
    john.matheson@celebfinancial.com

Location: DocuSign

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| DAVID ROBNETT<br>david.robnett@celebrityhomeloans.com<br>CEO<br>Celebrity Home Loans<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>DAVID ROBNETT<br>62E3DFBAB816438...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 71.209.172.103 | Sent: 10/26/2022 1:12:41 PM<br>Viewed: 10/26/2022 1:16:11 PM<br>Signed: 10/26/2022 1:16:25 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Taryn Reuter<br>taryn.reuter@goluminate.com<br>Chairman and CEO<br>Luminate Home Loans / Luminate Bank<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>C7810CCEECC04B8...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 75.146.189.153 | Sent: 10/26/2022 1:16:26 PM<br>Viewed: 10/26/2022 1:24:26 PM<br>Signed: 10/26/2022 1:24:45 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 10/26/2022 1:24:26 PM<br>    ID: 92095cdf-f00e-46e0-afcc-02e12fb25c3a | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/26/2022 1:12:41 PM |
| Certified Delivered | Security Checked | 10/26/2022 1:24:26 PM |
| Signing Complete | Security Checked | 10/26/2022 1:24:45 PM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 10/26/2022 1:24:45 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Celebrity Home Loans (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Celebrity Home Loans:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: eric.meadow@celebrityhomeloans.com

**To advise Celebrity Home Loans of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at eric.meadow@celebrityhomeloans.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Celebrity Home Loans**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to eric.meadow@celebrityhomeloans.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celebrity Home Loans**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to eric.meadow@celebrityhomeloans.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Celebrity Home Loans as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Celebrity Home Loans during the course of your relationship with Celebrity Home Loans.

# EXHIBIT 2



**INTEGRATOR** — Taryn Reuter
- LMA
- Logic
- Ideas/Strategy
- P&L
- Simplify
- Barriers & Obstacles
- External Relationships
- Bank

**VISIONARY** — Eric Lovins
- Sales
- Culture
- Ideas/Strategy
- Emotion
- Current Relationships
- Internal/Branches/Realtors

**PRESIDENT** — Mike Stoddart
- LMA
- Prospecting
- Customer Service
- Loan Applications
- Sales Recruiting

**CEO** — Taryn Reuter (.75)
- LMA
- Logic
- Ideas/Strategy
- P&L
- Simplify
- Barriers & Obstacles
- External Relationships
- Bank

**CHIEF OF STAFF** — Courtney Nuness
- Communication
- Relationships/Board
- Special Projects

**SALES SUPPORT**
- RECRUITING — Ryan Grant
- SALES TRAINING — Craig Strent
- MARKETING — Josh Metlis
  - Brand Management
  - Marketing + Advertising
  - Content Creation
    - Brand Architect Director — Lindsay Winterquist
      - Design Content
      - Social Media
      - Website
      - CRM Management

**SALES PRODUCTION**
- NEO DIVISION — Danny Horanyi
  - APEX GROUP — Craig Strent
- LUMINATE DIVISION — Eric Lovins
  - REFINED GROUP — Nate Reich
  - RCG GROUP — Robert Coaxier

**CREDIT RISK** — Bobbi Starks .5
- Policy Review
- Company Credit Risk
- VP of Credit Risk

**OPERATIONS** — Eric Gates COO
- LMA
- Servicing
- Investor Reporting
- GSE Relations
- P + P

- BRANCH SUPPORT — Jeanette Lee
  - Processing/LOA/PIP/LC Support
  - Branch Structure & Alignment
  - Production Support Projects
  - Learning and Development
  - VP of Branch Operations

- CORPORATE OPERATIONS — Kelly Sinkbeil
  - LMA
  - Projects
  - Administration
  - Post Closing
  - SVP of Corporate OPS
    - QC/Project Management — Tracy O'Donnell
      - Appraisal Desk
      - Jessica Weber Corporate OPS Manager
      - Post Closing Manager

- OPERATIONS FRONT — Donna Mason
  - Process + Procedure
  - Budget
  - Production Analytics
  - VP of Underwriting and Closing
    - Underwriting — Bobbi Starks VP of Credit Risk .5
      - UW Training and Upskill
      - Exception Requests
    - Closing — Megan Tully Closing Manager

**CAPITAL MARKETS** — Jerry Kaplan SVP Capital Markets
- LMA
- Programs
- OS
- Margins
- Locks
  - Vice President of Capital Markets — Tyler Peterson
    - Product & Program Development Manager — Candice Luker
    - Secondary Team Lead — Amanda Peterson

**COMPLIANCE** — Judy Blank CCO
- LMA
- Audits
- QC Reporting
- Fair Lending
- Monitoring
- P&P drafting
- Regulatory
- Leasing/Buildings
  - Director of Compliance — Melissa Hall
  - Quality Control Manager — Tammy Cries
  - Sr. Compliance Manager — Britney Scott

**FINANCE** — Bekka Gustafson CFO
- LMA
- Budget
- Cash Flow
- P&L
- Payables
- Forecasting
  - Controller — Jordyn Costello
  - Servicing Manager — Kaia Pattee-Fry
  - Sr. Financial Analyst — Allie Schwandt

**SYSTEMS INTEGRATION** — Matt Jensen VP Product Mgmt
- LOS
- 3rd Party Integrations
- App Development
- Project Mgmt
- Data Analytics
- Production Support Desk
  - Lead Encompass Administrator — Brandon Couganka
  - VP of Mortgage Tech. — Chris Lavigne

**HUMAN RESOURCES** — Courtney Hoefener CHRO (.75)
- HR Operations & Compliance
- Performance Mgmt
- Comp. & Benefits
- Employee Engagement
- Payroll
  - Director of HR — Mary Griffin
  - Director of Onboarding — Dierdre Beltran
  - HR Business Partner — Madalyn Hargrove

**IT + SECURITY** — Mike Pelham CISO (.75)
- Information Security
- Infrastructure Management
- Help Desk
  - Director of IT Support — Rich Pearson
  - Network Manager — Joe VanderHeyden
  - Systems Administration Manager — Adam Gove

