# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CO., *et al.*,<br><br>Defendants. | Case No. 24-cv-02251-BAS-MSB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY (ECF No. 4);**<br><br>**(2) GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO EXCEED PAGE LIMITS (ECF No. 6); AND**<br><br>**(3) DENYING DEFENDANTS' *EX PARTE* APPLICATION TO STRIKE (ECF No. 7)** |

This case arises out of a dispute between Plaintiff Luminate Home Loans, Inc. ("Luminate"), a Minnesota-based corporation offering real estate financing solutions, and Defendants Better Mortgage Co. ("Better"), a competitor in the mortgage industry, along with three former Luminate employees: Daniel Horanyi, Jeanette Lee, and Lauren Havins ("Individual Defendants"). Luminate alleges that Defendants engaged in a coordinated effort to misappropriate its trade secrets and proprietary information to benefit Better's

newly developed retail mortgage division. Defendants dispute Luminate's allegations, contending that its actions stem from a failed business partnership and are aimed at stifling legitimate competition in the marketplace.

Before the Court is Luminate's Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery ("Motion"). (TRO Mot., ECF No. 4.) Defendants oppose the Motion. (Individual Defendants' Opp'n, ECF No. 14; Better's Opp'n, ECF No. 15.) Also before the Court is Luminate's *Ex Parte* Application for Leave to Exceed Page Limits (ECF No. 6) and Defendants' *Ex Parte* Application to Strike Plaintiff's Motion (ECF No. 7).

The Court held oral argument on January 24, 2025. (ECF No. 30.) Having considered the parties' filings and oral argument, the Court **GRANTS** Plaintiff's *Ex Parte* Application for Leave to Exceed Page Limits (ECF No. 6) and **DENIES** Defendants' *Ex Parte* Application to Strike Plaintiff's Motion (ECF No. 7). Furthermore, the Court **DENIES** Plaintiff's Motion. (ECF No. 4.)

I.  BACKGROUND

Luminate offers various mortgage products and services. (Compl. ¶¶ 12–13, ECF No. 1.) According to Luminate, it acquired a mortgage division known as NEO Home Loans ("NEO") from competitor Celebrity Home Loans, LLC, through an asset purchase agreement executed in December 2022. (*Id.* ¶¶ 14–15.) Luminate claims that the acquisition encompassed "all assets related to the NEO division . . . including but not limited to the relevant trade secrets and intellectual property." (TRO Mot. at 4:16–23.) Following the acquisition, Luminate asserts that it made significant investments in the NEO division, including the integration of approximately 350 employees and infrastructure into Luminate's broader operations. (Compl. ¶ 17.)

Luminate contends that Individual Defendants were high-ranking employees within its NEO division. (*Id.* ¶¶ 16, 44, 49.) Luminate avers that, as a condition of their employment, Individual Defendants entered into agreements designed to safeguard Luminate's confidential information and trade secrets. (*Id.* ¶¶ 32–36, 41, 46–47, 52–53;

Exs. 1, 4, 6 at § 9.1.)  Individual Defendants purportedly agreed to Luminate's policy prohibiting dual employment.  (*Id.* ¶¶ 33, 38, 48, 53, 90; Exs. 2, 5, 7.)  And Defendant Horanyi's employment contract included an ostensible non-solicitation clause.  (*Id.* ¶ 42; Ex. 3 at § 5.8.)

Luminate alleges that, beginning in August 2024, Defendants conspired to misappropriate its trade secrets and proprietary information and sought to recruit Luminate employees to join Better with the intent of building a rival retail lending division within the competing company.  (Compl. ¶¶ 10, 157.)  According to Luminate, Individual Defendants, while still employed by Luminate, provided Better with Luminate's confidential and proprietary information, including, *inter alia*, "training materials, employee roster and salary lists, employment and third-party contracts, business strategies, loan processing procedures, loan profit margins, financial details for its divisions and branches, economic models, lead lists and leads." (*Id.* ¶ 109.)  Luminate claims Better used this information to develop its own retail lending division, "endeavor[ing] to replicate Luminate's operations and financials." (*Id.* ¶ 118.)

