1
2
3
4
5
6
7
8
9          **UNITED STATES DISTRICT COURT**
10        **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 | LUMINATE HOME LOANS, INC.,          Case No. 24-cv-2251-BAS-MSB
13 |                          Plaintiff,
                                          **ORDER:**
14 |      v.                                (1) **GRANTING IN PART**
15 | BETTER MORTGAGE CO., *et al.*,            **DEFENDANTS DANIEL**
                                              **HORYANYI'S AND**
16 |                        Defendants.       **JEANETTE LEE'S MOTION**
                                              **TO DISMISS (ECF No. 45);**
17 |                                          **AND**
18 |
19 |                                        (2) **GRANTING IN PART**
                                              **DEFENDANT BETTER**
20 |                                          **MORTGAGE CO.'S MOTION**
                                              **TO DISMISS (ECF No. 46)**
21 |
22 | BETTER MORTGAGE CO.,
23 |                     Counterclaimant,
24 |      v.
25 | LUMINATE HOME LOANS, INC., *et. al.*,
26 |             Counterclaim Defendants.
27
28

24cv2251

Presently before the Court are a motion to dismiss submitted by Defendants Daniel Horanyi ("Horanyi") and Jeanette Lee ("Lee") (ECF No. 45); and a motion to dismiss submitted by Defendant Better Mortgage Company ("Better") (ECF No. 46).  For the reasons below, the Court **GRANTS IN PART** Defendants' motions to dismiss (ECF Nos. 45, 46).  The Court **GRANTS** Plaintiff leave to amend any dismissed claims by **<u>December 11, 2025</u>**.

## I.     BACKGROUND

Plaintiff Luminate Home Loans, Inc. is a mortgage loan lender.  In 2022, Plaintiff acquired a mortgage division known as NEO Home Loans from a struggling competitor, Celebrity Home Loans LLC ("Celebrity").  Over the next two years, Plaintiff made significant developments to its NEO Division following acquisition—including creating new mortgage offers and training NEO managers.  (ECF No. 36 ¶¶ 24–28.)

Defendant Daniel Horanyi ("Horanyi") was initially a manager at Celebrity, and served as Division President for NEO within Luminate after making the transition from Celebrity upon Luminate's acquisition of NEO in 2022.  (*Id*. ¶¶ 12–17.)  As a condition of his at-will employment, Horanyi reviewed and signed an employee agreement, an employee handbook, and Plaintiff's policy prohibiting dual employment.  The employee agreement and handbook impose obligations of protecting Plaintiff's confidential business information (including trade secrets) and of maintaining loyalty to Plaintiff while employed and one year post-employment.  (*Id*. ¶¶ 29–46.)  Defendant Jeanette Lee ("Lee") signed the same contracts upon joining Plaintiff in January 2023, as a Vice President of Branch Operations within NEO post-acquisition.  (*Id*. ¶¶ 47–51.)

In October 2024, Plaintiff terminated the employment of Horanyi and Lee upon discovering they were coordinating with a new retail loan company, Defendant Better Mortgage Co. ("Better"), throughout the course of their employment.  (*Id*. ¶¶ 117, 155.)  Horanyi and Lee allegedly had received employment offers from Better after providing Better with Plaintiff's confidential information and trade secrets to facilitate Better's accelerated entry into the retail loan marketplace, diverting Plaintiff's customers toward

Better's services through misrepresenting to customers that Plaintiff's NEO Home Loans Division was joining Better, and allegedly coordinating with Plaintiff to recruit employees from Plaintiff to work for Better upon launch. (*See id*. at 2–3.)

On December 2, 2024, Plaintiff Luminate Home Loans, Inc. ("Plaintiff") filed a complaint against Defendants Better Mortgage Co., Lauren Havins, Daniel Horanyi, and Jeanette Lee. (ECF No. 1.) On March 10, 2025, Plaintiff filed the operative amended complaint against Defendants Better Mortgage Co., Daniel Horanyi, and Jeanette Lee ("Defendants"). (ECF No. 36.) In the amended complaint, Plaintiff stated causes of action for the following: (1) breach of contract against Horanyi and Lee; (2) promissory estoppel against Horanyi and Lee; (3) breach of fiduciary duties and duties of loyalty against Horanyi and Lee; (4) misappropriation of trade secrets in violation of federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* against Horanyi and Lee; (5) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.* against Defendants; (6) tortious interference with contractual relations against Defendants; (7) unfair competition in violation of §17200 *et seq.* of the California Business and Professions Code, the Unfair Competition Law ("UCL"); and (8) violation of the Lanham Act, 15 U.S.C. § 1125(a), against Better.

The Court finds the matter appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II.    LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although courts accept Plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.    ANALYSIS

### A.    Trade Secret Claims: DTSA and CUTSA

Plaintiff asserts claims under the DTSA and CUTSA against all Defendants. (ECF No. 36 ¶¶ 152–189.) To state a claim for misappropriation of trade secrets under CUTSA, a plaintiff must allege: (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret. *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018) (citing *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)). A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836.

#### 1.    Existence of Trade Secret

Both DTSA and CUTSA require plaintiffs to plead "[t]he existence of a protectable trade secret." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 964 (S.D. Cal. 2021). The definition of trade secret under both statutes consists of three elements: "(1) information, (2) that is valuable because it is unknown to others, and (3) that

the owner has attempted to keep secret." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

§ 1839(3) of the DTSA defines a "trade secret" as (emphasis added):

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>> (A) the owner thereof has taken **reasonable measures to keep such information secret**; and
>> (B) the **information derives independent economic value**, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information

§ 3426.1(d) of the CUTSA defines a "trade secret" as "information" that (emphasis added):

> (1) **Derives independent economic value**, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the **subject of efforts that are reasonable** under the circumstances **to maintain its secrecy**

"[I]nsight, knowledge[,] and know-how acquired by an insider to a particular trade does not, in and of itself, constitute trade secrets." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017) (quoting *Agency Solutions.com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1019 (E.D. Cal. 2011)).

### i.    Whether Plaintiff Identified Trade Secrets with Sufficient Particularity

In establishing the existence of a trade secret, "[a] plaintiff need not 'spell out the details of the trade secret.'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-1409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). Still, Plaintiff must "describe

24cv2251

the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). A plaintiff must "clearly refer to tangible trade secret material" rather than referring to information "which potentially qualifies for trade secret protection." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (citations omitted).

