UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BETTER MORTGAGE CO., *et al.*, <br><br> Defendants. | Case No. 24-cv-2251-BAS-MSB <br><br> **ORDER GRANTING IN PART, DENYING IN PART DEFENDANT SYDNEY LYNN'S MOTION TO DISMISS (ECF No. 83)** |
| BETTER MORTGAGE CO., <br><br> Counterclaimant, <br><br> v. <br><br> LUMINATE HOME LOANS, INC., *et. al.*, <br><br> Counterclaim Defendants. | |

Presently before the Court is a motion to dismiss submitted by Defendant Sydney Lynn ("Lynn") (ECF No. 83). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Lynn's motion to dismiss (ECF No. 83.) The Court **DENIES** Lynn's motion to dismiss Plaintiff's claims for misappropriation of trade secrets under state and federal law, breach of fiduciary duty, and breach of duty of loyalty. However, the Court **GRANTS WITHOUT PREJUDICE** dismissal of Plaintiff's tortious

interference claim and Plaintiff's breach of contract claim. For these claims, the Court **GRANTS** Plaintiff leave to amend by **January 5, 2025**.

## I. BACKGROUND

Plaintiff is a mortgage loan lender. In 2022, Plaintiff acquired a mortgage division known as NEO Home Loans from a struggling competitor, Celebrity Home Loans LLC ("Celebrity"). (ECF No. 64-2 ¶¶ 9–10.) Over the next three years, Plaintiff made significant developments to its NEO Division following acquisition—including creating new mortgage offers and training NEO managers. (*Id*. ¶¶ 14–18.)

Lynn was initially a manager at Celebrity, and served as Director of Finance at Luminate after making the transition from Celebrity upon Luminate's acquisition of NEO in 2022. (*Id*. ¶¶ 34.) As a condition of her at-will employment, Lynn reviewed and signed an employee handbook and Plaintiff's policy prohibiting dual employment. (*Id*. ¶¶ 36, 42.) The employee handbook imposes obligations of protecting Plaintiff's confidential business information (including trade secrets). (*Id*. ¶¶ 70–71.) In early December 2024, Plaintiff terminated Lynn's employment upon discovering she was coordinating with a new retail loan company, Defendant Better Mortgage Co. ("Better"), throughout the course of her employment. (ECF No. 99 at 11:12–12:20.) Lynn had allegedly breached her obligations to Plaintiff in exchange for a new job at Better. (ECF No. 64-2 ¶¶ 47, 48, 54, 59.)

Plaintiff filed a complaint against Lynn on December 23, 2024 in United States District Court, District of Nevada. *Luminate Home Loans, Inc. v. Lynn*, 24-cv-02403, ECF No. 1 ("*Lynn* Complaint"). By Order of Hon. Richard F. Boulware of the District Court for Nevada, this action was transferred on June 2, 2025. (24-cv-02403, ECF Doc. No. 8; 3:25-cv-02014-BAS-MSB.) ("*Lynn* Action"). On August 25, 2025, the Parties filed a joint motion seeking to consolidate the *Lynn* Action with the instant Action. (ECF No. 64.) The Court granted the joint consolidation motion on September 19, 2025. (ECF No. 72.) Lynn then filed a motion to dismiss Plaintiff's claims. (ECF No. 83.) Plaintiff filed a response. (ECF No. 99.)

In the *Lynn* Complaint, Plaintiff asserted five causes of action against Lynn, including: (1) breach of contract, (2) breach of fiduciary duties, (3) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), (4) misappropriation of trade secrets in violation of state law, and (5) tortious interference. (ECF No. 64-2.)

The Court finds Lynn's motion to dismiss (ECF No. 83) appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although courts accept Plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants

have violated the ... law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. ANALYSIS

### A. Choice of Law

As discussed, Plaintiff's case against Lynn was originally filed in the District of Nevada, transferred to this Court, and subsequently consolidated with the present action. (ECF Nos. 64, 72.) Since Plaintiff's claims against Lynn in the District of Nevada involve state common law (ECF No. 64-2), the Court now considers whether to apply Nevada or California law to the present action.