**LEGAL** — Pamela Lapham CLO (.75)
- Contracts
- Loan Officer Comp
- Facilities
- Bank Contracts
- Comp Plans



**LUMINATE CAPITAL CORP.**
**(Fed Approved Holding Company)**

Thomas Payne 36%
Taryn Reuter 30%
Eric Lovins 18%
Misc Employees & Directors 17%

**LUMINATE BANK**

**BOARD OF DIRECTORS**

**CEO**
Taryn Reuter

**PRESIDENT**
Mike Stoddart

**COMPLIANCE**
Judy Blank
CCO

**FINANCE**
Bekka Gustafson
CFO

**SYSTEMS INTEGRATION**
Matt Jensen
VP Product Mgmt

**CHIEF OF STAFF**
Courtney Nuness

**HR**
Courtney Hoefener
CHRO

**IT + SECURITY**
Mike Pelham
CISO

**LEGAL**
Pamela Lapham
CLO

**SALES SUPPORT**

**SALES PRODUCTION**

**CREDIT RISK**
VP of Credit Risk
Bobbi Starks .5

**OPERATIONS**
Eric Gates
COO

**CAPITAL MARKETS**
Jerry Kaplan
SVP Capital Markets

Director of Compliance
Melissa Hall

Quality Control Manager
Tammy Criss

Senior Compliance Manager
Britney Scott

Controller
Jordyn Costello

Sr. Financial Analyst
Allie Schwandt

Servicing Manager
Katie Patton-Fry

Lead Encompass Administrator
Brandon Covgonka

VP of Mortgage Tech.
Chris Lavigne

Director of HR
Mary Griffin

Director of Onboarding
Dierdre Belton

HR Business Partner
Madalyn Hargrove

Director of IT Support
Rich Pearson

Network Manager
Joe VanderHeyden

Systems Administration Manager
Adam Gove

**RECRUITING**
Ryan Grant

**SALES TRAINING**
Craig Strent

**MARKETING DIRECTOR**
Lindsay Winterquist

**NEO DIVISION**
Danny Horanyi

**APEX GROUP**
Craig Strent

**LUMINATE DIVISION**
Eric Lovins

**REFINED GROUP**
Nate Reich

**RCG GROUP**
Robert Coomer

**BRANCH SUPPORT**
VP of Branch Operations
Jeanette Lee

**CORPORATE OPERATIONS**
SVP of Corporate OPS
Kelly Sinkbeil

QC/Project Management
Jessica Weber
Corporate OPS Manager

Post Closing Manager
Tracy O'Donnell

**OPERATIONS FRONT**
VP of Underwriting and Closing
Donna Mason

Underwriting
Bobbi Starks
VP of Credit Risk .5

Closing
Megan Tully
Closing Manager

**Vice President of Capital Markets**

Tyler Peterson

Product & Program Development Manager
Candice Lakar

Secondary Team Lead

Amanda Peterson

# EXHIBIT 3

| Date | Cost | Vendor | Who Submitted | Domain | Notes |
|---|---|---|---|---|---|
| 5/9/2023 | $ 179.98 | GoDaddy | Ryan Grant | NEOEXPERIENCE.NEOHOMELOANS.COM | |
| 11/19/2023 | $ 64.59 | GoDaddy | Ryan Grant | NEOHOMELOANS.COM | |
| 7/1/2023 | $ 32.16 | GoDaddy | Ryan Grant | NEOMORTGAGE.COM | |
| 7/6/2023 | $ 138.82 | GoDaddy | Ryan Grant | LOANSWITHNEO.COM | |
| 10/27/2023 | $ 12.17 | GoDaddy | Ryan Grant | NEONETSUPPORT.COM | |
| 12/8/2023 | $ 22.17 | GoDaddy | Danny Horanyi | GONEOHL.COM | |
| 4/18/2025 | $ 177.36 | GoDaddy | Danny Horanyi | THENEOWAY.COM | |
| | | GoDaddy | Danny Horanyi | THENEOEXPERIENCE.COM | |
| | | GoDaddy | Danny Horanyi | LEARNNEOHOMELOANS.COM | |
| | | GoDaddy | Danny Horanyi | NEOHOMELOANSTRAINING.COM | |
| 7/1/2024 | $ 35.16 | GoDaddy | Ryan Grant | NEOMORTAGE.COM | |
| 12/15/2024 | $497.00 | 8 Blocks LLC | Josh Mettle | | NEO Home Loans Network Platform Fee |

# Receipt



№ 2569586801

**CONTACT US 24/7 1-480-505-8877**

**DATE:**
5/9/2023

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
1582 Shadow Mountain Lane,
,
Aliso Viejo, Utah 84098,
United States
NEO Home Loans
+1.9497677111

**PAYMENT:**

| | |
|---|---|
| In-Store Credit | $2.91 |
| AMEX •••• 4027 | $177.07 |

| | |
|---|---|
| **Previous Balance** | $179.98 |
| **Received Payment** | ($179.98) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 2 yrs | Standard SSL | $179.98 |
| | neoexperience.neohomeloans.com | |

| | |
|---|---|
| **Total (USD)** | **$179.98** |

**REFERENCE**

| | |
|---|---|
| Taxes | $0.00 |

# April 20 - May 19th 2023 [Ryan Grant]

Summary   Details ▼   Receipts ▼   Print / Email ▼

## Expenses

| Date ▼ | Expense Type | Reviewed | Amount | View ▼ Approved |
|---|---|---|---|---|
| 05/17/2023 | Employee Meals and Enter1 Heirloom Farmhouse Kitchen | N | $1,569.70 | $1,569.70 |
| 05/17/2023 | Employee Meals and Enter1 Javier's Irvine | N | $404.50 | $404.50 |
| 05/17/2023 | Dues Loansifter | N | $79.00 | $79.00 |
| 05/17/2023 | Travel LYFT | N | $45.77 | $45.77 |
| 05/16/2023 | Meals and Entertainment IRORI Japanese Restaurant N | N | $150.31 | $150.31 |
| 05/15/2023 | Professional Fees Wood Fix Painting | N | $391.27 | $391.27 |
| 05/15/2023 | Dues Go Daddy | N | $20.17 | $20.17 |
| 05/11/2023 | Employee Morale Red Wine Cheese and Gift Ba | N | $117.25 | $117.25 |
| 05/11/2023 | Employee Morale Flowers Shop Network | N | $131.18 | $131.18 |
| 05/10/2023 | Travel UBER | N | $16.99 | $16.99 |
| 05/10/2023 | Employee Meals and Entert UBER eats | N | $118.87 | $118.87 |
| 05/09/2023 | Dues Go Daddy | N | $179.98 | $179.98 |
| 05/08/2023 | Telephone and Internet Ring Central | N | $24.20 | $24.20 |
| 05/08/2023 | Professional Fees Fast Signs | N | $304.30 | $304.30 |
| 05/07/2023 | Travel Southwest Airlines | N | $800.96 | $800.96 |
| 05/07/2023 | Travel Delta Air Lines | N | $408.90 | $408.90 |
| 05/07/2023 | Travel Delta Air Lines | N | $213.90 | $213.90 |
| 05/05/2023 | Dues ZOOM Video Communication | N | $286.65 | $286.65 |

### Expense | Receipt Image

Previous Comment
Entered By Ryan Grant : RG emailed Eddie and KS about center center allocation to hit the technology cost center wh

| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Dues | 05/09/2023 | certificate for our NEO Experience through Ryan's GoDaddy accoun |

| Vendor Description | Payment Type | Amount | |
|---|---|---|---|
| Go Daddy | Out-of-Pocket | 179.98 | USO |

| Reviewed | Approved Amount | Branch ID |
|---|---|---|
| No | 179.98 | 5225 |

| Loan Number | Personal Expense (do not reimburse) | Send Back Expense? |
|---|---|---|
| | 4 | |



FW: Renewal receipt for order #2631782548.



Ryan Grant
To ● Kristen Seniura

😊  ↩ Reply    ↩ Reply All    → Forward    🔲  ⋯

Sun 7/2/2023 10:58 AM



Need help? Contact us.
Customer Number: 191054759

✓ **Renewal Success!**

# Sign in to see what's new.

| Product | Quantity | Term | Price |
|---|---|---|---|
| .COM Domain Renewal<br>neomortgage.com | 1 Domain | 1 Year | $22.17 |
| Full Domain Privacy and Protection - Renewal<br>neomortgage.com | | 1 Year | $9.99 |
| | Subtotal: | | $32.16 |
| | Tax: | | $0.00 |
| | Total: | | **$32.16** |

View My Orders →



We have billed your AMEX card ending with the last two digits: 27 for the amount of

## June 5 to July 18 [Ryan Grant]

Summary    Details ▾    Receipts ▾    Print / Email ▾

Expenses

| Date ⬇ | Expense Type | Reviewed | Amount | View ▾ ◄◄ Approved |
|---|---|---|---|---|
| 07/18/2023 | Travel<br>Southwest Airlines | N | $203.98 | $203.98 |
| 07/17/2023 | Dues<br>Loanofter | N | $79.00 | $79.00 |
| 07/13/2023 | Office Maintenance and Ser<br>Haul Bros Junk | N | $846.22 | $846.22 |
| 07/07/2023 | Taxi/Car Service<br>LYFT | N | $21.07 | $21.07 |
| 07/06/2023 | Computer and Office Equip<br>Ring Central phone line char | N | $24.22 | $24.22 |
| 07/06/2023 | Dues<br>Go Daddy | N | $138.82 | $138.82 |
| 07/05/2023 | Computer and Office Equip<br>Best Buy | N | $175.62 | $175.62 |
| 07/05/2023 | Dues<br>ZOOM Video Communication | N | $364.29 | $364.29 |
| 07/01/2023 | Dues<br>Go Daddy | N | $32.16 | $32.16 |
| 06/30/2023 | Telephone and Internet<br>Starlink | N | $120.00 | $120.00 |
| 06/29/2023 | Office Maintenance and Ser<br>Goodwill | N | $8.00 | $8.00 |
| 06/29/2023 | Computer and Office Equip<br>Amazon | N | $43.01 | $43.01 |
| 06/28/2023 | Dues<br>Jungo | N | $3,688.00 | $3,688.00 |
| 06/27/2023 | Travel<br>Southwest Airlines | N | $178.98 | $178.98 |
| 06/20/2023 | Office Maintenance and Ser<br>Extra Space Storage | N | $730.30 | $730.30 |