Additionally, Luminate contends that Individual Defendants solicited Luminate employees to join Better, including facilitating meetings with Better representatives and offering contracts to induce employees to transition.  (*Id.* ¶¶ 101, 145.)

On October 25, 2024, Luminate terminated Individual Defendants and six other employees within the NEO division for their alleged misconduct and announced the wind-down of the NEO division.  (*Id.* ¶¶ 28–29.)  Following these terminations, Luminate claims to have discovered that its Director of Finance, Ms. Sydney Lynn, had downloaded 3,998 files containing Luminate's trade secrets and confidential information.  (TRO Mot. at 16:24–17:6; Markowitz Decl. ¶¶ 14–16; Exs. 3, 4.)  Luminate subsequently terminated Ms. Lynn and demanded the immediate return of the materials.  (TRO Mot. at 17:6–8; Markowitz Decl. ¶ 17; Ex. 5.)

Defendants present a counter-narrative that sharply contests Luminate's allegations. They assert that NEO Services LLC ("NEO")[1] was founded by Mr. Daniel Horanyi and others as an independently owned and operated entity well before any association with Luminate. (Individual Defendants' Opp'n at 4:26–28; Horanyi Decl. ¶¶ 4, 19.) According to Defendants, NEO was established to address inefficiencies in retail mortgage operations and has always maintained its independence, even while partnering with companies such as Celebrity and Luminate. (Individual Defendants' Opp'n at 5:14–24; Horanyi Decl. ¶ 7.) Defendants further contend that NEO's intellectual property was never sold to Luminate or any other entity. (Individual Defendants' Opp'n at 6:1–5; Horanyi Decl. ¶ 9.) Instead, they claim NEO entered into a partnership with Luminate under the condition that it would retain autonomy and control over its intellectual property. (Individual Defendants' Opp'n at 6:6–7:8; Horanyi Decl. ¶¶ 10, 13; Grant Decl. ¶ 20.) Defendants assert that NEO operated independently while partnering with Luminate, retaining its branding and proprietary assets, as well as the ability to transition to another entity if necessary. (Individual Defendants' Opp'n at 7:10–16; Horanyi Decl. ¶¶ 15–16; Grant Decl. ¶ 20.)

According to Defendants, by mid-2024, NEO leadership began exploring a partnership with Better as a contingency plan in case negotiations with Luminate failed. (Individual Defendants' Opp'n at 8:22–9:4; Horanyi Decl. ¶¶ 21, 23; Grant Decl. ¶ 31.) Defendants maintain that no confidential or proprietary information belonging to Luminate was shared with Better during NEO's discussions with the company. (Individual Defendants' Opp'n at 9:4–8; Horanyi Decl. ¶ 24; Lynn Decl. ¶¶ 22–23.) Better avers that it operated under the impression that NEO owned all the information shared by Individual Defendants. (Rosenberg Decl. ¶ 7; Smith Decl. ¶¶ 11–12.) Meanwhile, Ms. Lynn asserts that the information she downloaded was created by and belonged to NEO, with most of the information predating NEO's partnership with Luminate. (Lynn Decl. ¶ 31.)

---

[1] The parties, in their respective pleadings, refer to NEO differently—specifically as NEO Home Loans and NEO Services LLC. For purposes of this Order, the Court does not distinguish between these entities and refers to both collectively as NEO.

Defendants further contend that Luminate initially supported NEO's transition to Better, with Luminate's CEO, Mr. Taryn Reuter, explicitly directing NEO employees, including Ms. Lynn, to facilitate the transition. (Better's Opp'n at 15:2–8; Ledlie Decl. ¶¶ 17–19.) However, Defendants claim that by December 2024, Luminate abruptly reversed its position and sought to obstruct the transition. (Better's Opp'n at 15:14–15.)