"Vague references to an enormous array of potential sources do not suffice to survive" a motion to dismiss when the court cannot "determine where trade secret protection begins and ends as to any of this material." *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–CV–02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013). Similarly, "conclusory and generalized allegations" are insufficient when described "in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets." *See Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *cf Navigation Holdings*, 445 F. Supp. 3d at 77 (finding the plaintiffs' description of their client information sufficient when they thoroughly detailed who their clientele included, what information they maintain about their clientele, and the work put into assembling the clientele database).

The key factor differentiating "trade secrets" from "vague references. . . to potential sources" is whether the alleged trade secrets are "matters of general knowledge in the trade or of special persons who are skilled in the trade." *InteliClear, LLC.*, 978 F.3d at 658; *Synopsys, Inc.*, 2013 WL 5770542, at *6. Certain information can constitute a protectable trade secret when it is "self-evident" that such information is "not generally known to others in the trade." *TMX Funding, Inc. v. Impero Techs., Inc.,* No. C 10-00202 JF (PVT), 2010 WL 2509979, at *4 (N.D. Cal. June 17, 2010).

Here, Plaintiff alleges that the trade secrets appropriated by Defendants include:

1. operational procedures and training materials (ECF No. 36 ¶¶ 69, 73, 74, 81, 83, 88, 89, 154, 155, 171, 172);

2. loan data showing types of loans offered, pricing information for each loan, and revenue (*id.* ¶¶ 69, 80, 82, 84, 86, 90, 154, 155, 171, 172);

3. branch leases, performance, and revenue data (*id.* ¶¶ 69, 80, 82, 85, 88, 90, 154, 155, 171, 172);

4. company cost allocation information for corporate and branch expenses and revenue splits (*id.* ¶¶ 69, 75, 83, 87, 88, 154, 155, 171, 172);

5. organizational documents and employment contracts for Plaintiff's company structure and specifically its NEO division both as a subdivision and its preparations for creating NEO as a standalone wholly owned entity of Plaintiff (*id.* ¶¶ 69, 70, 76, 77, 154, 155, 171, 172);

6. employee data showing each of Plaintiff's employees' compensation, production history, profitability, and contact information (*id.* ¶¶ 69, 75, 79, 80, 84, 90, 154, 155, 171, 172);

7. economic forecasting models for Plaintiff (*id.* ¶¶ 69, 86, 88, 90, 154, 155, 171, 172);

8. records for secondary market sales of loans including who Plaintiff contracts with, the amount they are paid per loan and loan type (*id.* ¶¶ 69, 86, 154, 155, 157, 171, 172);

9. loan lead lists (*id.* ¶¶ 69, 72, 78, 90, 99, 154, 155, 171, 172);

10. individual customer lead information (*id.* ¶¶ 69, 72, 91, 92, 154, 155, 171, 172);

11. historical records for Plaintiff-closed loans (*id.* ¶¶ 69, 80, 83, 154, 155, 171, 172); and

12. marketing strategies (*id.* ¶¶ 69, 78, 86, 154, 155, 171, 172)

24cv2251

For each of the above categories of information, Plaintiff also references exhibits attached to the amended complaint. (*See* ECF Nos. 58-1, 36-13 to 36-26.)

At face value, entities outside of Plaintiff seem unlikely to have general knowledge of its "business methods," including all the information Plaintiff listed above. *Id.* Plaintiff has alleged that in the lending industry, each lender's system including its "internal processes for product selection, borrower coordination, pricing structures, application configuration, and customer onboarding" are not freely shared amongst competitors—as each of these processes are "what give that company an edge." (ECF Nos. 58 at 21:2–6, 36 ¶ 74.) In other words, the business operations information for which Plaintiff seeks trade secret protection is not general industry knowledge but information specific to Plaintiff.

Defendants contest nonetheless that, as a practical matter, some of the information which Plaintiff seeks trade secret protection is publicly available through Plaintiff's public websites and on third-party websites like Glassdoor, indeed.com, and LinkedIn. (ECF No 46-1 at 1–7.) The publicly listed information allegedly includes Plaintiff's employee information (including salary and credentials) and its "marketing plan, a list of all of its loan products, and a list of its tech stack." (*Id.* at 18:8–12.) Still, courts have held that an arrangement of publicly available information (*e.g.*, a list of customers and their contact information) may still be subject to trade secret protection if that arrangement would save competitors time and effort to locate it. *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) ("although publication names and contact information might be public knowledge, it is clear Plaintiff has put in time and effort to develop other specific information, inter alia, its customer list, preferences, pricing structures, and 'do not deliver' list. . . this information is [thus] protectable"); *Pollara v. Radiant Logistics, Inc.*, 650 F. App'x 372, 373 (9th Cir. 2016) ("[A] customer list may constitute a protected trade secret if it includes nonpublic information that provides 'a substantial business advantage' to competitors) (citing *Morlife Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997)); *Pyro Spectaculars N., Inc. v. Souza*,

861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012) (explaining that a compilation of information that "provides a virtual encyclopedia of [plaintiff's] customer, operator, and vendor information at a competitor's fingertips, allowing the competitor to solicit both more selectively and more effectively without having to expend the effort to compile the data" may be entitled to trade secret protection).

Courts have also previously held that the kinds of information Plaintiff alleges above can constitute protectable trade secrets. *See e.g.*, *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) (holding that marketing materials, along with cost and pricing information, was a trade secret); *StonCor Grp., Inc. v. Campton*, No. C05–1225JLR, 2006 WL 314336, at *5 (W.D.Wash. Feb. 7, 2006) (finding alleged misappropriation of "proprietary and confidential information concerning. . . sales and marketing strategies, pricing and pricing policies, and customer lists and installers" sufficient to state a claim); *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, No. 23-CV-02483-LB, 2024 WL 115933, at *11 (N.D. Cal. Jan. 10, 2024) (finding employee contact information "tether[ed]" to "salary, markets, skills, and business relationships" to render employee information as trade secrets); *MAI Sys. Corp. v. Peak Comput. Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (recognizing a company's confidential customer database "has potential economic value because it allows a competitor. . . to direct its sales efforts to the plaintiff company's customers," and constitutes a trade secret if the company has taken reasonable steps to keep the database secret); *Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *5 (S.D. Cal. Aug. 21, 2018) ("marketing-related information, such as marketing plans and marketing analysis may constitute a trade secret").