Where a diversity case has been transferred for purposes of correcting the venue, the transferee court is obligated to apply the choice of law rules of the state from which the case was transferred. *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1233 (C.D. Cal. 2001) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491 (1941)). However, when a transfer is based on other grounds, a federal court sitting in diversity shall apply the choice of law rules of the state in which it sits. *Globespan, Inc.*, 151 F. Supp. 2d at 1233. Here, the case was transferred from the District of Nevada not because the District of Nevada would be an incorrect forum to hear Plaintiff's case against Lynn—but rather, because consolidation is in the interest of judicial efficiency pursuant to Fed. R. Civ. P. 42(a). (ECF Nos. 64, 72.)

According to California choice of law rules, California law is applied unless the party in favor of applying foreign law shows that the "government interests" analysis used in California dictates the application of the law of a foreign state. *Id.* at 1231–32; *see also Wash. Mut. Bank, FA v. Superior Court,* 15 P.3d 1071, 1080 (Cal.2001). Under the "government interests" analysis, the Court must first determine whether the substantive laws of California and the foreign jurisdiction differ on the claims. *See Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1196 (9th Cir.1982). Second, if the laws differ, the Court determines whether both jurisdictions have an interest in applying their own laws. *See id.* In determining the interests of a particular state in applying its laws, "the forum

court undertakes an examination of the policies underlying the particular law and asks whether those policies will be served by applying that law in the action." *Hurtado v. Superior Court,* 11 Cal.3d 574, 581 (1974). Third, if both jurisdictions have an interest, the Court then takes a "comparative impairment" approach to determine which jurisdiction's interest would be more impaired if its policies were subordinated to those of the other jurisdiction. *See Liew,* 685 F.2d at 1196.

Given that neither Plaintiff nor Lynn has specified whether they *prefer* applying California or Nevada law, the Court finds California law should apply to Plaintiff's claims by default. Nonetheless, in her motion to dismiss (ECF Nos. 83, 83-1), Lynn applies Nevada law across the discussion of Plaintiff's common law claims. Lynn most explicitly considers the conflict of laws issue in her section discussing Plaintiff's breach of fiduciary duty claim. (ECF No. 83-1 at 19:15-28.) Lynn states that while it is "impossible for Lynn to ascertain which state's common law [Plaintiff's] claim is based upon," "California law does not impose fiduciary duties on at-will employees absent extraordinary circumstances" and she "assumes (for purposes of this motion only) that [Plaintiff's] claim for breach of fiduciary duty is based on Nevada's common law." (*Id.*)

Even if Lynn explicitly moved to apply Nevada, rather than California law, the Court finds California law should apply pursuant to the "government interests" analysis. *Globespan, Inc.*, 151 F. Supp. 2d at 1231–1233. The Court agrees with Lynn that both states' laws are substantively similar—albeit for a different reason. In both states, employees—especially high-ranking employees like Lynn—can owe their employers a fiduciary duty and duty of loyalty. *See Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co.*, No. 2:10-CV-00288-RLHPAL, 2010 WL 2541729, at *2 (D. Nev. June 17, 2010) ("[T]he Nevada Supreme Court has held that employees owe their employers a duty of loyalty and . . . has permitted employers to sue former employees for breach of fiduciary duty") (citing *White Cap Industries v. Ruppert*, 67 P .3d 318, 319–20 (Nev.2003)); *see also Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at *5-6 (N.D. Cal. Apr.

1, 2010) (employees have been found to owe fiduciary duties if they participate in management) (citing *Sequoia Vacuum Sys. v. Stransky,* 229 Cal.App.2d 281, 287 (1967)).