Expense    Receipt Image



| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Dues | 07/01/2023 | Go Daddy renewal for domain |
| Vendor Description | Payment Type | Amount |
| Go Daddy | Out-of-Pocket ▾ | 32.16    USD ▾ |
| Reviewed | Approved Amount | Branch ID |
| No ▾ | 32.16 | 5016 |
| Loan Number | Personal Expense (do not reimburse) | Send Back Expense? |

*RG*

**CONTACT US 24/7 1-480-505-8877**

# Receipt

№ 2810216174

**DATE:**
11/19/2023

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                              $64.59

| | |
|---|---|
| **Previous Balance** | $64.59 |
| **Received Payment** | ($64.59) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 2 yrs | .COM Domain Renewal<br>NEOHOMELOANS.COM [1] | $43.98 |
| 2.027 yrs | Full Domain Protection | $20.25 |

# 11/17-12/5 charges [Ryan Grant]

Summary    Details ▾    Receipts ▾    Print / Email ▾

Expenses

| Date↑ | Expense Type | Reviewed | Amount | View ▾ «<br>Approved |
|---|---|---|---|---|
| 12/04/2023 | Employee Meals and Entert<br>Bamboo Sushi | N | $149.80 | $149.80 |
| 12/03/2023 | Taxi/Car Service<br>LYFT | N | $161.91 | $161.91 |
| 12/02/2023 | Parking<br>SLC airport parking | N | $105.00 | $105.00 |
| 12/02/2023 | Hotel<br>Hotel Indigo | N | $7.61 | $7.61 |
| 12/01/2023 | Dues<br>Statista | N | $129.00 | $129.00 |
| 12/01/2023 | Taxi/Car Service<br>LYFT | N | $33.65 | $33.65 |
| 11/30/2023 | Taxi/Car Service<br>LYFT | N | $47.47 | $47.47 |
| 11/28/2023 | Dues<br>MODEX | N | $500.00 | $500.00 |
| 11/20/2023 | Travel<br>AMEX - Delta Airlines | N | $549.90 | $549.90 |
| 11/20/2023 | Recruitment<br>Amazon | N | $27.14 | $27.14 |
| 11/19/2023 | Professional Fees<br>Go Daddy | N | $64.99 | $64.99 |
| 11/19/2023 | Travel<br>AMEX - Delta Airlines | N | $397.80 | $397.80 |
| 11/16/2023 | Telephone and Internet<br>Verizon Wireless | N | $299.03 | $299.03 |

Expense    Receipt Image

| | | | |
|---|---|---|---|
| Expense Type | Transaction Date | Business Purpose | Vendor Description |
| Professional Fees | 11/19/2023 | NEO Home Loans Domain Renewal | Go Daddy |
| Payment Type | Amount | | Reviewed | Approved Amount |
| (Out-of-Pocket) | 64.50 | USD ▾ | No | 64.50 |
| Branch ID | Last Number | | Personal Expense (do not reimburse) | Send Back Expense? |
| 5414 | | | | |

| TOTAL AMOUNT<br>**$2,262.80** | TOTAL APPROVED:<br>**$2,262.80** |
|---|---|

Attach Receipt

<< Previous Report    Next Report >>

RG

# Receipt

№ 2637539597

**CONTACT US 24/7 1-480-505-8877**

**DATE:**
7/6/2023

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
1582 Shadow Mountain Lane,
,
Aliso Viejo, Utah 84098,
United States
NEO Home Loans
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                              $138.82

**Previous Balance**                                          $138.82

**Received Payment**                                        ($138.82)

**Balance Due (USD)**                                        **$0.00**

| Term | Product | | Amount |
|------|---------|---|--------|
| 5 yrs | .COM Domain Registration | | $87.97 |
| | loanswithneo.com | $99.95 | |
| | Discount | −$11.98 | |
| 5 yrs | Full Domain Protection | | $49.95 |
| | loanswithneo.com | | |

| | Subtotal | **$137.92** |
|---|---|---|
| | Taxes | $0.00 |
| | Fees | $0.90 |

# June 5 to July 18 [Ryan Grant]

Summary   Details ▾   Receipts ▾   Print / Email ▾

## Expenses

| Date↓F | Expense Type | Reviewed | Amount | View ▾ ≪ Approved |
|---|---|---|---|---|
| 07/18/2023 | Travel<br>Southwest Airlines | N | $203.98 | $203.98 |
| 07/17/2023 | Dues<br>Loansifter | N | $79.00 | $79.00 |
| 07/13/2023 | Office Maintenance and Ser<br>Haul Bros Junk | N | $846.22 | $846.22 |
| 07/07/2023 | Taxi/Car Service<br>LYFT | N | $21.07 | $21.07 |
| 07/06/2023 | Computer and Office Equip<br>Ring Central phone line charg | N | $24.22 | $24.22 |
| 07/06/2023 | Dues<br>Go Daddy | N | $138.82 | $138.82 |
| 07/05/2023 | Computer and Office Equip<br>Best Buy | N | $175.62 | $175.62 |
| 07/05/2023 | Dues<br>ZOOM Video Communication | N | $364.29 | $364.29 |
| 07/01/2023 | Dues<br>Go Daddy | N | $32.16 | $32.16 |
| 06/30/2023 | Telephone and Internet<br>Starlink | N | $120.00 | $120.00 |
| 06/29/2023 | Office Maintenance and Ser<br>Goodwill | N | $8.00 | $8.00 |
| 06/29/2023 | Computer and Office Equip<br>Amazon | N | $43.01 | $43.01 |
| 06/28/2023 | Dues<br>Jungo | N | $3,888.00 | $3,888.00 |
| 06/27/2023 | Travel<br>Southwest Airlines | N | $178.98 | $178.98 |
| 06/20/2023 | Office Maintenance and Ser<br>Extras Space Storage | N | $730.30 | $730.30 |
| 06/20/2023 | Office Maintenance and Ser<br>Extra Space Storage | N | $405.30 | $405.30 |
| 06/18/2023 | Telephone and Internet<br>Verizon Wireless | N | $295.48 | $295.48 |
| 06/17/2023 | Dues<br>Loansifter | N | $79.00 | $79.00 |
| 06/09/2023 | Hotel<br>The Mirage | N | $58.77 | $58.77 |
| 06/08/2023 | Parking | N | $105.00 | $105.00 |



| Expense | Receipt Image |
|---|---|

| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Dues | 07/06/2023 | Go daddy domain |

| Vendor Description | Payment Type | Amount |
|---|---|---|
| Go Daddy | Out-of-Pocket | 138.82    USD |

| Reviewed | Approved Amount | Branch ID |
|---|---|---|
| No | 138.82 | 5016 |

| Loan Number | | |
|---|---|---|
| | Personal Expense (do not reimburse) | Send Back Expense? |

*RG*

# Receipt

№ 2778475598

**DATE:**
10/27/2023

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
1582 Shadow Mountain Lane,
Aliso Viejo, Utah 84098,
United States
NEO Home Loans
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                          $12.17

| | |
|---|---|
| **Previous Balance** | $12.17 |
| **Received Payment** | ($12.17) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 1 yr | .COM Domain Registration | $11.99 |
| | neonetsupport.com [1] | |

| | |
|---|---|
| **Subtotal** | **$11.99** |
| Taxes | $0.00 |
| Fees | $0.18 |

**Total (USD)**                                          **$12.17**

**REFERENCE**

Taxes                                                    $0.00

GoDaddy.com, LLC                                         $0.00
2155 E GoDaddy Way,
Tempe, Arizona 85284,
United States