Luminate initiated this action on December 2, 2024. (Compl. at 30:15.) Luminate asserts seven causes of action: (1) breach of contract and (2) breach of fiduciary duties against Individual Defendants; (3) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and (4) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*, against all Defendants; (5) tortious interference with contractual relations against all Defendants; (6) unfair competition in violation of Cal. Bus. & Prof. Code § 17200 against Better; and (7) civil conspiracy against all Defendants. (Compl. ¶¶ 83–160.) Luminate seeks injunctive relief, monetary damages, and other equitable remedies. (*Id.* at 1:23–26.)

Luminate requests that the Court issue a broad and sweeping injunction providing, *inter alia*, the following relief. First, Luminate seeks to protect and recover its purported proprietary information by requiring Defendants to submit their electronic devices and accounts for forensic inspection, compelling Better to provide an affidavit detailing how the information was acquired, and ordering the segregation, return, and certification of all such materials held by Defendants. (TRO Mot. at 44:25–46:19.) Second, Luminate aims to impose immediate restrictions on Defendants' actions, including an injunction preventing the use, disclosure, or deletion of its claimed trade secrets and proprietary information, as well as prohibiting Defendants from employing current or former Luminate employees in competing roles within Better's NEO subdivision. (*Id.*) Finally, Luminate demands expedited legal and procedural measures, such as requiring Defendants to respond to discovery requests within 14 days, attend depositions within 30 days, bear the costs of forensic analysis and data collection, and pay Luminate's attorneys' fees. (*Id.*)

On January 9, 2025, Luminate voluntarily dismissed Defendant Lauren Havins from the Complaint without prejudice. (ECF No. 12.) On January 24, 2025, the Court held oral argument, during which the parties presented their arguments concerning the temporary restraining order.[2] (ECF No. 30.)

## II.     LEGAL STANDARD

Rule 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the Ninth Circuit "has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (cleaned up). Generally, a TRO is considered to be "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## III.    ANALYSIS

Luminate argues that it will "suffer [] irreparable harm" due to Defendants' alleged continued use of its confidential and proprietary information, trade secrets, and ongoing recruitment of its employees. (TRO Mot. at 34:25–27.) "[H]arm is irreparable if it cannot be adequately compensated or corrected at a later date by legal remedies or monetary

---

[2] The Court also addressed the parties' *Ex Parte* Applications at the hearing. (ECF Nos. 6, 7.) While Plaintiff's Motion fails to comply with Civil Local Rule 7.1(h), which promotes judicial efficiency, the Court exercises its discretion to consider the merits of Plaintiff's arguments.

damages." *Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Generally, economic harm is not considered irreparable, as monetary damages are deemed adequate. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). However, "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Id.*; see also *Stuhlbarg Int'l Sales*, 240 F.3d at 841 (recognizing that evidence of a threatened loss of prospective customers or goodwill supports a finding of irreparable harm). Still, a court's finding of such harm cannot be "grounded in platitudes rather than evidence." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

District courts in the Ninth Circuit have been divided on whether irreparable harm may be presumed in trade secret misappropriation cases. *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1208 (E.D. Cal. 2020) (collecting cases). Some courts have held that demonstrating a likelihood of success on a trade secret misappropriation claim is sufficient to establish irreparable harm. *See, e.g.*, *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 19-CV-4162-SBA, 2021 WL 1186335, at *10 (N.D. Cal. Mar. 1, 2021). Others, however, have declined to apply such a presumption, citing the Ninth Circuit's skepticism about presumptions in other intellectual property contexts. *See, e.g.*, *Zendar Inc. v. Hanks*, No. 20-CV-03391-JSW, 2020 WL 4458903, at *5 (N.D. Cal. May 27, 2020) (finding no presumption of irreparable harm given the Ninth Circuit's rejection in copyright cases).