It is true that "[a]lleged effort and expenditure of [a] resource [(*e.g.*, time, effort, and money)] alone is [not] enough to invoke trade secret protection." *FBC Mortg., LLC v. Broker Sols., Inc.*, No. 23-CV-00143-CRB, 2023 WL 4916381, at *7 (N.D. Cal. Aug. 1, 2023). However, Plaintiff has sufficiently alleged that beyond its own efforts to compile publicly available information, its arrangement of that information provided Defendants a

"shortcut" compared to compiling that information from online sources.  (ECF No. 58 at 15:12–19.)

Thus, at the current stage of litigation and construing the facts in favor of Plaintiff as the nonmoving party, the Court finds that Plaintiff has sufficiently alleged that the disputed information (*see* ECF Nos. 58-1, 36-13–36-26) qualifies as trade secrets.  *See Cahill*, 80 F.3d at 337–38; *see also Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *5 (S.D. Cal. Aug. 21, 2018) ("[T]rade secret[s]. . . need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret").

### 2.    Ownership of Trade Secret

To prove ownership under both DTSA and CUTSA, the holder of the information must show that (1) they have "taken reasonable measures to keep such information secret," and (2) the "information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3); *See* Cal. Civ. Code § 3426.1(d).  Although DTSA requires that the trade secret not be readily ascertainable, CUTSA does not.  *See* 18 U.S.C. § 1839(3)(B); Cal. Civ. Code § 3426.1(d)(1).

#### i.    Reasonable Measures to Keep Information Secret

Plaintiff has taken reasonable efforts to maintain the secrecy of its purported trade secrets.  Plaintiff entrusted its employees with its alleged trade secrets under the condition that they refrain from using or disclosing them at any time during or after their employment with Plaintiff (ECF No. 36 ¶ 159).  *See FBC Mortg., LLC v. Broker Sols., Inc*., No. 23-CV-00143-CRB, 2023 WL 4916381, at *4 (N.D. Cal. Aug. 1, 2023).  Additionally, Plaintiff has taken steps to "restrict[] employees' access [and] us[e] password protected logins for certain information."  (ECF No. 36 ¶ 159.)

#### ii.    Independent Economic Value

24cv2251

Generally, information "derived from publicly available sources or otherwise are common knowledge to persons in the mortgage lending industry" are not protectable trade secrets that provide plaintiffs independent economic value. *Marsh & McLennan Agency, LLC v. Teros Advisors, LLC*, No. 20-CV-02679-HSG, 2021 WL 4846245, at *4 (N.D. Cal. Aug. 11, 2021) (citing *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997)).

Here, Plaintiff has sufficiently pled the independent economic value of the trade secrets. Not only has Plaintiff alleged it expended effort to cultivate and organize the assets discussed above (*supra* § III.A.1.i), but also that misappropriation of such assets would provide a substantial business advantage to Defendant as Plaintiff's competitor. (*See, e.g.*, ECF Nos. 36 ¶ 74 ("While each mortgage lender may use broker flows and training methods for its staff. . . their individual processes typically differ. . . Lenders do not freely share what systems they use with competitors or how they use them"); 58 at 15:12–19 ("Defendants took a shortcut. . . They exported file shares [of Plaintiff's employee information and loan share information, rather than independently gathering such information online]").)

### 3.    Misappropriation of the Trade Secret

Simplified, § 3426.1(b) of the CUTSA ("§ 3426.1(b)"), defines misappropriation as "(1) the improper acquisition of a trade secret or (2) the nonconsensual disclosure or use of a trade secret." *TGG Mgmt. Co. Inc. v. Petraglia*, No. 19-CV-2007-BAS-KSC, 2020 WL 2767362, at *4 (S.D. Cal. May 28, 2020) (citing § 3426.1(b)); *see also Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) (citing *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 289 (2002)). Misappropriation under the federal DTSA is nearly identical. Though, the DTSA requires that Plaintiff also allege the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *4 (S.D. Cal. Aug. 21, 2018).

Here, again, Plaintiff alleges Horanyi and Lee accessed Plaintiff's alleged trade secrets in their leadership roles at Plaintiff's NEO division, and shared Plaintiff's alleged

trade secrets with Better without Plaintiff's permission.  (ECF No. 36 ¶¶ 61, 62, 162–166.)  Better had allegedly induced Horanyi and Lee into sharing Plaintiff's trade secrets, including through offering Horanyi and Lee offers of employment.  (*Id*.)  Better, thus, "improper[ly] acqui[red] [Plaintiff's] trade secret[s]."  *TGG Mgmt.*, 2020 WL 2767362, at *4.  And, Horanyi and Lee disclosed Plaintiff's trade secret without Plaintiff's consent—in violation of the CUTSA and DTSA.  *Id*. at *4.

Regarding the DTSA's requirement for proving intended use in interstate commerce, Plaintiff alleges that Defendants had improperly acquired and used Plaintiff's trade secrets in connection with a home loan service lender—Better Mortgage Co.—that Defendants "intended for use in. . . interstate commerce."  *See* 18 U.S.C. § 1836(b)(1); *see also Yeiser*, 2018 WL 3993370, at *4.  For instance, Plaintiff has alleged that Defendants improperly acquired "trade secrets regarding how Luminate markets the services of its NEO division to the public, including information for controlling its website domain and Youtube Channel," and "intended" to adopt those trade secrets for Better's operations (ECF No. 36 ¶ 172).  Services offered over the internet can plausibly lead to the inference that such services meet DTSA's interstate commerce element, unless specified otherwise.  *Cf. Greenmount LLC v. Cleanline Mgmt. LLC*, No. 2:23–CV–10376–MRA–RAO, 2024 WL 5505735, at *8 (C.D. Cal. Sept. 18, 2024) (no interstate commerce where defendant's "website also indicates that its products are not sold outside of California");  *Albert S. Smyth Co. v. Motes*, No. CV CCB-17-677, 2018 WL 3635024 (D. Md. July 31, 2018) (DTSA's interstate commerce element satisfied where an online jewelry business alleged that it did business over the internet because the court could "easily infer that an online jewelry business attracts out-of-state customers to [the plaintiff's] products.").

For the reasons above, the Court finds Defendants' alleged misappropriation of Plaintiffs' trade secrets at issue in this action is actionable under both the DTSA and CUTSA.