The Court also finds that the two states' doctrines are substantially similar on Plaintiff's remaining claims, such that California law should apply. Breach of contract claims in Nevada and California require proving the same elements. *See Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1227 (D. Nev. 2015); *Becerra v. Allstate Northbrook Indem. Co.*, No. 22-CV-00202-BAS-MSB, 2022 WL 2392456, at *3 (S.D. Cal. July 1, 2022). Both Nevada and California courts have held that state law trade secret claims have substantially similar elements to the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. *See Elko, Inc. v. WTH Com. Servs., LLC*, 2023 WL 6141623, at *2 (D. Nev. Sept. 20, 2023) (citing *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (finding that the elements of federal and state law trade secret claims are "substantially similar"); *see also Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) ("The elements of misappropriation under the DTSA are similar to those under the [California state trade secrets law]."). For tortious interference claims, Nevada state courts explicitly follow the approach set out by California state courts. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 276 (2003) (under both California and Nevada state law, "plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff.")

In sum, California law should apply across Plaintiff's claims against Lynn pursuant to the "government interests" test. *Globespan, Inc.*, 151 F. Supp. 2d at 1233.

**B.  Trade Secret Claims**

As discussed, courts have analyzed state and federal trade secret claims together when the elements are substantially similar. *InteliClear, LLC.*, 978 F.3d at 657. To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Id*. at 657–58 (citing 18 U.S.C. § 1839(5)).

### 1. Possession of Trade Secret

To prove ownership of a trade secret, plaintiffs "must identify the trade secrets and carry the burden of showing they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). The definition of trade secret consists of three elements: "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC*, 978 F.3d at 657.

#### i. Whether Plaintiff Identified Trade Secrets with Sufficient Particularity

"The plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Imax Corp. v. Cinema Techs.*, Inc., 152 F.3d 1161, 1164 (9th Cir. 1998). A plaintiff must "clearly refer to tangible trade secret material" rather than referring to information "which potentially qualifies for trade secret protection." *InteliClear, LLC*, 978 F.3d at 658.

Here, Plaintiff alleges that the trade secrets appropriated by Lynn include: "training materials, employee roster and salary lists, employment and third-party contracts, business strategies, loan processing procedures, loan profit margins, financial details for Luminate's divisions and branches, economic models, revenue and performance reviews, completed loan information, secondary market sales data, loan lead lists and leads." (ECF No. 64-2 ¶ 90.) Concretely, Defendant Lynn has allegedly impermissibly downloaded "3,998 confidential [Plaintiff] files containing highly valuable and sensitive information on [Plaintiff's] business operations and loan data"—including "nonpublic information on [Plaintiff's] borrowers." (*Id*. ¶ 97.)

Plaintiff's *Lynn* Complaint includes exhibits providing specific examples of the trade secrets that Lynn allegedly misappropriated. (ECF No. 64-2 ¶ 55.) As in the Court's prior order (ECF No. 101) on the motions to dismiss (ECF Nos. 45, 46) submitted by Defendants Daniel Horanyi, Jeanette Lee, and Better Mortgage, Co., the Court finds that the inclusion

of such exhibits militates towards finding that Plaintiff has alleged trade secrets with sufficient particularity.

### ii. Whether Alleged Trade Secrets are Valuable Due to Secrecy

For there to be a trade secret, Plaintiff must also allege that such trade secrets are "valuable because [they are] unknown to others." *InteliClear, LLC*, 978 F.3d at 657. Plaintiff alleges that, if shared, the alleged trade secrets would "provide a competitor a significant advantage in creating a competing retail loan division based on Luminate's model for its NEO division." (ECF No. 64-2 ¶ 104.) Additionally, Plaintiff allegedly "derives independent economic value from its confidential data and trade secrets including its employee data, business organization and strategies, company financial forecasting and review, its loan pricing information, its secondary market sale terms, as well as its customer and lead information." (*Id.* ¶ 105.)