Fees                                                     $0.18

1.    ICANN                                              $0.18
          neonetsupport.com                          $0.18

Universal Terms of Service

# October 21 to Nov 5th [Ryan Gram]

Summary    Details ▼    Receipts ▼    Print / Email ▼

**Expenses**

| Date]↑ | Expense Type | Reviewed | Amount | Approved |
|---|---|---|---|---|
| 11/05/2023 | **Dues**<br>ZOOM Communications | N | $425.79 | $425.79 |
| 11/05/2023 | **Travel**<br>SLC airport parking | N | $60.00 | $60.00 |
| 11/01/2023 | **Travel**<br>Delta Airlines | N | $294.41 | $294.41 |
| 10/28/2023 | **Professional Fees**<br>Modex | N | $300.00 | $300.00 |
| 10/27/2023 | **Professional Fees**<br>Go Daddy | N | $12.17 | $12.17 |
| 10/27/2023 | **Taxi/Car Service**<br>Lyft | N | $28.70 | $28.70 |
| 10/27/2023 | **Taxi/Car Service**<br>UBER | N | $382.99 | $382.99 |
| 10/26/2023 | **Travel**<br>American Airlines | N | $30.00 | $30.00 |
| 10/26/2023 | **Travel**<br>AMEX Travel - Delta Airlines | N | $657.79 | $657.79 |
| 10/26/2023 | **Employee Meals and Enterl**<br>Hilton HOtel | N | $16.24 | $16.24 |
| 10/26/2023 | **Hotel**<br>Hilton Hotels | N | $384.92 | $384.92 |
| 10/25/2023 | **Employee Meals and Enterl**<br>The Original Roy Hutchin's Bf | N | $202.55 | $202.55 |
| 10/24/2023 | **Employee Meals and Enterl**<br>76.58 | N | $76.58 | $76.58 |
| 10/24/2023 | **Taxi/Car Service**<br>Budget Rent A Car | N | $88.70 | $88.70 |
| 10/24/2023 | **Taxi/Car Service**<br>LYFT | N | $29.74 | $29.74 |
| 10/23/2023 | **Taxi/Car Service**<br>LYFT | N | $58.28 | $58.28 |
| 10/23/2023 | **Employee Meals and Enterl**<br>Paesanos | N | $182.12 | $182.12 |
| 10/23/2023 | **Employee Meals and Enterl**<br>La Gloria | N | $218.30 | $218.30 |
| 10/23/2023 | **Taxi/Car Service**<br>LYFT | N | $25.47 | $25.47 |
| 10/21/2023 | **Travel** | N | $380.00 | $380.00 |
| | | | **TOTAL AMOUNT**<br>**$3,874.75** | **TOTAL APPROVED**<br>**$3,874.75** |

View ▼  «   Summary

**Report Summary**
Report Totals

**Amount Due Company**

$0.00

<< Pr

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 2837221675

**DATE:**
12/8/2023

**CUSTOMER #:**
190675452

BILL TO:
Daniel Horanyi
1119 Vega Way,
San Marcos, California 92078,
United States
+1.7608229076

PAYMENT:
AMEX •••• 1006                                                    $22.17

| | |
|---|---|
| **Previous Balance** | $22.17 |
| **Received Payment** | ($22.17) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 1 yr | .COM Domain Renewal GONEOHL.COM [1] | $21.99 |
| | **Subtotal** | **$21.99** |

# 12_DH-Dec 2023 [Daniel Horanyi]

Summary | Details ▾ | Receipts ▾ | Print / Email ▾

## Exceptions

| Expense Type | Date | Amount | Exception |
|---|---|---|---|
| Taxi/Car Service | 12/06/2023 | $15.95 | ⚠ Code: DUPCHECK, Level: 1; This expense entry may be a duplicate of the following expense. Report: 12_DH-Dec 2023, Expense: 12/06/2023, Taxi/Car Service, $15.95 |
| Taxi/Car Service | 12/06/2023 | $15.95 | ⚠ Code: DUPCHECK, Level: 1; This expense entry may be a duplicate of the following expense. |

## Expenses

View ▾ ≪

| Date ▾ | Expense Type | Reviewed | Amount | Approved |
|---|---|---|---|---|
| 12/15/2023 | Taxi/Car Service Uber | N | $27.96 | $27.96 |
| 12/15/2023 | Hotel SpringHill Suites | N | $361.66 | $361.66 |
| 12/15/2023 | Marketing Duda | N | $53.00 | $53.00 |
| 12/14/2023 | Hotel Park MGM and NoMad Las V | N | $153.06 | $153.06 |
| 12/14/2023 | Taxi/Car Service Uber | N | $9.16 | $9.16 |
| 12/14/2023 | Taxi/Car Service Uber | N | $7.65 | $7.65 |
| 12/14/2023 | Travel Southwest Airlines | N | $421.80 | $421.80 |
| 12/13/2023 | Taxi/Car Service Uber | N | $12.91 | $12.91 |
| 12/13/2023 | Taxi/Car Service Uber | N | $9.80 | $9.80 |
| 12/12/2023 | Taxi/Car Service Uber | N | $75.91 | $75.91 |
| 12/12/2023 | Taxi/Car Service Uber | N | $39.92 | $39.92 |
| 12/11/2023 | Marketing ChatGPT | N | $20.00 | $20.00 |
| 12/09/2023 | Marketing GoDaddy | N | $22.17 | $22.17 |
| 12/07/2023 | Hotel Renaissance | N | $863.99 | $863.99 |
| 12/06/2023 | Travel Delta | N | $498.90 | $498.90 |
| 12/06/2023 | Travel Delta | N | $458.90 | $458.90 |
| 12/06/2023 | Employee Meals and Entert Dohola Wase | N | $230.18 | $230.18 |

Expense | Receipt Image

| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Marketing | 12/08/2023 | Annual GoDaddy Domains (1) 1 Year Terms |
| Vendor Description | Payment Type | Amount |
| GoDaddy | Out-of-Pocket | 22.17   USD |
| Reviewed | Approved Amount | Branch ID |
| No | 22.17 | 5000 |
| Loan Number | Personal Expense (do not reimburse) | Send Back Expense? |



**Jessica Acuna**

| | |
|---|---|
| **From:** | Danny Horanyi <dannyhoranyi@gmail.com> |
| **Sent:** | Thursday, April 18, 2024 3:12 PM |
| **To:** | Jessica Acuna |
| **Subject:** | Fwd: Renewal receipt for order #3038737984. |

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Thank you!

---------- Forwarded message ---------
From: **GoDaddy** <donotreply@godaddy.com>
Date: Thu, Apr 18, 2024 at 7:07 AM
Subject: Renewal receipt for order #3038737984.
To: <dhoranyi@gmail.com>

 GoDad

Need help? Contact us.
Customer Number: 190675452

✅ **Renewal Success!**

# Sign in to see what's new.

| Product | Quantity | Term | Price |
|---|---|---|---|
| .COM Domain Renewal<br>theneoway.com | 1 Domain | 2 Years | $44.34 |
| .COM Domain Renewal<br>theneoexperience.com | 1 Domain | 2 Years | $44.34 |
| .COM Domain Renewal<br>learnneohomeloans.com | 1 Domain | 2 Years | $44.34 |
| .COM Domain Renewal<br>neohomeloanstraining.com | 1 Domain | 2 Years | $44.34 |
| | | Subtotal: | $177.36 |

Note: Our free product credit policy was updated — see Section 9 of our Universal Terms of Service for more details. In the event that the credit is redeemed, after the initial free one-year period, the free product will automatically renew at the then-current renewal price until canceled. To review billing or to update your payment information, **log in to your account**. If you do not wish to renew, you can cancel this product by visiting the **Renewals and Billing page** in your GoDaddy account.

Please do not reply to this email. Emails sent to this address will not be answered.

Copyright © 1999-2024 GoDaddy Operating Company, LLC. 100 S Mill Ave, Suite 1600, Tempe, AZ 85281 USA. All rights reserved.