Historically, some intellectual property claims, like trademark infringement, carried a presumption of irreparable harm upon establishing a likelihood of success. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999). However, more recent Ninth Circuit cases, influenced by the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006), have cast doubt on the continued validity of such presumptions. *Herb Reed Enters.*, 736 F.3d at 1250 ("Gone are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of

[consumer] confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'" (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987))).

While the Ninth Circuit has not directly addressed whether *eBay* precludes presuming irreparable harm in trade secret cases, this Court aligns with those that require concrete evidence rather than relying on presumptions in this instant action. *See, e.g.*, *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1126 (D. Nev. 2013) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011), in declining to presume irreparable harm for a trade secret claim). "This approach collapses the likelihood of success and the irreparable harm factors. Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters.*, 736 F.3d at 1250. Consequently, a plaintiff cannot establish irreparable harm through "cursory and conclusory" allegations; rather, it must be substantiated by evidence. *Id.*

Luminate cites *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C10-00202 JF, 2010 WL 1028254, at *8 (N.D. Cal. Mar. 18, 2010), arguing that "California courts have presumed irreparable harm when proprietary information is misappropriated" and also cites *Stuhlbarg Int'l Sales*, 240 F.3d at 841, arguing that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." (TRO Mot. at 36:10–12.) However, as previously noted, Ninth Circuit precedent indicates that such a presumption is far from automatic, as Luminate claims; instead, it may necessitate a factual showing that immediate and concrete harm is likely. *See Flexible Lifeline Sys.*, 654 F.3d at 997–98 (rejecting the presumption of irreparable harm absent factual support). Moreover, though "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm," a district court's "analysis of irreparable harm" must still be "grounded in [] evidence" of such harm. *Herb Reed Enters.*, 736 F.3d at 1250.

Luminate claims it not only "faces the loss of goodwill as a result of Defendants' actions," but also "fac[es] the permanent loss of numerous employees." (TRO Mot. at

35:2–5.) Luminate further contends that the threat of being driven out of business is "essentially the threat posed by Defendants' wrongful conduct." (*Id.* at 35:16–21.) Additionally, Luminate argues that "it is impossible to currently calculate the extensive revenue that will be lost from Defendants' unlawfully built NEO division . . . ." (*Id.* at 35:10–12.) Ultimately, however, Luminate offers only "conclusory or speculative allegations" in its moving papers.³ *Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393-YGR, 2018 WL 659105, at *9 (N.D. Cal. Feb. 1, 2018).

While "[t]he potential to lose customers, employees, goodwill, and revenue certainly supports a finding of the possibility of irreparable harm," Luminate must still "rel[y] on *evidence* to establish this type of irreparable harm, not mere speculation of such harm." *Prime Grp., Inc. v. Dixon*, No. 2:21-CV-00016-RAJ, 2021 WL 1664007, at *6 (W.D. Wash. Apr. 28, 2021) (emphasis in original). Individual Defendants correctly highlight that "Luminate fails to cite tangible harm, such as lost clients, market share decline, or measurable negative industry impact. Its imminent harm assertions are inherently speculative." (Individual Defendants' Opp'n at 21:7–9.) The Court agrees and finds that Luminate has not provided sufficient evidence of a likelihood of irreparable harm concerning its goodwill, competitive standing, or business viability to meet the requirement of "a clear showing."⁴ *Winter*, 555 U.S. at 22.

---

³ In support of its motion for a TRO, Luminate submitted a declaration from its out-of-state counsel, Mr. Lucas Markowitz. (TRO Mot. Ex. B.) However, the declaration also fails to provide evidentiary support to establish a likelihood of irreparable harm.