* * *

24cv2251

Accordingly, the Court **DENIES** Defendants' motions to dismiss Plaintiff's trade secret claims under the DTSA and CUTSA.  (ECF Nos. 45, 46.)

### B.    Breach of Contract

Plaintiff asserts breach of contract claims against Horanyi and Lee.  (ECF No. 36 ¶¶ 117–31.)  Under California law, a contract "is an agreement to do or not to do a certain thing." Cal. Civ. Code § 1549.  The elements of a claim for breach of contract are: (1) existence of the contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and, (4) damages to Plaintiff therefrom.  *Becerra v. Allstate Northbrook Indem. Co.*, No. 22-CV-00202-BAS-MSB, 2022 WL 2392456, at *3 (S.D. Cal. July 1, 2022) (citing *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008)); *see also Novalk, LLC v. Kinsale Ins. Co.*, No. 22-CV-0290-BAS-LR, 2025 WL 896458, at *2 (S.D. Cal. Mar. 21, 2025).

#### 1.    Existence of the Contract

To determine whether a contract exists between Plaintiff and Horanyi and Plaintiff and Lee, the Court must assess whether the following are binding contracts: (1) Horanyi's agreement he signed for his role as Non-Producing Division President for the NEO Division of Luminate ("Horanyi's Agreement") (ECF No. 36-7), (2) the employee handbook (ECF Nos. 36-5, 36-8) ("Handbook"); and (3) the dual employment policy ("Dual Employment Policy") (ECF Nos. 36-6, 36-9).  Parties do not contest that Horanyi's Agreement is a binding, written contract.  Thus, the Court turns to evaluate the remaining documents.

##### i.    Handbook

Plaintiff points out that the Handbook states that its terms "are to be followed by. . . employees as a condition of their employment" (*see* ECF Nos. 36-5 at 14, 36-8 at 14, 45-2 at 5).  Additionally, both Horanyi and Lee signed an acknowledgment in receipt on the last page of the Handbook.  (ECF Nos. 36-5 at 14; 36-8 at 14.)  California law permits parties to form contracts by incorporating other documents by reference; and "an employee may agree to [be bound by a handbook] by signing an acknowledgment form that

incorporates the employer's employee handbook." *Ashbey v. Archstone Prop. Mgmt., Inc.,* 612 F. App'x 430, 431 (9th Cir. 2015) (citing *Avery v. Integrated Healthcare Holdings, Inc.,* 159 Cal.Rptr.3d 444, 457 (2013)).

Nevertheless, Horanyi and Lee contest that the Handbook is a binding contract since the acknowledgment form states: "this handbook. . . is [not] intended in any way to create a contract of employment." (ECF Nos. 45-1 at 21:8–11, 36-5 at 14, 36-8 at 14.)  Supporting their interpretation, courts within the Ninth Circuit have held that, under California law, employee handbooks are not contracts when they contain similar express disclaimers.  *See, e.g., Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439–40 (C.D. Cal. 1995) ("An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior"); *LaFont v. Fed. Express Corp.*, 840 F. App'x 971, 972 (9th Cir. 2021) (an express disclaimer meant an unsigned brochure was not incorporated into an employee agreement).  Where there is an express disclaimer, signed receipt in acknowledgment of the terms of an employee handbook does not transform that handbook into a binding employment contract between Parties.  *See e.g.*, *Clayborne v. SSA Grp., LLC*, No. 25-CV-01617-DMR, 2025 WL 1282631, at *2 (N.D. Cal. May 1, 2025) (finding where Plaintiff expressly assented to terms of handbook, that alone was insufficient to transform the handbook into a binding contract).

## ii.    Dual Employment Policy

Next, Horanyi and Lee also counter that the Dual Employment Policy is not a contract—but rather implemented to "ensure compliance with applicable [Federal Housing Administration and Department of Housing and Urban Development] requirements" for home loan lenders.  (ECF No. 45-1 at 23:7–9 (citing ECF Nos. 36-6, 36-9).)  Language stating the purpose of the Dual Employment Policy is to comply with agency requirements is distinct from an explicit statement that such policy is not intended to be a contract.  (ECF No. 36-6.)  *Cf. Tetrault v. Cap. Grp. Companies Glob.*, No. 2:23-CV-5144-WLH-E, 2024 WL 3468903, at *8 (C.D. Cal. Jan. 17, 2024) (non-binding employee handbook states the

"Handbook is not intended to be in the nature of a legal contract"); *see also Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439–40 (C.D. Cal. 1995) (non-binding employee handbook states it "is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract"). Furthermore, Horanyi and Lee do not cite any legal precedent supporting their interpretation that Dual Employment Policy's statement of purpose renders it a non-contract. Lastly, the Dual Employment Policy otherwise fulfills the requirements for a binding contract between Parties, in that it is written and signed. *GoPro, Inc. v. 360Heros, Inc*., 291 F. Supp. 3d 1060, 1069 (N.D. Cal. 2017) ("a written agreement is 'executed' when all parties sign the agreement") (citing *Nielsen Constr. Co. v. Int'l Iron Prod.*, 18 Cal.App.4th 863, 869 (1993)). Thus, the Court also finds the Dual Employment Policy to be a binding contract.

\* \* \*

In sum, the Court finds that Plaintiffs have sufficiently alleged that Horanyi's Agreement and the Dual Employment Policy are existing contracts that bind Horanyi and Lee. However, the Court finds that the Handbook is not a binding contract. Read together, these agreements constitute the terms of Horanyi's and Lee's employment with Plaintiff.

### 2. Breach of Employment Terms

According to Plaintiff, Horanyi and Lee allegedly breached the terms of their employment by:

1. "[C]arrying on dual employment and/or working in the interest of Luminate's competitor, Better, while officially employed and receiving compensation from Luminate in violation of the terms of their employment";

2. "[S]oliciting Luminate employees to terminate employment with Luminate while working at Luminate and, in the case of Defendant Horanyi, during the first year after leaving Luminate's employment;" and

3. "Using, disclosing, and/or stealing Luminate's confidential and proprietary information for their individual benefit and that of Luminate's competitor, Better"

24cv2251

ECF No. 36 ¶¶ 126–128.  The Court considers each in turn.

### i.    Dual Employment

Plaintiff alleges Horanyi and Lee violated the Dual Employment Policy by working in the interest of Better while working at Plaintiff and during the first post-employment year in the case of Horanyi.  (*Id*. ¶ 126; ECF No. 36-2.)