Courts have also previously held that the kinds of information Plaintiff alleges above can constitute protectable trade secrets that provide economic value by virtue of their secrecy. *See e.g.*, *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) (holding that marketing materials, along with cost and pricing information, was a trade secret); *StonCor Grp., Inc. v. Campton*, No. C05–1225JLR, 2006 WL 314336, at *5 (W.D.Wash. Feb. 7, 2006) (finding alleged misappropriation of "proprietary and confidential information concerning. . . sales and marketing strategies, pricing and pricing policies, and customer lists and installers" sufficient to state a claim); *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, No. 23-CV-02483-LB, 2024 WL 115933, at *11 (N.D. Cal. Jan. 10, 2024) (finding employee contact information "tether[ed]" to "salary, markets, skills, and business relationships" are trade secrets); *MAI Sys. Corp. v. Peak Comput. Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (recognizing a company's confidential customer database "has potential economic value because it allows a competitor. . . to direct its sales efforts to the plaintiff company's customers," and constitutes a trade secret if the company has taken reasonable steps to keep the database secret); *Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.,* No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *5 (S.D. Cal. Aug. 21, 2018)

("marketing-related information, such as marketing plans and marketing analysis may constitute a trade secret").

Thus, for the same reasons the Court has found Plaintiff's alleged trade secrets provide economic value in its prior order regarding other Defendants (ECF No. 101), the Court finds the same here.

### iii. Whether Owner has Attempted to Hide Alleged Trade Secrets from the Public

Lastly, for a trade secret to exist, there must be proof that an "owner has attempted to keep [it] secret." *InteliClear, LLC*, 978 F.3d at 657. Plaintiff's *Lynn* Complaint alleges that Plaintiff took steps to safeguard it by restricting employees' access, using password protected logins for certain information, and having employees who will be provided access to such privileged business information sign or acknowledge employment provisions confirming they will not distribute or misuse these trade secrets (ECF No. 64-2 ¶¶ 55, 94, 103, 107).

For the reasons above, the Court finds that Plaintiff has alleged the existence of the trade secrets with sufficient particularity.

### 2. Misappropriation of the Trade Secret

A misappropriation claim under the DTSA requires a showing of: (1) acquisition of a trade secret by a defendant that knows or has reason to know was acquired by improper means, or (2) disclosure or use of a trade secret by a defendant that knew or had reason to know that the trade secret was (i) derived from or through a person who had used improper means to acquire the trade secret; (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret; or (iii) derived from or through a person who owed a duty to maintain the secrecy of the trade secret. *See* 18 U.S.C. § 1839(5)(A), (B)(ii)(I)–(III). "Improper means" include "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

### i. Improper Disclosure of Trade Secret

Plaintiff alleges Lynn accessed Plaintiff's alleged trade secrets in her leadership roles at Plaintiff's NEO division, and shared Plaintiff's alleged trade secrets with Better without Plaintiff's permission. (*See e.g.*, ECF No. 64-2 ¶¶ 51–53.) Further, as discussed, Lynn knew that the trade secrets she shared were "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5) (B)(ii)(II). As Plaintiff's Director of Finance, Lynn owed Plaintiff "a duty to maintain the secrecy of the trade secret" and because Lynn's disclosure violated that duty, such disclosure was improper. *Id*.

### ii.  Interstate Commerce

For civil actions, the DTSA requires that Plaintiff allege the misappropriated trade secrets "[are] related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *4 (S.D. Cal. Aug. 21, 2018).

Plaintiff has alleged that Better intended to offer its services online—alleging Better had provided Lynn with "detailed plans" for "tak[ing] over [Plaintiff's] neohomeloans.com website" and "utilizing the YouTube Channel set up for [Plaintiff's NEO division." (ECF No. 64-2 ¶ 50.) Services offered over the internet can plausibly lead to the inference that such services meet DTSA's interstate commerce element, unless specified otherwise. *Cf. Greenmount LLC v. Cleanline Mgmt. LLC*, No. 2:23–CV–10376–MRA-RAO, 2024 WL 5505735, at *8 (C.D. Cal. Sept. 18, 2024) (no interstate commerce where defendant's "website also indicates that its products are not sold outside of California"); *Albert S. Smyth Co. v. Motes*, No. CV CCB-17-677, 2018 WL 3635024 (D. Md. July 31, 2018) (DTSA's interstate commerce element satisfied where an online jewelry business alleged that it did business over the internet because the court could "easily infer that an online jewelry business attracts out-of-state customers to [the plaintiff's] products."). The Court, therefore, finds Plaintiff has adequately alleged Lynn had misappropriated trade secrets "related to. . . service[s] that were used in, or intended for

use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (emphasis added). Thus, Plaintiff has sufficiently alleged Lynn's misappropriation of Plaintiffs' trade secrets under the DTSA. Accordingly, the Court **DENIES** Lynn's motion to dismiss Plaintiff's state and federal trade secret claims. (ECF No. 83.)