6271743156

--

**-Danny**
**760-822-9076**

# 04_DH - Apr 2024 [Daniel Horany]

Summary   Details ▼   Receipts ▼   Print / Email ▼



**Exceptions**

| Expense Type | Date | Amount | Exception |
|---|---|---|---|
| Employee Me... | 03/15/2024 | $39.30 | ⚠ Code: EXPRTRAN, Level: 1; The transaction date is older than your company allows. |
| Marketing | 03/15/2024 | $99.18 | ⚠ Code: EXPRTRAN, Level: 1; The transaction date is older than your company allows. |

**Expenses**

| Date↓▼ | Expense Type | Reviewed | Amount | View▼ Approved |
|---|---|---|---|---|
| 04/29/2024 | Marketing<br>Adobe | N | $21.83 | $21.83 |
| 04/28/2024 | Employee Meals and Entert<br>Ingluorous Bagels | N | $41.83 | $41.83 |
| 04/28/2024 | Telephone and Internet<br>Verizon | N | $112.95 | $112.95 |
| 04/27/2024 | Parking<br>LAZ Parking | N | $6.00 | $6.00 |
| 04/26/2024 | Software License and Helpi<br>Airtable | N | $960.00 | $960.00 |
| 04/26/2024 | Marketing<br>C. Richard's Leather | N | $166.12 | $166.12 |
| 04/24/2024 | Hotel<br>Best Western Plus | N | $261.49 | $261.49 |
| 04/24/2024 | Parking<br>ACE PARKING LOT | N | $20.00 | $20.00 |
| 04/23/2024 | Software License and Helpi<br>RealtimeBoard Inc. | N | $20.00 | $20.00 |
| 04/21/2024 | Marketing<br>Otter AI | N | $90.00 | $90.00 |
| 04/20/2024 | Marketing<br>Malibu Farm San Diego | N | $320.70 | $320.70 |
| 04/19/2024 | Parking<br>ACE PARKING LOT | N | $24.00 | $24.00 |
| 04/17/2024 | Marketing<br>GoDaddy | N | $177.36 | $177.36 |
| 04/17/2024 | Taxi/Car Service<br>Uber | N | $92.66 | $92.66 |
| 04/17/2024 | Travel<br>Delta Airlines | N | $69.99 | $69.99 |
| 04/17/2024 | Employee Meals and Entert<br>Stone Arch | N | $68.78 | $68.78 |

**Expense | Receipt Image**

Previous Comment
Entered By Jessica Acuna : thencoway.com / theneoexperience.com / learnneohomeloans.com / neohomeloanstraining.com

| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Marketing | 04/17/2024 | Annual GoDaddy Domains (4) 2 Year Terms |

| Vendor Description | Payment Type | Amount | |
|---|---|---|---|
| GoDaddy | Out-of-Pocket | 177.36 | USD |

| Reviewed | Approved Amount | Branch ID |
|---|---|---|
| No | 177.36 | 5000 |

| Loan Number | Personal Expense (did not reimburse) | Send Back Expense? |
|---|---|---|
| | b? | |



GoDaddy

My Products

Help Center

Ryan

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**

| | |
|---|---|
| AMEX •••• 4027 | $35.16 |
| | |
| **Previous Balance** | $35.16 |
| **Received Payment** | ($35.16) |
| | |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 1 yr | .COM Domain Renewal | $21.00 |
| | NEOMORTGAGE.COM [1] | |

💬 Contact Us

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                    $35.16

---

**Previous Balance**                             $35.16

**Received Payment**                            ($35.16)

---

**Balance Due (USD)**                          **$0.00**

| Term | Product | Amount |
|------|---------|--------|
| 1 yr | .COM Domain Renewal NEOMORTGAGE.COM [1] | $21.99 |

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                  $35.16

**Previous Balance**                             $35.16

**Received Payment**                           ($35.16)

**Balance Due (USD)**                          $0.00

| Term | Product | Amount |
|------|---------|--------|
| 1 yr | .COM Domain Renewal NEOMORTGAGE.COM [1] | $21.99 |

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                              $35.16

| | |
|---|---|
| **Previous Balance** | $35.16 |
| **Received Payment** | ($35.16) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 1 yr | .COM Domain Renewal | $21.99 |
| | NEOMORTGAGE.COM ¹ | |

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                    $35.16

---

**Previous Balance**                              $35.16

**Received Payment**                             ($35.16)

---

**Balance Due (USD)**                             **$0.00**

| Term | Product | Amount |
|------|---------|--------|
| 1 yr | .COM Domain Renewal NEOMORTGAGE.COM [1] | $21.99 |

CONTACT US 24/7 1-480-505-8877

# Receipt

№ 3168390133

**DATE:**
7/1/2024

**CUSTOMER #:**
191054759

**BILL TO:**
Ryan Grant
6120 Snow View Drive,
PARK CITY, Utah 84098,
United States
+1.9497677111

**PAYMENT:**
AMEX •••• 4027                                    $35.16

| | |
|---|---|
| **Previous Balance** | $35.16 |
| **Received Payment** | ($35.16) |
| **Balance Due (USD)** | **$0.00** |

| Term | Product | Amount |
|---|---|---|
| 1 yr | .COM Domain Renewal NEOMORTGAGE.COM [1] | $21.99 |

# 07_RG - Jul 2024 (07.01 - 07.17) [Ryan Grant]

Summary    Details ▾    Receipts ▾    Print / Email ▾

Expenses

| Date ▾ | Expense Type | Reviewed | Amount | View ▾ «  Approved |
|---|---|---|---|---|
| 07/13/2024 | Parking SLC Airport Parking | N | $110.00 | $110.00 |
| 07/13/2024 | Hotel Hilton Hotels | N | $419.50 | $419.50 |
| 07/12/2024 | Marketing Resort World Kusa | N | $408.97 | $408.97 |
| 07/11/2024 | Marketing Carver Steak | N | $442.56 | $442.56 |
| 07/10/2024 | Marketing BeeFee | N | $30.00 | $30.00 |
| 07/08/2024 | Taxi/Car Service Taxi Ash | N | $230.00 | $230.00 |
| 07/08/2024 | Meals and Entertainment Resort World Viva | N | $77.03 | $77.03 |
| 07/08/2024 | Taxi/Car Service Lyft | N | $70.03 | $70.03 |
| 07/05/2024 | Dues Zoom | N | $118.17 | $118.17 |
| 07/02/2024 | Dues Open AI ChatGPT | N | $21.49 | $21.49 |
| 07/01/2024 | Marketing GoDaddy | N | $35.16 | $35.16 |

| | |
|---|---|
| Expense | Receipt Image |

| Expense Type | Transaction Date | Business Purpose |
|---|---|---|
| Marketing | 07/01/2024 | 1 yr Team NEOMortgage.com |

| Vendor Description | Payment Type | Amount |
|---|---|---|
| GoDaddy | Out-of-Pocket | 35.16    USD ▾ |

| Reviewed | Approved Amount | Branch ID |
|---|---|---|
| No | 35.16 | 5000 |

| Loan Number | Personal Expense (do not reimburse) | Send Back Expense? |
|---|---|---|
| | | |

| TOTAL AMOUNT | TOTAL APPROVED |
|---|---|
| **$1,962.91** | **$1,962.91** |

« Previous

# INVOICE

Amount Due (USD)

## $0.00

BILL TO

**NEO Home Loans**
Kim Cowdell

Kim.Cowdell@NeoHomeLoans.com

| | Invoice Number: | 3453 |
|---|---|---|
| | Invoice Date: | December 15, 2024 |
| | Payment Due: | December 15, 2024 |

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **Platform Fee** <br> NEO Home Loans Network | 1 | $497.00 | $497.00 |

| | Total: | $497.00 |
|---|---|---|
| Payment on December 16, 2024 using AMERICAN EXPRESS •••• 9001: | | $497.00 |
| | **Amount Due (USD):** | **$0.00** |

**Notes / Terms**

Thank you!