⁴ In its Reply, Luminate, for the first time, presents an email exchange from a customer requesting to transfer their business elsewhere as purported evidence of the irreparable harm it claims to face. (Reuter Decl. ¶ 41, Ex. 8; Pelham Decl. ¶ 21, Ex. 3.) While the Court acknowledges that such evidence may, in some circumstances, constitute the type of factual showing needed to support a finding of a likelihood of irreparable harm, it cannot serve as the basis for granting emergency injunctive relief in this case because it was not timely presented.

Generally, "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Burnham v. City of Rohnert Park*, No. C 92–1439 SC, 1992 WL 672965, at *1 n.2 (N.D. Cal. May 18, 1992) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)). Submitting "new evidence . . . as part of a reply is improper" because it deprives Defendants of an adequate opportunity to respond. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal.

Moreover, Luminate's claim of irreparable harm relies on the assertion that Defendants' activities are forcing it to "take steps to wholly restructure its NEO division and bring hundreds of employees and branches under new management or incorporate them into other aspects of its business." (TRO Mot. at 35:10–12.) While such restructuring may pose operational challenges, allegations of business disruptions, including employee departures, do not, by themselves, establish irreparable harm absent probative evidence of non-compensable damage. *See, e.g.*, *Schrader v. Pakseresht*, No. 3:22-CV-01957-JR, 2023 WL 2609572, at *7 n.5 (D. Or. Mar. 23, 2023) ("[T]he ability to obtain damages for lost employees has led other courts to conclude that, absent proof that a particular employee provided unique services, the loss of employees does not constitute an irreparable harm."). Furthermore, if this restructuring is already ongoing, then any alleged emergency has passed, and Luminate has failed to demonstrate the immediacy necessary to justify emergency injunctive relief. Consequently, monetary damages, as originally pled by Luminate, are an adequate and available remedy should it ultimately prevail on its claims. (Compl. at 30:1–9.)

Because Luminate has not proffered sufficient evidence to clearly demonstrate the likelihood of imminent, irreparable injury, the Court denies its Motion for a TRO. In light of the Court's determination, the Court need not reach the likelihood of success on the merits of Luminate's claims or address the balance of equities and public interest factors. "A failure to establish one of the *Winter* prongs is fatal to a motion for temporary injunctive

---

2018) (quoting *Morris v. Guetta*, 2013 WL 440127, *8 (C.D. Cal. Feb. 4, 2013)). As such, the Court has the discretion to reject new evidence or arguments introduced in a reply and, in general, "should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The Court exercises its discretion not to consider it here.

Furthermore, even if the Court were to consider this evidence, Luminate fails to make a clear showing that it is likely to suffer irreparable harm in the absence of injunctive relief. While the Court could draw an inference in Luminate's favor from this evidence and deduce that the email exchange supports a finding that Defendants' alleged misconduct is causing Luminate to lose customers, it is equally plausible that the customer sought to transfer for entirely unrelated reasons, such as securing a better deal or preferring to work with a different mortgage provider. Without additional evidence, the Court is not persuaded that the email exchange is sufficiently probative to demonstrate a likelihood of irreparable harm warranting the broad and sweeping injunctive relief Luminate seeks.

relief." *Dixon*, 2021 WL 1664007, at *1. Additionally, since the parties have had the opportunity to fully brief the TRO, the Court finds that further briefing on the preliminary injunction is unnecessary and denies Luminate's request. Lastly, the Court denies Luminate's request for expedited discovery because it has not demonstrated good cause. *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 354 (E.D. Cal. 2008) ("Good cause is present when 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" (quoting *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 273 (N.D. Cal. 2002))). Luminate has not met this standard, and the Court finds no justification for the request.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's *Ex Parte* Application for Leave to Exceed Page Limits (ECF No. 6) and **DENIES** Defendants' *Ex Parte* Application to Strike Plaintiff's Motion (ECF No. 7). Furthermore, the Court **DENIES** Plaintiff's Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery. (ECF No. 4.)

**IT IS SO ORDERED.**

**DATED: February 7, 2025**

**Hon. Cynthia Bashant, Chief Judge
United States District Court**