First, since Plaintiff alleges Horanyi received his offer of employment with Better "just" one week before Plaintiff terminated his employment, Horanyi and Lee contest Horanyi did not violate the Dual Employment Policy.  (ECF Nos. 45-1 at 24:1–5; 36 ¶ 61).  However, one week overlap between employment contracts still entails that there was some overlap.   Second, because Plaintiff alleges Lee had received a laptop and network credentials from Better and started working for Better while still employed at Plaintiff (*id*. ¶ 97), the Court finds Plaintiff sufficiently alleges that Lee violated the Dual Employment Policy.  Further, as discussed throughout this order, Plaintiff makes several allegations that at the very least, Horanyi and Lee had performed work for Better in "conflict of interest" to Plaintiff's business during their employment with Plaintiff.  (*See* ECF No. 36-6 at 2.)

Thus, the Court finds that Plaintiff has adequately alleged Horanyi and Lee violated the Dual Employment Policy.

### ii.    Soliciting Plaintiff's Employees to Terminate Employment

Next, Plaintiff alleges Horanyi and Lee breached their terms of their employment with Plaintiff by "solicit[ing] Plaintiff's employees. . . in the case of Defendant Horanyi, during the first year after leaving Luminate's employment."  (ECF Nos. 36 ¶ 127.)  More specifically, Horanyi and Lee had provided Better with plans for transferring Plaintiff's NEO division to Better; and Horanyi had approached Plaintiff's NEO managers with detailed write-ups about how revenue would be better shared with Better if they moved their branches there.  (*Id*. ¶¶ 98, 104–107.)   The Dual Employment policy prohibits Plaintiff's employees from "working, in any capacity. . . for [o]ther mortgage lenders." (ECF Nos. 36-6, 36-9.)   Soliciting Plaintiff's employees to work for Better, another mortgage lender, directly violates the plain text of the Dual Employment Agreement.  The

Court, thus, finds that, Plaintiff has adequately alleged both Horanyi and Lee violated terms of their employment by soliciting Plaintiff's employees to work for Better.

### iii.    Disclosing and Using Plaintiff's Confidential and Proprietary Information

Lastly, allegedly in contravention of the terms of the Handbook, Horanyi and Lee "disclos[ed]. . . company trade secrets and proprietary and confidential commercially sensitive information (*i.e.* financial or sales records/reports, marketing or business strategies/plans, product development information, customer lists, patents, trademarks, etc.) of the company' as part of their condition of employment with Plaintiff." (ECF Nos. 36 ¶¶ 118–121, 128; 36-5 at § 5.1; 36-8 at § 5.1.)

As previously discussed, though the information misappropriated by Horanyi and Lee qualify as trade secrets (*supra* § III.A), the Court has already found Plaintiff failed to sufficiently allege the Handbook is a binding contract (*supra* § III.B.1).[1]  The Court thus dismisses any breach of contract claims for disclosing Plaintiff's confidential information against Lee—as the only document Lee signed prohibiting such disclosure is the Handbook.

However, Horanyi is independently bound by Horanyi's Agreement, which prohibits him from disclosing Plaintiff's confidential information in § 5.3.  (ECF No. 36-7 at 13.)  Thus, the Court finds Plaintiff has sufficiently alleged Horanyi's breach of contract through disclosure of confidential information—but not Lee's breach of contract for the same conduct.

---

[1] Plaintiff's breach of contract claims are not preempted by trade secrets claims because trade secrets claims can exist independent from Parties' contract.  For example, *Officia Imaging, Inc* found "[t]he plain language of CUTSA provides that it does not preempt 'contractual remedies, whether or not based upon misappropriation of a trade secret.'" *Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at *9 (C.D. Cal. Aug. 7, 2018); *see also Integral Development Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. Jan. 11, 2017) (citing Cal. Civ. Code § 3426.7(b)(1) ); *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (Cal. Ct. App. Oct. 15, 2013) ("Breach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by [C]UTSA."). Even if Plaintiff's breach of contract claims were preempted by its trade secret claims, the outcome would not change here.

- 17 -

### 3. Damages

Plaintiff also alleges that Horanyi's and Lee's breach of contractual terms with Plaintiff led to damages. It is well established that, under California law, plaintiffs can seek monetary damages for "the detriment caused by the breach." *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019) (citing *Stephens v. City of Vista*, 994 F.2d 650, 657 (9th Cir. 1993) (citing Cal. Civ. Code § 3300)). Here, Plaintiff alleges, for example, that Horanyi and Lee "sought and received reimbursement from Luminate for expenses purportedly incurred during the performance of their job duties that were, in actuality, spent in furtherance of their efforts to solicit Luminate employees to join their competitor." (ECF No. 36 ¶ 148.) Plaintiff also alleges Horanyi and Lee "directed and encouraged other [Plaintiff] employees to seek reimbursement for expenses they incurred while meeting to consider the [Horanyi's and Lee's] solicitations to join Better, and such wrongful reimbursement requests were submitted to and paid by [Plaintiff]." (*Id.* ¶ 149.) Additionally, Horanyi's disclosure of Plaintiff's confidential business information in breach of Horanyi's Agreement § 5.3 (ECF No. 37-7 at 13) led to Plaintiff's loss of financially valuable assets (ECF No. 36 ¶ 164). *See, e.g.,* Cal. Civ. Code § 3426.3(a) (providing a complainant may recover damages for the actual loss or unjust enrichment caused by the misappropriation of trade secrets).

For the reasons above, Plaintiff has thus adequately alleged damages resulting from its breach of contract claims to survive the motion to dismiss stage. *Cahill*, 80 F.3d at 337–38.

\* \* \*

For the reasons above, the Court **DENIES** dismissal of Plaintiff's breach of contract claims regarding dual employment, solicitation of Plaintiff's employees against Horanyi and Lee; and regarding the disclosure of confidential business information against Horanyi. (ECF No. 45.) However, the Court **GRANTS** dismissal of Plaintiff's breach of contract claim regarding disclosure of confidential business information against Lee. (*Id.*)

### C. Breach of Fiduciary Duty and Duty of Loyalty

24cv2251

Plaintiff asserts claims for breach of fiduciary duty and duty of loyalty against Horanyi and Lee. (ECF No. 36 ¶¶ 143–151.) The Court separately analyzes each duty.