### C. Breach of Contract

Plaintiff asserts that Lynn has breached two of her contracts with Plaintiff. (ECF No. 64-2 ¶¶ 67–77.) Under California law, a contract "is an agreement to do or not to do a certain thing." Cal. Civ. Code § 1549. The elements of a claim for breach of contract are: (1) existence of the contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and, (4) damages to Plaintiff therefrom. *Becerra v. Allstate Northbrook Indem. Co.*, No. 22-CV-00202-BAS-MSB, 2022 WL 2392456, at *3 (S.D. Cal. July 1, 2022) (citing *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008)); *see also Novalk, LLC v. Kinsale Ins. Co.*, No. 22-CV-0290-BAS-LR, 2025 WL 896458, at *2 (S.D. Cal. Mar. 21, 2025).

As a threshold matter, Plaintiff's breach of contract claim is not preempted by Plaintiff's trade secrets claim because trade secret claims can generally exist independently from Parties' contracts. For example, *Officia Imaging, Inc* found "[t]he plain language of CUTSA provides that it does not preempt 'contractual remedies, whether or not based upon misappropriation of a trade secret.'" *Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at *9 (C.D. Cal. Aug. 7, 2018); *see also Integral Development Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. Jan. 11, 2017) (citing Cal. Civ. Code § 3426.7(b)(1) ); *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (Cal. Ct. App. Oct. 15, 2013) ("Breach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by [C]UTSA.").

#### 1. Existence of the Contract

To determine whether a contract exists between Plaintiff and Lynn, the Court must assess whether the following are binding contracts: (1) the employee handbook (ECF No.

64-2 ¶ 36) ("Handbook"); and (2) the dual employment policy ("Dual Employment Policy") (ECF No. 64-2 ¶ 42). The Court considers each in turn.

### i. Handbook

Plaintiff asserts the Handbook is a contract, since its terms "are to be followed by. . . employees as a condition of their employment" (*see* ECF No. 64-2 ¶ 69). Additionally, Lynn signed an acknowledgment in receipt on the last page of the Handbook. (*Id.* ¶¶ 36–37.) However, the Handbook contains an express disclaimer, stating: "This handbook has been created to help you get acquainted with our company and to explain our policies, procedures, and benefits and is not intended to be and **does not constitute a legal contract, either express or implied, between the company and its employees**." (ECF No. 83-1 at 16:22-26 (emphasis in original).)

Courts within the Ninth Circuit have held that, under California law, employee handbooks are not contracts when they contain similar express disclaimers. *See, e.g., Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439–40 (C.D. Cal. 1995) ("An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot be a promise or a commitment to future behavior"); *LaFont v. Fed. Express Corp.*, 840 F. App'x 971, 972 (9th Cir. 2021) (an express disclaimer meant an unsigned brochure was not incorporated into an employee agreement). Where there is an express disclaimer, signed receipt in acknowledgment of the terms of an employee handbook does not transform that handbook into a binding employment contract between Parties. *See e.g.*, *Clayborne v. SSA Grp., LLC*, No. 25-CV-01617-DMR, 2025 WL 1282631, at *2 (N.D. Cal. May 1, 2025) (finding where Plaintiff expressly assented to terms of handbook, that alone was insufficient to transform the handbook into a binding contract). Since the Handbook contains an express disclaimer (ECF No. 83-1 at 16:16-22), the Court finds that the Handbook does not constitute a contract.