**8 Blocks LLC**
6889 W Greenbriar Dr
Glendale, Arizona 85308
United States



# EXHIBIT 4

**From:** Danny Horanyi
**To:** Pamela Lapham; Mike Stoddart
**Cc:** Jeanette Lee; Sydney Lynn
**Subject:** FW: Cornerstone OnDemand Invoice #148277
**Date:** Thursday, October 12, 2023 11:24:25 AM
**Attachments:** image001.png
image685614.png
image347488.png
image320701.png
image622920.png
Invoice_148277_1695965032194.pdf
Q-00128986 - MSA_Original_ABO - Order Form - CSODRFS_2022-03-28_signed.pdf

Hi Pam and Mike,

Hoping to get a logic check on this to make sure we are on strong footing as we engage with this vendor.

Our goal is to end our relationship with Cornerstone as part of our current cost-cutting efforts.

Would like to confirm if you also believe the attached contract is invalid.

Some details:

- When this contract was signed "NEO" was officially a registered DBA of the legal entity "Celebrity Home Loans"
  - The office address on contract reflects Celebrity
- The signer, Jeff Carter, was never an employee of Luminate Home Loans
  - He was also never technically a valid signer of NEO or Celebrity but that is likely moot from our perspective
- The registered DBA "NEO" under Luminate Home Loans has never signed a contract with Cornerstone

Ask: Do you support us not paying all current/future invoices and ending our relationship with the platform with the expectation that the contract attached does not apply to Luminate or the current iteration of the NEO DBA?

Thank you, Mike and Pam.



# Danny Horanyi

**NEO Co-Creator**

NMLS# 680596

 760-822-9076

Danny.Horanyi@neohomeloans.com

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Luminate Home Loans NMLS #150953** or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession.

**From:** Jennifer Cooper
**Sent:** Friday, September 29, 2023 11:10 AM
**To:** Danny Horanyi

**Subject:** FW: Cornerstone OnDemand Invoice #148277

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

FYI, this was just sent today.

**Jennifer Cooper**
Account Manager
1.613.699.3942
jcooper@csod.com



**From:** Ruksar Begum (rhajaratabhai@csod.com) <system@sent-via.netsuite.com>
**Sent:** September 29, 2023 1:24 AM
**To:** jeff.carter@neohomeloans.com; rene.allen@neohomeloans.com;
aj.mcdougal@neohomeloans.com; jeanette.lee@neohomeloans.com; ap@celebrityhomeloans.com;
susan.crueyschold@neohomeloans.com
**Cc:** Jennifer Cooper <jcooper@csod.com>; Ruksarbegum Hajaratabhai <rhajaratabhai@csod.com>
**Subject:** Cornerstone OnDemand Invoice #148277

Dear Client,

Please see attached invoice.148277

As a reminder, all invoices are sent via e-mail only.

**Please note our bank details have changed. Please find our updated bank details at the bottom of your invoice.**

We recommend our customers validate any request to change bank information by calling us on a previously verified phone number.

If a PO is required to process your invoice for payment, please email the PO information to our team at DLCollections@csod.com within 5 business days. If a PO is not received in that time, we will assume that a PO is not required. Please note that payment terms will not be delayed due to PO processing.

If you have any questions regarding this invoice, please call us at (310) 752-0200. We thank you for your business.

Best regards,

Cornerstone OnDemand Billings

This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or privileged information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete the message, together with any attachments,

from your computer. Thank you for your cooperation.



## Cornerstone OnDemand – ORDER

| | |
|---|---|
| Client Name ("**Client**") | Neo Home Loans |
| Order Start Date | 4/1/2022 |
| Order End Date | 3/31/2025 |
| Is a *new* purchase order required for this purchase?* | ("No," unless box is checked)  [ ]Yes:  PO# |
| Primary Client Contact | Rene Allen | rene.allen@neohomeloans.com | |
| Client Address (Ship To) | Neo Home Loans<br>One Mid America Plaza, Suite 800, Oakbrook Terrace, IL, 60181, United States |
| Primary Billing (Invoice) Contact | Rene Allen | rene.allen@neohomeloans.com | |
| Client Billing (Invoice) Address | Neo Home Loans<br>One Mid America Plaza, Suite 800, Oakbrook Terrace, IL, 60181, United States |

*Note: Please send purchase order number to DLCollections@csod.com within three (3) business days of order signing.

### Product(s)

| Product | Period 4/1/2022 - 3/31/2025 | |
|---|---|---|
| | **Qty** | **Annual Fee** |
| Extended Enterprise - User Based Licensing | 165 | $6,068.70 |
| Included Customer Success Package | 1 | $0.00 |
| Connect - EXE - User Based Licensing | 165 | $0.00 |
| Create Tool | 3 | $500.00 |
| Learning | 585 | $21,516.30 |
| Edge: Zoom Video VILT All Connectors | 1 | $0.00 |
| Unlimited Video Hosting and Delivery | 1 | $0.00 |
| Single Sign On - Standard (SSO) Connector | 1 | $0.00 |
| Edge Import | 1 | $0.00 |
| Connect | 585 | $0.00 |
| | | |
| **Annual Subtotal** | | USD 28,085.00 |
| **One Time Fee(s)** | | |
| **SERVICES (see attached Statement of Work)** | | USD 0.00 |
| **First Year Grand Total** | | USD 28,085.00 |

### Special Terms

Client agrees to an annual 3.00% fee increase for the Annual Fees in this Order, beginning on the first anniversary thereof. In exchange, except for Content purchases, Cornerstone agrees never to increase such prices beyond this rate during the Order Term and/or any renewal thereof for the same contract length, products and quantities.

### Invoicing Schedule

Payment terms for this Order shall be net 30 days.



+



Annual Fees are invoiced annually, beginning on the Order Start Date(s), through the Order End Date(s). If applicable, the final invoice for annual fees will be prorated. One-time fees are invoiced on the Order Start Date(s).

Except as otherwise expressly set forth herein, all purchases are non-cancelable and non-refundable.

Fees are exclusive of applicable sales, use, VAT, GST, digital tax, DST and other taxes and are net of withholding taxes.

Notwithstanding the foregoing, the annual fees set forth in this Order will be invoiced in equal semi-annual installments.

**Product Details**

---

**Included Package:**
New Functionality Readiness and Adoption – *adopt and drive usage of new features*
S.O.S. (Sustain Our System) – *get help with tasks and on-boarding new admins, and tune up your reports*
Education – *an efficient way to learn Cornerstone products, features and functions*
Customer Success – *proactive, strategic guidance and support to make the most of your investment*
Technical Support – *enhanced support and issue resolution*
Customer Community – *access self-help tools, connect with peers and stay up to speed on what's new*

See https://www.cornerstoneondemand.com/support/included for detailed support descriptions.

Original content created by Client using the Grovo Create Tool will be deemed Client Content.  Any proprietary Cornerstone or Cornerstone contracted third parties' content adapted or modified by Client using the Grovo Create Tool will be deemed Software.

**Terms and Conditions**

---

This Order is hereby incorporated into and made part of the master agreement located at https://files.cornerstoneondemand.com/legal/terms-and-conditions.pdf (the "**Agreement**").

Agreed and accepted:

| Client | | Cornerstone OnDemand, Inc. | |
|---|---|---|---|
| Signature: | *Jeff Carter* 9A02F2CB9FA44DC... | Signature: | *Jared Bogert* CE9AD7BF41C6455... |
| Name: | Jeff Carter | Name: | Jared Bogert |
| Title: | Managing Director | Title: | GVP Sales, North America |
| Date: | March 31, 2022 | Date: | March 31, 2022 |



# **EXHIBIT 5**

**From:** Britney Scott
**To:** Scott DiGregorio | CMPS; Chris Ledlie; Vendor Management; Sydney Lynn; Payables
**Cc:** Edgardo Balentine; Jordyn Costello
**Subject:** RE: Recruiting invoice
**Date:** Monday, August 19, 2024 4:13:17 PM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png
image006.png
image007.png
image008.jpg
image009.png
image010.jpg
image011.png
image012.png
image013.png
image014.png
image015.png
image016.png
image017.png
image018.png
image019.png
image020.png
image021.png
image022.png
image023.png
image024.png
image025.png
image026.png
image670542.jpg
image770867.png
image102816.png
image335719.png
image753482.png
image620243.png
image974675.png
image863874.png
image441939.png
image538004.png
image515787.png
image339205.png
image522941.png
image853389.png
Sara recruiter - NEO Home Loans Fee Agreement.pdf
DH LSGH 081_NEO Home Loans_Yvonne Alvarado _07.22.24.pdf

As long as @Sydney has approved the expense, I'm okay with it.
Payables should be able to put this in queue to cut the check.  @Payables there is a link in the invoice to obtain the W-9.