As a threshold matter, Plaintiff's breach of fiduciary duty and duty of loyalty claims are not preempted by Plaintiff's DTSA and CUTSA claims—since Plaintiff's breach of fiduciary duty claims go beyond Horanyi's and Lee's alleged sharing of trade secrets (*see, e.g.*, *id*. ¶¶ 146, 148 (breach via soliciting employees to work for Better while employed at Plaintiff and wrongfully requesting reimbursement from Plaintiff for recruitment efforts); *id.* ¶ 147 (breach via failing to execute job duties with Plaintiff to instead conduct activities benefitting Better)). *See Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at *9 (C.D. Cal. Aug. 7, 2018) (citing *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 232–33 (Cal. Ct. App. Apr. 29, 2010)) ("if a breach of fiduciary duty is not 'based on the same nucleus of facts as [the] trade secret misappropriation,' CUTSA will not preempt the claim").

### 1. Fiduciary Duty

To evaluate Plaintiff's claims for fiduciary duty, the Court first analyzes whether Horanyi or Lee owe Plaintiff a fiduciary duty. For a fiduciary duty to exist, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Lee v. Lee*, No. LACV1908814JAKFFMX, 2021 WL 4459762, at *15 (C.D. Cal. May 13, 2021) (citing *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008)). In the context of employment specifically, an employee generally does not owe a fiduciary duty to his or her employer unless an employment contract provides otherwise. *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 989 (C.D. Cal. 2011). However, California courts have held that corporate directors and officers typically are deemed to owe fiduciary duties to their employer, and non-officers also have been found to owe fiduciary duties if they participate in management. *See generally Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at *5-6 (N.D. Cal. Apr. 1, 2010) (citing California cases).

Though Plaintiff does not allege Horanyi and Lee were Plaintiff's corporate officers, Plaintiff does allege they participated in management. More specifically, Plaintiff argues that by entrusting Horanyi and Lee to act as "leaders of Luminate for its NEO division" (ECF No. 36 ¶ 143) and "managing hundreds of employees and the substantial amount of loans they generated," Horanyi and Lee owe Plaintiff a fiduciary duty. Here, Plaintiff alleges that defendants were "in a position of trust and influence at [Plaintiff] responsible for managing hundreds of employees and the substantial amount of loans they generated." (*See id.* ¶ 144.) The Court, therefore, finds that Horanyi and Lee do owe Plaintiff a fiduciary duty.

Plaintiff further alleges Horanyi and Lee breached their fidicuary duty to Plaintiff by "work[ing] on behalf of and me[eting] frequently with Better to aid [Plaintiff]'s competitor" and by "soliciting and/or attempting to solicit [Plaintiff's] employees while they were all still employees of [Plaintiff], to terminate their employment and/or violate their obligations to their employer [Plaintiff], and make arrangements to join [Plaintiff]'s competitor, Better." (*Id.* ¶¶ 146–147.) California courts have held that a corporate officer who, after agreeing to work for his or her employer's competitor, remains with the current employer and assists the competitor in "raiding" the employer's key personnel, breaches a fiduciary duty to the employer as a matter of law. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 423 (2000); *see also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 331 (1966).

The Court therefore **DENIES** Horanyi's and Lee's motion to dismiss plaintiff's breach of fiduciary duty claim (ECF No. 45).

## 2.    Duty of Loyalty

Even if Horanyi and Lee did not owe Plaintiff a fiduciary duty under California law, "an employee does owe a duty of loyalty to his or her employer." *Clasby v. Ivanovic*, No. CV1802313SJOJPR, 2019 WL 8065862, at *8 (C.D. Cal. Dec. 2, 2019) (citing Cal. Labor Code §§ 2860, 2863). In the context of employment, this Court has reasoned the duty of loyalty contains subsidiary obligations, including: "(1) the duty 'to refrain from competing

with the principal and from taking action on behalf of or otherwise assisting the principal's competitors; (2) the duty not to acquire a material benefit from a third party in connection with ... actions taken ... through the agent's use of the agent's position; and (3) the duty not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party." *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1122 (S.D. Cal. 2020) (citing *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007)).

Plaintiff alleges Horanyi and Lee violated the duty of loyalty on all three of the grounds discussed in *Erhart,* 612 F. Supp. 3d at 1122. First, Plaintiff has alleged that Horanyi and Lee have actively assisted Better—Plaintiff's competitor—while employed at Plaintiff through actions such as sharing Plaintiff's trade secrets with Better and soliciting Plaintiff's employees to work at Better. *See supra* §§ III.A, III.B.2.ii. Second, Plaintiff has alleged that Horanyi and Lee have received a material benefit—namely job offers from Better—from the illicit support. (ECF No. 36 ¶¶ 61–62.) Third, Plaintiff has alleged that Horanyi and Lee have breached their duty not to use or communicate Plaintiff's confidential information, as part of their duty of loyalty to Plaintiff, through sharing Plaintiff's confidential information with Better. (ECF Nos. 36 ¶¶ 118–121, 128). As such, Plaintiff has sufficiently alleged the elements for a breach of the duty of loyalty in an employer-employee relationship. *Erhart*, 612 F. Supp. 3d at 1122.

The Court therefore **DENIES** Horanyi's and Lee's motion to dismiss plaintiff's duty of loyalty claim (ECF No. 45).

### D.    Promissory Estoppel

Plaintiff raises a claim for promissory estoppel against Defendants Horanyi and Lee. Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 1 P.3d 63, 66 (Cal. 2000). The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is

made, (3) the reliance is both reasonable and foreseeable, and (4) the party asserting estoppel is injured by his reliance. *U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005).

Plaintiff alleges "Horanyi and Lee signed formal documents in which they promised to comply with Luminate's employment policies, including strict rules barring dual employment, misuse of confidential information, and disloyal conduct" and "Luminate relied on those promises when placing them in positions of extraordinary trust." (ECF No. 59 at 11:16–22.) Plaintiff also alleges that providing a salary in exchange for fulfilling the duties of their employment—including maintaining the confidentiality of Plaintiff's business information—may constitute bargained-for consideration. (ECF No. 36 ¶¶ 118, 190, 192.) These are the same key facts giving rise to Plaintiff's breach of contract claims for Horanyi's and Lee's disclosure of Plaintiff's confidential information.