### ii. Dual Employment Policy

Besides the Handbook, Lynn also signed the Dual Employment Policy which Plaintiff describes as a "distinct policy. . . prohibit[ing Lynn] from engaging in any dual employment that could create a conflict of interest with Luminate." (ECF No. 64-2 ¶ 74.) Lynn argues that the Dual Employment Policy is not a contract—but rather implemented to "ensure compliance with applicable [Federal Housing Administration and Department of Housing and Urban Development] requirements" for home loan lenders. (ECF No. 83-1 at 18:24-28.) There is no language in the Dual Employment Policy that it is not intended to be a contract. And, Lynn does not cite any legal precedent supporting the interpretation that the Dual Employment Policy's statement of purpose renders it a non-contract. Lastly, the Dual Employment Policy otherwise fulfills the requirements for a binding contract between Parties, in that it is written and signed. *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1069 (N.D. Cal. 2017) ("a written agreement is 'executed' when all parties sign the agreement") (citing *Nielsen Constr. Co. v. Int'l Iron Prod.*, 18 Cal.App.4th 863, 869 (1993)).

In sum, the Court finds that—unlike the Handbook—Plaintiff has sufficiently alleged that the Dual Employment Policy is an existing contract binding Lynn. Language stating the purpose of the Dual Employment Policy is to comply with agency requirements is distinct from an explicit statement that such policy is not intended to be a contract. *Cf. Tetrault v. Cap. Grp. Companies Glob.*, No. 2:23-CV-5144-WLH-E, 2024 WL 3468903, at *8 (C.D. Cal. Jan. 17, 2024) (non-binding employee handbook states the "[h]andbook is not intended to be in the nature of a legal contract"); *see also Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 439–40 (C.D. Cal. 1995) (non-binding employee handbook states it "is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract").

### 2. Breach of Employment Terms

According to Plaintiff, Lynn allegedly breached the terms of her employment by "inter alia, using, disclosing, and/or stealing Luminate's trade secrets and confidential and proprietary information for her individual benefit and that of Luminate's competitor,

Better, and by assisting in the solicitation of Luminate employees to terminate employment with Luminate and join Better." (ECF No. 64-2 ¶ 74.)

### i. Dual Employment

Plaintiff makes several allegations that at the very least, Lynn had performed work for Better in conflict of interest to Plaintiff's business during her employment with Plaintiff. For example, Plaintiff alleges that, while employed at Plaintiff, Lynn provided Better with Plaintiff's financial analysis reports and playbooks, facility lease agreements for Plaintiff's NEO Division, and Lynn's own "financial analysis of Plaintiff's branches and how they could be used at Better, including, but not limited to, the creation of Branch Pro Formas and setting corporate allocations." (*Id.* ¶¶ 51–54.) Plaintiff also alleged that Lynn violated her employment terms by "assisting in the solicitation of [Plaintiff's] employees to terminate employment with [Plaintiff] and join Better." (*Id.* ¶¶ 74.) However, conspicuously missing from Plaintiff's complaint is whether Better had actually employed, offered to employ, or otherwise compensated Lynn while she was acting in conflict of interest with Plaintiff's business interests. Though Lynn was offered a job at Better after her termination (*id.* ¶ 31), Plaintiff does not provide any evidence she was offered any material benefits or promises of future employment by Better *while* employed at Plaintiff. Further, Plaintiff does not point to any language in the Dual Employment Policy that Lynn's actions—as currently alleged—amount to breaching its terms.

### ii. Disclosing and Using Plaintiff's Confidential and Proprietary Information

Next, allegedly in contravention of the terms of the Handbook, Lynn "disclos[ed]. . . company trade secrets and proprietary and confidential commercially sensitive information (*i.e.* financial or sales records/reports, marketing or business strategies/plans, product development information, customer lists, patents, trademarks, etc.) of the company' as part of their condition of employment with Plaintiff." (ECF No. 64-2 ¶ 70). As previously discussed, the Court has already found Plaintiff failed to sufficiently allege the Handbook is a binding contract. Further, Plaintiff failed to explicitly allege that sharing

confidential information also violates the Dual Employment Policy—describing the Dual Employment Policy as "distinct" from the Handbook. (*Id.* ¶ 73.)