I see that the contract you sent is not executed but I assume it has been signed.
Please note that NEO is not a legal entity (they are presently a dba) and is not authorized to enter into or sign agreements in their name or in the name of LHL, so this contract is not accurate or correct.

**In the future, please be aware that all agreements must be entered in Luminate's name and signed by a Board Appointed Signor following contract review by our legal department.**

Let me know if you have any questions.



CONFIDENTIALITY AND SECURITY NOTICE 150953-1. THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL AND ARE SOLELY FOR ADDRESSEE.
THE INFORMATION MAY ALSO BE LEGALLY PRIVILEGED. THIS TRANSMISSION IS SENT IN TRUST, FOR THE SOLE PURPOSE OF DELIVERY TO THE INTENDED RECIPIENT.

IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, ANY USE, REPRODUCTION OR DISSEMINATION OF THIS TRANSMISSION IS STRICTLY PROHIBITED.
IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE IMMEDIATELY NOTIFY THE SENDER AND DELETE THIS MESSAGE

**From:** Scott DiGregorio | CMPS <Scott@TeamFQ.com>
**Sent:** Monday, August 19, 2024 11:35 AM
**To:** Britney Scott <Britney.Scott@goluminate.com>; Chris Ledlie <Chris.Ledlie@NEOHomeLoans.com>; Vendor Management <vendormanagement@goluminate.com>
**Cc:** Edgardo Balentine <Edgardo@TeamFQ.com>
**Subject:** Re: Recruiting invoice

Britney

Yes, one time fee.  Contract attached.  What else is needed to get that check cut and do you by chance know what the ETA of that would be?

Thanks team!



## Scott DiGregorio | CMPS

**Branch Leader**

NMLS# 302451

 (239) 910-6040
(239) 323-9310
Scott@TeamFQ.com
7370 College Pkwy, Unit 102, Fort Myers, FL 33907
TeamFQ.com



Licensed in the following states: AL, AK, AR, CA, CO, CT, DE, FL, GA, ID, IL, IN, IA, KS, KY, LA, MA, MD, MI, MN, MS, MO, MT, NE, NJ, NM, NV, NC, OH, OK, PA, SC, SD, TN, TX, UT, VA, WI, WY.

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Luminate Home Loans** NMLS #150953 or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession. Equal Housing Lender

**From:** Britney Scott <Britney.Scott@goluminate.com>
**Date:** Friday, August 16, 2024 at 10:11 AM
**To:** Chris Ledlie <Chris.Ledlie@NEOHomeLoans.com>, Vendor Management <vendormanagement@goluminate.com>
**Cc:** Scott DiGregorio | CMPS <Scott@TeamFQ.com>, Edgardo Balentine <Edgardo@TeamFQ.com>
**Subject:** Re: Recruiting invoice

Hi Chris,

Yes, I can help with this.  I assume this is a one-off recruitment and there is no ongoing contract or commitment beyond the hire of this employee, is that correct?  No payment on origination, bps, etc.

If there is a contract for this, can you send a copy my way?

Get Outlook for iOS

CONFIDENTIALITY AND SECURITY NOTICE 150953-2: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL AND ARE SOLELY FOR ADDRESSEE.
THE INFORMATION MAY ALSO BE LEGALLY PRIVILEGED. THIS TRANSMISSION IS SENT IN TRUST, FOR THE SOLE PURPOSE OF DELIVERY TO THE INTENDED RECIPIENT.
IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, ANY USE, REPRODUCTION OR DISSEMINATION OF THIS TRANSMISSION IS STRICTLY PROHIBITED.
IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE IMMEDIATELY NOTIFY THE SENDER AND DELETE THIS MESSAGE

**From:** Chris Ledlie <Chris.Ledlie@NEOHomeLoans.com>
**Sent:** Thursday, August 15, 2024 4:09:11 PM
**To:** Vendor Management <vendormanagement@goluminate.com>
**Cc:** Scott DiGregorio | CMPS <Scott@TeamFQ.com>; Edgardo Balentine <Edgardo@TeamFQ.com>
**Subject:** FW: Recruiting invoice

Hey Brit,

We have an invoice that needs to be paid for an outside recruiting group that helped Scott and Ed hire a LC.  We connected with Jordyn and she said this can be paid by AP, it just needs to go through you first

Can you help us out with the vendor approval?

Thanks,



### Chris Ledlie

**NEO Co-Creator**
NMLS# 1081444

310-938-5529
Chris.Ledlie@NEOHomeLoans.com

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Lumirate Home Loans NMLS #150953** or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession.

**From:** Scott DiGregorio | CMPS <Scott@TeamFQ.com>
**Sent:** Thursday, August 15, 2024 12:42 PM
**To:** Chris Ledlie <Chris.Ledlie@NEOHomeLoans.com>
**Cc:** Edgardo Balentine <Edgardo@TeamFQ.com>
**Subject:** Recruiting invoice

Hey Chris

Attached is an invoice for $9K for a recruiter that needs to be paid.  The recruiting firm doesn't accept credit cards and I was told that accounting only reimburses and doesn't pay bills.  This makes it challenging as I have to personally front the $9K and wait to be reimbursed when I'd much rather just pay the bill directly.  Either they can cut them a check or we can have a credit card attached to our cost center?

Please advise if there is a solution.

PS – there is a link to their W9 on the invoice : )

Please find the PDF attached.
Download the free Adobe Acrobat Reader to view and comment on this PDF.
https://www.adobe.com/go/reader_download

---------
Sent From Adobe Acrobat Reader



## Scott DiGregorio | CMPS

**Branch Leader**
NMLS# 302451

 (239) 910-6040
(239) 323-9310
Scott@TeamFQ.com
7370 College Pkwy, Unit 102, Fort Myers, FL 33907
TeamFQ.com



Licensed in the following states: AL, AK, AR, CA, CO, CT, DE, FL, GA, ID, IL, IN, IA, KS, KY, LA, MA, MD, MI, MN, MS, MO, MT, NE, NJ, NM, NV, NC, OH, OK, PA, SC, SD, TN, TX, UT, VA, WI, WY.

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of Luminate Home Loans NMLS #150953 or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession. Equal Housing Lender

# EXHIBIT 6

| | |
|---|---|
| **From:** | Lauren Havins |
| **To:** | Britney Scott |
| **Cc:** | Vendor Management; Pamela Lapham; Mike Pelham; Necco Stevens |
| **Subject:** | RE: Lenders Compliance Group |
| **Date:** | Tuesday, August 27, 2024 1:10:22 PM |
| **Attachments:** | image005.jpg |
| | image006.png |
| | image007.png |
| | image008.png |
| | image009.png |
| | image010.png |
| | image011.png |
| | image012.png |
| | image013.png |
| | image014.png |
| | image015.png |
| | image016.png |
| | image017.png |
| | image018.png |
| | image019.png |
| | image020.png |
| | image021.png |
| | image022.png |
| | image738208.png |
| | image011669.png |
| | image128217.png |
| | image307447.png |

Awesome – thanks Britney



## Lauren Havins

**Project Manager**

(619) 721-4474

Lauren.Havins@neohomeloans.com

100 Spectrum Center Drive, Suite 830 Irvine, CA 92618

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Luminate Home Loans NMLS #150953** or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession.