Horanyi and Lee contest that Plaintiff cannot maintain both claims for promissory estoppel and breach of contract from the same set of facts since the claims are mutually exclusive. (ECF No. 62 at 12:5–24.) "A cause of action for promissory estoppel ... substitutes reliance on a promise for consideration.... [i]f actual consideration was given by the promisee, promissory estoppel does not apply." *Wright v. Old Gringo Inc.,* No. 17-CV-1996-BAS-MSB, 2019 WL 3804020, at *3 (S.D. Cal. Aug. 13, 2019) (quoting *Fleet v. Bank of Am., N.A.*, 178 Cal. Rptr. 3d 18, 26–27 (Cal. Ct. App. 2014)). Here, the Court agrees with Horanyi and Lee that Plaintiff "cannot satisfy the detrimental reliance element of [its] promissory estoppel claim by merely pointing to its continued provision of services because this was the bargained-for consideration of the. . . salary compensation agreement." *Wright v. Old Gringo Inc.*, No. 17-CV-1996-BAS-MSB, 2019 WL 3804020, at *4 (S.D. Cal. Aug. 13, 2019).

Since the Court found that the Handbook is not a binding contract but Horanyi's agreement is, only Horanyi is contractually bound to not disclose confidential information. *Supra* § III.B.2.iii. Thus, the Court must now evaluate: (1) whether Plaintiff can maintain a claim for promissory estoppel against Horanyi, given Plaintiff's claim for breach of

contract arising from the same facts; and (2) whether Plaintiff can maintain a claim for promissory estoppel against Lee, given that Plaintiff failed to allege Lee's breach of contract for disclosure of confidential information.

### 1.    Horanyi

It is true that "[t]he mere fact that a Plaintiff pleaded a breach of contract claim alongside a promissory estoppel claim is not a basis for dismissal of its promissory estoppel claim." *Wright*, 2019 WL 3804020, at *4. Indeed, Plaintiff could theoretically plead alternative theories on the same facts. *See Sam Kohli Enters. v. BOC Grp., Inc.*, No. 11CV299 DMS, 2011 WL 3298902, at *6 (S.D. Cal. Aug. 1, 2011) ("To the extent that Plaintiff's claims for promissory estoppel and breach of contract are in conflict, the federal rules allow a plaintiff to plead inconsistent claims in a complaint."). However, the problem for Plaintiff here is that its promissory estoppel claim against Horanyi is entirely eclipsed by issues already confronted in Plaintiff's breach of contract claim against Horanyi. *Cf Wright*, 2019 WL 3804020, at *4 (finding plaintiff adequately alleged a promissory estoppel claim alongside its breach of contract claim because plaintiff alleges reliance via promise of ownership interest *separate* from Parties' contract). As this Court noted in *Wright,* "the reliance element of a promissory estoppel claim cannot be met by pointing to performance a plaintiff is already contractually obligated to undertake." *Wright*, 2019 WL 3804020, at *4. Accordingly, the Court **GRANTS** the dismissal of Plaintiff's promissory estoppel claim against Horanyi, with leave to amend.

### 2.    Lee

Plaintiff's promissory estoppel claim against Lee, however, does not involve the same issue since Plaintiff fails to allege it was "contractually obligated" to pay Lee a salary in exchange for Lee's promise to keep Plaintiff's business information confidential. *See Wright*, 2019 WL 3804020, at *4. Though Plaintiff's payments to Lee may not constitute "bargained-for exchange," the Court finds they still amount to "detrimental reliance" on Lee's promise to keep Plaintiff's business information confidential.

24cv2251

The remaining elements of Plaintiff's promissory estoppel claims against Lee are also satisfied. Lee made a "clear and unambiguous promise" by agreeing in writing to comply with the terms of the Handbook, even though the Handbook is not a contract. *U.S. Ecology Inc.*, 28 Cal. Rptr. 3d at 905. Plaintiff was injured as a result of Lee's broken promise—including through loss of money and disclosure of trade secrets. *Id*. Thus, the Court **DENIES** the dismissal of Plaintiff's promissory estoppel claim against Lee.

### E.    Tortious Interference

Plaintiff asserts claims for tortious interference under California law against all Defendants. (ECF No. 36 ¶¶ 190–203.) More specifically, Plaintiff alleges: (1) Better, Horanyi, and Lee tortiously interfered with other employees' contracts with Plaintiff to "assist with Better's efforts to initiate their retail loan operations, while officially remaining [Plaintiff] employees on paper" and offering them "lucrative contracts with Better" in exchange (*id.* ¶¶ 195–198); (2) Better tortiously interfered with Lee's contractual obligations to Plaintiff by inducing Lee to act on behalf of Better, even "engaging with third party vendors," while employed with Plaintiff (*id.* ¶ 198); and (3) Better tortiously interfered with Horanyi's contractual obligations to Plaintiff by inducing Horanyi to recruit Plaintiff's employees to join Better (*id.* ¶¶ 42, 192–203).

To state such claims, Plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1141 (2020).

As previously discussed (*supra* § III.B.1), Horanyi's Employment Agreement (ECF No. 36-7) and the Dual Employment Policy (ECF No. 36-6) are valid contracts. These agreements contain provisions prohibiting disloyalty to Plaintiff's business interests and interference with other employees' contractual obligations to Plaintiff (*supra* § III.B.2.i–ii.). Further, Plaintiff alleges that all of Plaintiff's employees have signed the Dual Employment Policy. (ECF No. 36 ¶ 190.) Defendants allegedly knew about the

- 24 -

1    aforementioned agreements, since Horanyi and Lee had signed them and since Horanyi

2    and Lee were working with Better. (*Id*. ¶¶ 195–198.)  Since Defendants were likely aware

3    that Horanyi and Lee signed Dual Employment Policy as part of their employment with

4    Plaintiff (*Id*. ¶ 203), they are also likely aware that all Plaintiff's employees signed the

5    policy.  Third, all Defendants acted intentionally to induce non-party Plaintiff's employees'

6    breach of their employment agreements and Dual Employment Policies with Plaintiff by

7    having them perform work conflicting in interest with Plaintiff's business for Better (*supra*

8    § III.B.2.ii).  (*See also* ECF No. 36 ¶ 101.)  Better acted intentionally to induce Horanyi

9    and Lee to perform work conflicting with Plaintiff's business interests.    Fourth,

10    Defendants' efforts resulted in successfully inducing Plaintiff's employees to breach their

11    employment agreements with Plaintiff by recruiting more employees to Better and by

12    assisting with Better's operational setup while still employed at Plaintiff.  (*Id*. ¶¶ 190–203.)