### 3. Damages

Finally, to assert a breach of contract claim, Plaintiff must allege that Lynn's breach of contract led to Plaintiff incurring damages. *Wall St. Network, Ltd.*, 164 Cal. App. 4th at 1178. Here, Plaintiff alleges, for example, that Lynn "sought and received reimbursement from Luminate for expenses purportedly incurred during the performance of their job duties that were, in actuality, spent in furtherance of their efforts to solicit [Plaintiff] employees to join their competitor." (ECF No. 64-2 ¶ 84.) Plaintiff also alleges Lynn "directed and encouraged other [Plaintiff] employees to seek reimbursement for expenses they incurred while meeting to consider solicitation efforts to join Better, and such wrongful reimbursement requests were submitted to and paid by [Plaintiff]." (*Id.* ¶ 85.) Plaintiff has thus adequately alleged damages resulting from its breach of contract claim to survive the motion to dismiss stage.

\* \* \*

For the reasons above, the Court **GRANTS WITHOUT PREJUDICE** dismissal of Plaintiff's breach of contract claim in its entirety. (ECF No. 83.)

### D. Breach of Fiduciary Duty and Duty of Loyalty

Plaintiff asserts claims for breach of fiduciary duty and duty of loyalty against Lynn. (ECF No. 64-2 ¶¶ 78–87.) As a threshold matter, Plaintiff's breach of fiduciary duty and duty of loyalty claims are not preempted by Plaintiff's trade secret claims—since Plaintiff's breach of fiduciary duty claims go beyond Lynn's alleged sharing of trade secrets (*see* ECF No. 64-2 ¶¶ 82–85) (breach via soliciting employees to work for Better while employed at Plaintiff and wrongfully requesting reimbursement from Plaintiff for recruitment efforts). *See Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at \*9 (C.D. Cal. Aug. 7, 2018) (citing *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 232–33 (Cal. Ct. App. Apr. 29, 2010)) ("[I]f a breach of fiduciary duty is not 'based on the same nucleus of facts as [the] trade secret misappropriation,' [the California

trade secrets state law] will not preempt the claim"). The Court separately analyzes each duty.

### 1. Fiduciary Duty

To evaluate Plaintiff's claims for fiduciary duty, the Court first analyzes whether Lynn owed Plaintiff a fiduciary duty. For a fiduciary duty to exist, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Lee v. Lee*, No. LACV1908814JAKFFMX, 2021 WL 4459762, at *15 (C.D. Cal. May 13, 2021) (citing *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008)). In the context of employment specifically, an employee generally does not owe a fiduciary duty to his or her employer unless an employment contract provides otherwise. *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 989 (C.D. Cal. 2011). However, California courts have held that corporate directors and officers typically are deemed to owe fiduciary duties to their employer, and non-officers also have been found to owe fiduciary duties if they participate in management. *See generally Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at *5-6 (N.D. Cal. Apr. 1, 2010) (citing California cases).

Here, Lynn was employed as Plaintiff's "Director of Finance." (ECF No. 64-2 ¶ 34.) As part of Lynn's employment, Plaintiff "entrusted her with confidential and proprietary information about [Plaintiff's] operations, strategies, and employees." (*Id.* ¶ 35.) Lynn was allegedly part of Plaintiff's NEO division leadership. (*Id.* ¶ 19.) Thus, because of Lynn's high-ranking position within the NEO Division, the Court finds that Plaintiff adequately alleges Lynn owes Plaintiff a fiduciary duty.