**From:** Britney Scott <Britney.Scott@goluminate.com>
**Sent:** Tuesday, August 27, 2024 10:02 AM
**To:** Lauren Havins <Lauren.Havins@neohomeloans.com>
**Cc:** Vendor Management <vendormanagement@goluminate.com>; Pamela Lapham <Pamela.Lapham@goluminate.com>; Mike Pelham <Mike.Pelham@goluminate.com>; Necco Stevens <necco.stevens@neohomeloans.com>
**Subject:** RE: Lenders Compliance Group

Thanks, Lauren.

I'm somewhat familiar with Lenders Compliance Group as I am on their mailing list.

I connected with Mike to confirm my assessment and we both agree that this would be classified as a Tier 4-Professional (service) vendor. This risk tier does not require extensive vetting. The only things we will require are the following:
If you can request these items, that would be great.

- Management Bios,
- COI,

- W-9, and
- Word version of the Proposal/Agreement for legal review/redline.

I have briefly reviewed the Proposal and would like to note that the draft will need to be updated to reflect Luminate as the Company/Client as NEO is not a legal entity and is not authorized to enter into contracts. If the services are for the exclusive use of NEO, we may be able to reference NEO as a dba of LHL. Cc'd Pam above to weigh in on that piece. Pam will also need to review the draft agreement so please provide the Word version as soon as you have that.

I have cc'd Pam, Mike, and Vendor Management above as they are included in my process.
Please be sure to cc all parties above on correspondence related to this vetting to ensure we are all up to speed on the request and to help avoid confusion or duplication of efforts.

Let me know if you have any questions.
Thanks so much!



CONFIDENTIALITY AND SECURITY NOTICE. 150953-1: THE CONTENTS OF THIS E-MAIL MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL AND ARE SOLELY FOR ADDRESSEE. THE INFORMATION MAY ALSO BE LEGALLY PRIVILEGED. THIS TRANSMISSION IS SENT IN TRUST, FOR THE SOLE PURPOSE OF DELIVERY TO THE INTENDED RECIPIENT. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, ANY USE, REPRODUCTION OR DISSEMINATION OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE IMMEDIATELY NOTIFY THE SENDER AND DELETE THIS MESSAGE

**From:** Lauren Havins <Lauren.Havins@neohomeloans.com>
**Sent:** Monday, August 26, 2024 9:04 AM
**To:** Britney Scott <Britney.Scott@goluminate.com>
**Subject:** Lenders Compliance Group

Hi Britney,

Here is the information on the Compliance Group I mentioned to you last week. Taryn is aware and supportive of this submission, we are engaging outside Compliance for general opinions on HR and customer concerns, assistance vetting vendors, etc. I am guessing this will be a Tier 1 due to the sensitivity of information shared, but let me know once you have a chance to review and I will request the appropriate items.

Thanks,



**Lauren Havins**
**Project Manager**
(619) 721-4474
Lauren.Havins@neohomeloans.com

100 Spectrum Center Drive, Suite 830 Irvine, CA 92618

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Luminate Home Loans** **NMLS #150953** or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession.

# EXHIBIT 7



# INVOICE

Invoice # 15406
Date: 06/01/2024
Due Upon Receipt

# Weinberg Gonser LLP

1100 Glendon Avenue, PH-9
Los Angeles, California 90024
Phone: (424) 239-2865
Tax ID: 90-0438581
www.wgcounsel.com

Neo Services LLC

## Neo Services LLC-General

## General

| Date | Notes | Attorney | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 05/02/2024 | review, revise and finish first draft of MOU with LHL | TG | 2.20 | $595.00 | $1,309.00 |
| 05/02/2024 | call with Tye to discuss MOU +preparation of final draft for client review | BB | 0.80 | $425.00 | $340.00 |
| 05/03/2024 | meeting with Danny to walk through MOU and address comments and changes | TG | 1.40 | $595.00 | $833.00 |
| 05/06/2024 | redlines to MOU based on notes from 5/3 call | BB | 1.50 | $425.00 | $637.50 |
| 05/06/2024 | quick review of Celebrity APA; finish updated draft of MOU for LHL | TG | 1.10 | $595.00 | $654.50 |
| 05/31/2024 | Call with Danny on potential Better mortgage deal | TG | 0.30 | $595.00 | $178.50 |

| | | |
|---|---|---|
| | **Subtotal** | **$3,952.50** |
| | **Total** | **$3,952.50** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 15406 | 06/01/2024 | $3,952.50 | $0.00 | $3,952.50 |

| | |
|---|---:|
| **Outstanding Balance** | **$3,952.50** |
| **Amount in Trust** | **$0.00** |
| **Total Amount Outstanding** | **$3,952.50** |

Please make all amounts payable to: Weinberg Gonser LLP

If you have any questions concerning this invoice, please contact Accounts Receivable (424) 239-2865.

Payment is due upon receipt with a 10 day grace period.

# Remittance Advice:

**Checking Information**

**Remit checks to:** <span style="color:red">****PLEASE NOTE OUR NEW MAILING ADDRESS AND LOCATION AS OF MAY 2024****</span>

WEINBERG GONSER LLP

1100 Glendon Avenue, PH-9

Los Angeles, CA 90024

**Wire Transfer Information**

**Bank Information:**

**Please include your invoice number in the description**

1st CENTURY BANK N.A.

ABA #122243761

Beneficiary: Weinberg Gonser LLP (Main Account)

Acct# 2100076120

Our SWIFT code is CETYUS66 for International Wire Transfers

**\*We are now accepting payments via credit card or echeck\***

Click the "Pay Online Now" link in your email or use the QR code provided.

<u>Please note:</u> for credit card payments, a processing fee will be added to your next month's

invoice (2.95% for most credit cards, 3.5% for American Express).

# EXHIBIT 8

| | |
|---|---|
| **From:** | Cody Hardridge |
| **To:** | Courtney Hoefener |
| **Subject:** | FW: Transfer info |
| **Date:** | Friday, January 3, 2025 11:04:45 AM |
| **Attachments:** | image398876.png |
| | image221819.jpg |
| | image299473.png |
| | image800042.png |
| | image277413.png |
| | image280669.png |

Good Morning Courtney,

Below is our first instance of a transfer reqeust and I want you to look at this and give me your thoughts. I met with these borrower's yesterday and they plan to build a house (at some point in the future). I went ahead and spoke with them about the coming merger and asked how she would like to proceed. Below is her response.

I didn't lead her on any exact verbiage and want to be sure that this is sufficient for Luminate's coverage. My requested response here would be to simply send her a zip file of her documents. Is this acceptable? Standing by for your guidance. Happy to chat as needed

Sincerely,



# Cody Hardridge

**Branch Leader**
NMLS# 329626

(405) 648-5934

Cody.Hardridge@NEOHomeLoans.com

4700 Gaillardia Parkway, Suite 100 Oklahoma City, OK 73142

Confidentiality Notice: The information contained in and transmitted with this communication is strictly confidential, is intended only for the use of the intended recipient and is the property of **Luminate Home Loans NMLS #150953** or its affiliates and subsidiaries. If you are not the intended recipient, you are hereby notified that any use of the information contained in or transmitted with the communication or dissemination, distribution, or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately return this communication to the sender and deletes the original message and any copy of it in your possession.

-----Original Message-----
From: LaTosha Ramos <lramos1019@gmail.com>
Sent: Thursday, January 2, 2025 4:59 PM
To: Cody Hardridge <cody.hardridge@neohomeloans.com>
Subject: Transfer info

[EXTERNAL EMAIL] DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Good evening,
We would like to transfer our information to NEO.

Thank you,
LaTosha Ramos Lake

Sent from my iPhone

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Good Evening,
  I did forward the EDD claim sheet to Amanda and they were returned to me.  So I forwarded them to Shalise.  Please let me know if you can not open them.
  Thanks ladies!  I will also sign the releases as well but our HR is a complete NIGHTMARE!!! Thank you ladies for all your hard work!
  Angela