13    Fifth, the alleged contract breaches resulted in actual damages in the form of monetary loss

14    (*supra* § III.B.3).

15        For the reasons above, the Court **DENIES** Defendants' motions to dismiss Plaintiff's

16    claims for tortious interference.  (ECF Nos. 45, 46.)

17        **F.    Lanham Act, 15 U.S.C. § 1125(a), and Unfair Competition Act,  §17200**

18        ***et. seq*. of the Cal. Bus. & Prof. Code**

19        Plaintiff  brings  claims  for  damages  under  the  Lanham  Act,  15  U.S.C.  §

20    1125(a)(1)(A) ("Lanham Act § 43(a)") against Better (ECF No. 36 ¶ 215) and under

21    §17204 of the Cal. Bus. & Prof. Code, the Unfair Competition Law ("UCL") (ECF No. 36

22    ¶ 205).  Plaintiff does not specify precisely what theory under Lanham Act § 43(a) or the

23    UCL for which Plaintiff seeks relief (*e.g*., false advertising, unfair competition, or false

24    designation).    However, based on the facts Plaintiff pled, the Court reads Plaintiff as

25    seeking relief under the Lanham Act pursuant to a theory of false advertising.

26        "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false

27    statement of fact by the defendant in a commercial advertisement about its own or another's

28    product; (2) the statement actually deceived or has the tendency to deceive a substantial

segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Longbridge Fin., LLC v. Mut. of Omaha Mortg., Inc.*, No. 24-CV-1730-DMS-VET, 2025 WL 1382866, at *4 (S.D. Cal. May 13, 2025) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

False advertising claims under California Business and Professions Code § 17500 are "'substantially congruent' to claims made under the Lanham Act" and thus rise or fall with Lanham Act false advertising claims. *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (citing *Cleary*, 30 F.3d at 1255). Accordingly, the Court will address the Lanham Act and California false advertising claims jointly.

Here, Plaintiff alleges Defendants "misleadingly notified consumers that there was an 'acquisition' or 'merger' of [Plaintiff]'s NEO Home Loans Division with Better," when in fact there was no such merger or acquisition. (*Id*. ¶ 223.) The Court first finds that Defendants' statements to Plaintiff's customers that Better and Plaintiff were merging as companies were "literally false on [their] face." *See Southland Sod Farms*, 108 F.3d at 1139 ("A plaintiff may 'demonstrate falsity within the meaning of the Lanham Act' by showing that the at-issue statement is: (1) literally false on [their] face, (2) literally false by necessary implication, or (3) literally true but likely to mislead or confuse consumers."). Next, the Court finds that Defendants' statements had the tendency to deceive Plaintiff's consumers and that they had influenced Plaintiff's consumers' decisions to instead close their loans at Better (ECF No. 36 ¶ 218). Plaintiff has also alleged that Defendants' false statements have led to deceive a "substantial segment of its audience" that Plaintiff and Better were indeed merging (*id*.); and the "deception" had influenced Plaintiff's customers' decisions to utilize Better's services to process their home loans (*id*. ¶¶ 219–223.) *Southland Sod Farms*, 108 F.3d at 1139.

24cv2251

However, Plaintiff has not clearly alleged that Defendants' false statements have "entered interstate commerce." On the one hand, Plaintiff alleges Defendants have directed their false statements towards Plaintiff's customers, and Plaintiff's business is conducted "interstate." (*Id.* ¶ 158 ("Luminate's trade secrets are related to products or services used in interstate commerce").) On the other hand, Plaintiff has not explicitly stated that Defendants' false statements were directly targeting an interstate market or that Defendants' falsely advertised services (Better Mortgage Co.'s home loan services) have entered interstate commerce.[2]

Importantly, Lanham Act and UCL claims based on alleged false advertising must meet the heightened pleading requirements of Rule 9(b). *See Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019); *see also Albrigo v. Chobani, LLC*, No. 3:24-CV-01418-BJC-KSC, 2025 WL 1930007, at *4 (S.D. Cal. July 11, 2025) ("UCL claims must meet the heightened pleading standards of Rule 9"). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about that purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).

Here, Plaintiff sufficiently alleges "who" made the false statements (Defendants) and received them (Plaintiff's customers), and "what" those statements were (Plaintiff and Better are merging). (ECF No. 36 ¶¶ 218–223.) Yet, Plaintiff fails to sufficiently allege "where" Defendants made those statements (*i.e.*, whether such statements were made to

---

[2] Though the Court found earlier that Plaintiff alleges Better *intends* to offer its services online (*supra* § II.A.3), Plaintiff has not alleged that Better's services have *presently* entered interstate commerce.

24cv2251

Plaintiff's customers via the internet or whether Plaintiff's customers were located across state lines— such that they have entered "interstate commerce") and "when" Defendants made those statements.  Thus, the Court finds Plaintiff has failed to plead its Lanham Act § 43(a) and UCL claims with sufficient particularity required by Rule 9(b).

For the reasons above, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's Lanham Act § 43(a) and UCL claims, with leave to amend.  (ECF Nos. 45, 46.)

## V.    CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** Defendants' motion to dismiss (ECF Nos. 45, 46).

More specifically, the Court **GRANTS** dismissal of the following claims, with leave to amend, by **December 11, 2025**:

1. Breach of contract claims regarding disclosure of trade secrets against Lee (ECF No. 45);

2. Promissory estoppel claim against Horanyi (ECF No. 45); and

3. Lanham Act and UCL claims against all Defendants (ECF Nos. 45, 46).

The Court **DENIES** dismissal of the following claims:

1. Trade secret claims against all Defendants (ECF Nos. 45, 46);

2. Breach of contract claims against Horanyi (ECF No. 45);

3. Breach of contract claims regarding dual employment and solicitation of Plaintiff's employees against Lee (ECF No. 45);

4. Breach of fiduciary duty claims against Horanyi and Lee (ECF No. 45);

5. Breach of duty of loyalty claims against Horanyi and Lee (ECF No. 45);

6. Promissory estoppel claim against Lee (ECF No. 45); and

7. Tortious interference claims against all Defendants (ECF Nos. 45, 46).

**IT IS SO ORDERED.**

DATED: November 20, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court

- 28 -

24cv2251