Plaintiff further alleges Lynn breached her fiduciary duty to Plaintiff by—among other things—"work[ing] on behalf of and me[eting] frequently with Better to aid [Plaintiff]'s competitor" and by "soliciting and/or attempting to solicit [Plaintiff's] employees while they were all still employees of [Plaintiff], to terminate their employment and/or violate their obligations to their employer [Plaintiff], and make arrangements to join [Plaintiff]'s competitor, Better." (ECF No. 64-2 ¶ 82.) California courts have held that a

corporate officer who, after agreeing to work for his or her employer's competitor, remains with the current employer and assists the competitor in "raiding" the employer's key personnel, breaches a fiduciary duty to the employer as a matter of law. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 423 (2000); *see also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 331 (1966).

The Court therefore **DENIES** Lynn's motion to dismiss plaintiff's breach of fiduciary duty claim (ECF No. 83).

### 2. Duty of Loyalty

Even if Lynn did not owe Plaintiff a fiduciary duty under California law, "an employee does owe a duty of loyalty to his or her employer." *Clasby v. Ivanovic*, No. CV1802313SJOJPR, 2019 WL 8065862, at *8 (C.D. Cal. Dec. 2, 2019) (citing Cal. Labor Code §§ 2860, 2863). In the context of employment, this Court has reasoned the duty of loyalty contains subsidiary obligations, including: "(1) the duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors; (2) the duty not to acquire a material benefit from a third party in connection with ... actions taken ... through the agent's use of the agent's position; and (3) the duty not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party." *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1122 (S.D. Cal. 2020) (citing *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007)).

Plaintiff alleges Lynn violated the duty of loyalty on all three of the grounds discussed in *Erhart,* 612 F. Supp. 3d at 1122. (ECF No. 99 at 28:2–29:18.) Plaintiff has alleged that Lynn has actively assisted Better—Plaintiff's competitor—while employed at Plaintiff through actions such as sharing Plaintiff's trade secrets with Better and soliciting Plaintiff's employees to work at Better. (ECF No. 64-2 ¶¶ 47–52, 54, 58.) Though it is unclear whether Lynn had shared confidential information with Better intending to eventually receive a job offer (*i.e.*, material benefit) from Better, Plaintiff has adequately alleged Lynn breached her duty of loyalty on other grounds. As such, Plaintiff has

sufficiently alleged the elements for a breach of the duty of loyalty in an employer-employee relationship. *Erhart*, 612 F. Supp. 3d at 1122.

The Court therefore **DENIES** Lynn's motion to dismiss plaintiff's duty of loyalty claim (ECF No. 83).

### E.    Tortious Interference

Plaintiff asserts a claim for tortious interference under California law against Lynn. (ECF No. 64-2 ¶¶ 118–125.) More specifically, Plaintiff alleges Lynn tortiously interfered with Plaintiff's contracts with Plaintiff's other employees by: (1) offering those employees lucrative contracts to join Better; and (2) facilitating meetings between those employees and Better's representatives. (*Id.* ¶¶ 121–122.)

To state a claim for tortious interference of contractual relations, Plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1141 (2020).

Plaintiff primarily asserts that Lynn had induced other employees to breach the terms of the Handbook. As previously discussed, the Dual Employment Policy is a valid contract, but the Handbook is not. In its complaint against Lynn, Plaintiff fails to allege that Lynn has induced Plaintiff's employees to breach their other contracts. Notably, Plaintiff has failed to allege that Plaintiff's employees have signed the Dual Employment Policy, or similar valid contracts. For the reasons above, the Court **GRANTS WITHOUT PREJUDICE** Lynn's motion to dismiss Plaintiff's claims for tortious interference. (ECF No. 83.)

### V.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** Lynn's to dismiss (ECF No. 83.) The Court **DENIES** Lynn's motion to dismiss Plaintiff's claims for misappropriation of trade secrets under state and federal law, breach

of fiduciary duty, and breach of duty of loyalty.  However, the Court **GRANTS WITHOUT PREJUDICE** dismissal of Plaintiff's tortious interference claim and Plaintiff's breach of contract claim.  For Plaintiff's dismissed claims, the Court **GRANTS** Plaintiff leave to amend by **January 5, 2025**.

**IT IS SO ORDERED.**

DATED: December 16, 2025

**Hon. Cynthia Bashant, Chief Judge
United States District Court**