1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

LUMINATE HOME LOANS, INC.,

Case No. 24-cv-02251-BAS-MSB

12

Plaintiff,

13

v.

**ORDER GRANTING IN PART, DENYING IN PART COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AND STRIKE COUNTERCLAIMS OF HORANYI AND LEE (ECF No. 57)**

14

BETTER MORTGAGE CO., *et. al*,

15

Defendants.

16

DANIEL HORANYI and JEANETTE LEE.,

17
18

Counterclaimants,

19

v.

20

LUMINATE HOME LOANS, INC.,

21

Counterclaim Defendant.

22        Pending before the Court is a motion to dismiss (ECF No. 57) submitted by Luminate

23   Home Loans, Inc., ("Luminate"), Luminate Bank, and Taryn Reuter ("Reuter")

24   (collectively, "Counter-Defendants") to strike counterclaims submitted by Daniel Horanyi

25   ("Horanyi") and Jeanette Lee ("Lee") (collectively, "Counter-Plaintiffs") (ECF No. 43).

26        For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the

27   motion to dismiss.  (ECF No. 57.)

28   **I.    BACKGROUND**

24cv2251

Luminate is a mortgage loan lender. In 2022, Luminate acquired a mortgage division known as NEO Home Loans ("NEO") from a competitor, Celebrity Home Loans LLC ("Celebrity"). (ECF No. 43 ¶¶ 2, 15, 17–26.) In acquiring NEO, Luminate had entered into an agreement with Celebrity to acquire NEO's intellectual property – such as its "Neo Home Loans" trademark, employee training, financial analysis, and marketing materials. (*Id.* ¶¶ 15–16.) Horanyi was initially a NEO Home Loans manager at Celebrity and served as a NEO Division President within Luminate after making the transition from Celebrity upon Luminate's acquisition of NEO in 2022. (*Id.* ¶¶ 2, 22, 135.) Lee was also a NEO Home Loans manager at Celebrity and joined Luminate upon Luminate's acquisition of NEO. (*Id.* ¶ 2.) Prior to joining Luminate, Horanyi and Lee discussed their prospective new positions with Reuter, who is the CEO of Luminate. Reuter allegedly promised Horanyi and Lee that NEO would retain its operational independence and intellectual property. (*Id.* ¶ 2.) Reuter also allegedly promised Horanyi and Lee that they could solicit other NEO employees to leave Luminate without repercussions. (*Id.* ¶¶ 2, 24.)

Upon discovering Horanyi and Lee were sharing Luminate's financial and employee data with a newly founded competitor, Better Mortgage Loans, Luminate terminated the employment of Horanyi and Lee in October 2024. (*Id.* ¶¶ 37–38.) Upon termination, Luminate allegedly delayed payment of their wages and failed to pay other balances owed. (*Id.* ¶ 45.)

On December 2, 2024, Luminate initiated this action against multiple defendants, including Horanyi and Lee. (ECF No. 1.) On June 30, 2025, Horanyi and Lee filed counterclaims against Luminate and Reuter, bringing the following causes of action (ECF No. 43):

1. Count I: Failure to Provide Required Meal Periods (Horanyi) (Cal. Lab. Code §§ 226.7, 512)

2. Count II: Failure to Provide Required Rest Periods (Horanyi) (Cal. Lab. Code §§ 226.7, 512)

24cv2251

3. Count III: Failure to Pay Overtime Wages (Horanyi) (Cal. Lab. Code §§ 510, 1194, 1198)

4. Count IV: Failure to Pay Minimum Wages (Horanyi) (Cal. Lab. Code §§ 1194, 1197)

5. Count V: Liquidated Damages (Horanyi) (Cal. Lab. Code § 1194.2)

6. Count VI: Failure to Provide Accurate Wage Statements (Cal. Lab. Code § 226)

7. Count VII: Failure to Pay Final Wages/Waiting-Time Penalties for Nonpayment of Wages under the California Labor Code

8. Count VIII: Failure to Reimburse Expenses & Losses (Cal. Lab. Code §2802)

9. Count IX: Violation of Labor Code Sections 432.5 and 925, and Section 16600 *et. seq.* of the California Business and Professions Code

10. Count X: Wrongful Termination in Violation of Public Policy (Gov't Code §12940 *et. seq.*)

11. Count XI: Defamation

12. Count XII: Tortious Interference with Prospective Economic Advantage

13. Count XIII: Breach of Contract

14. Count XIV: Breach of Implied Covenant of Good Faith and Fair Dealing

15. Count XV: Unjust Enrichment

16. Count XVI: Fraudulent Misrepresentation

17. Count XVII: Unfair Business Practices (Cal. Bus. & Prof. Code §17200)

18. Count XVIII: Conversion

19. Count XIX: Accounting

20. Count XX: Declaratory Relief

21. Count XXI: Violation of California Invasion of Privacy Act (California Penal Code § 632)

22. Count XXII: Punitive Damages

Counter-Defendants moved to dismiss Counter-Plaintiffs' counterclaims (ECF No. 57). Counter-Plaintiffs filed an opposition to Counter-Defendants' motion to dismiss (ECF

24cv2251

No. 75). Counter-Defendants then filed a reply in support of their motion to dismiss. (ECF No. 82).

The Court finds Counter-Defendants' motion to dismiss (ECF No. 57) appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III.    ANALYSIS

### A.    California Labor Code

#### 1.    California Executive Exemption to Wage and Hour Claims

Horanyi asserts counterclaims against Counter-Defendants for violating California Labor Code provisions governing meal periods (Cal. Lab. Code §§ 226.7, 512) (ECF No. 43 ¶¶ 64–70) (Count I), rest periods (Cal. Lab. Code §§ 226.7, 512) (ECF No. 43 ¶¶ 71–74) (Count II), overtime wages (Cal. Lab. Code §§ 510, 1194, 1198) (ECF No. 43 ¶¶ 75–79) (Count III), minimum wages (Cal Lab. Code §§ 1194, 1197) (ECF No. 43 ¶¶ 80–84) (Count IV), and accurate wage statements (Cal. Lab. Code § 226) (ECF No. 43 ¶¶ 88–91) (Count VI). Horanyi seeks liquidated damages (Cal. Lab. Code §§ 1194.2, 1197) (ECF

- 4 -

No. 43 ¶¶ 85–87) (Count V) for these violations (collectively, "wage and hour claims"). Counter-Defendants counter that Horanyi is instead, exempt from wage and hour claims under the California Labor Code. (ECF No. 57-1 at 11:6–14:2.)

California law provides an exemption from wage and hour claims for "executive" employees who meet six criteria. To qualify as executive-exempt, an employee must: (1) manage the enterprise, a customarily recognized department, or subdivision thereof; (2) direct the work of two or more other employees; (3) have the authority to hire or fire, or have their recommendations to hire, fire, or promote given weight; (4) exercise discretion and independent judgment; (5) be primarily engaged in exempt duties; and (6) earn a monthly salary equal to twice the state minimum wage for full-time employment. Cal. Code Regs. tit. 8, § 11070(1)(A) (1)(a)-(f); *see Casida v. Sears Holdings Corp.*, No. 1:11-CV-01052 AWI, 2012 WL 3260423, at *7 (E.D. Cal. Aug. 8, 2012), *report and recommendation adopted*, No. 1:11-CV-01052-AWI, 2012 WL 3763621 (E.D. Cal. Aug. 29, 2012); *see also Whiteway v. FedEx Kinkos Off. & Print Servs., Inc.*, No. C 05-2320 SBA, 2010 WL 1980229, at *2 (N.D. Cal. May 17, 2010).

California law encourages the Court to be guided by the Fair Labor Standards Act ("FLSA") where California labor laws are unclear. *See Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 562 (1995) ("Because the California wage and hour laws are modeled to some extent on federal law, federal cases may provide persuasive guidance."); *see also Chavez v. Converse, Inc.*, No. 15-CV-03746 NC, 2016 WL 4398374, at *2 (N.D. Cal. Aug. 18, 2016). California labor law does not clearly define what constitutes a "salary" or what it means to pay an employee on a salary basis for purposes of the exemption. *See* Labor Code § 1182.12; IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040; Wage Order 4); *see also Semprini v. Wedbush Sec., Inc.*, 57 Cal. App. 5th 246, 251 (2020).

Federal labor regulation, 29 C.F.R. § 541.602(a)(3), allows up to ten percent of the salary amount required by § 541.600(a) of the Fair Labor Standards Act (FLSA) to be satisfied "by payment of nondiscretionary bonuses, incentives and commissions, that are

paid annually or more frequently," but employers "must pay the exempt executive, administrative, or professional employee on a salary basis at least 90 percent . . . of the standard salary level." *Semprini*, 57 Cal. App. 5th at 252. In other words, nondiscretionary bonuses and commissions cannot make up more than ten percent of an employee's salary for that employee to be exempt. *See Walker v. Civility Mgmt. Sols., LLC,* No. CV GLS-21-2100, 2024 WL 4170015, at *11 (D. Md. Sept. 12, 2024) (finding that plaintiff was not paid on salaried basis under FLSA exemption because over ten percent of plaintiff's salary comprised of bonus payments).

Additionally, to be exempt from federal labor protections in the FLSA, employees must receive "a predetermined amount" of compensation that is "not subject to reduction because of variations in the quality or quantity of the work performed" by the employee. *Bozzo v. City of Gilroy*, 982 F. Supp. 2d 1057, 1059 (N.D. Cal. 2013). California courts have further held that the "nondiscretionary bonus" counting towards an employee's base salary for purposes of the FLSA exemption must also not be subject to reduction based on the quality or quantity of work performed. *Semprini*, 57 Cal. App. 5th at 252 (advances on not-yet-earned commissions cannot constitute nondiscretionary bonuses that satisfy the FLSA salary basis test).

The administrative exemption is an affirmative defense for which the defendant bears the burden of proof. *See Fleming v. Carpenters/Contractors Cooperation Comm., Inc.*, 834 F. Supp. 323, 325 (S.D. Cal. 1993); *Service Employees Int'l Union, Local 102 v. County of San Diego,* 784 F.Supp. 1503, 1509 (S.D. Cal. 1992); *Abshire v. County of Kern,* 908 F.2d 483, 485–86 (9th Cir. 1990). The defendant employer must show that the plaintiff employee fits plainly and unmistakably within (the exemption's) terms. *Id.*

Here, Horanyi clearly satisfies the first five factors of the executive employee exemption test. The Counterclaim establishes that Horanyi served as NEO's "managing member," overseeing more than 200 employees, had authority to recruit personnel, and exercised independent judgment—including recommending that NEO join Luminate. (ECF No. 43 ¶¶ 14, 18, 24, 25).

However, whether Horanyi satisfies the salary basis test in the last prong of the executive employee exemption test is slightly murkier. The base salary Horanyi was paid in 2023 was $62,400. (ECF No. 43 ¶ 39). To meet the salary test in the last prong listed above, an employee must be paid a monthly salary that is at least *twice the state minimum wage* for full-time employment. Cal. Lab. Code § 515(a). In 2023, employees were entitled to be paid a minimum wage of at least $15.50 per hour. Cal. Lab. Code § 1182.12 (2023). Thus, the minimum salary for exempt employees in 2023 was $5,373.34 per month (or $64,480.00 annually). *Id*. Horanyi's 2023 base salary of $62,400, therefore, does not subject him to the executive employee exemption.

Counter-Defendants contend instead, that pursuant to federal labor law, Horanyi should be subject to the executive employee exemption since ten percent of Horanyi's bonus and his base salary add up to a total figure over double the minimum wage annual salary. (ECF No. 57-1 at 13:22-26). However, Counter-Defendants misstate the ten percent rule in the FLSA—which instead, calculates whether over ten percent of Horanyi's total salary is based upon *non*discretionary bonuses. Counter-Defendants state that Horanyi has been paid nondiscretionary bonuses totaling $125,000 (ECF No. 57-1 at 13:25-26), which makes up nearly 67% Horanyi's total salary—well over the ten percent permitted by 29 C.F.R. § 541.602(a)(3). *See Walker*, 2024 WL 4170015, at *11 (finding bonuses comprising of 41% of an employee's salary to render that employee not subject to FLSA's exemption).

Even if Luminate had correctly applied the FLSA's ten percent rule, the bonuses Horanyi allegedly received are far from nondiscretionary. Luminate asserts that Horanyi's bonus payments are "keyed to the objective production volume" (ECF No. 82 at 9:8-12 (citing ECF No. 57-2 at 33-34), which implies that Horanyi's compensation was subject to reduction based on "variations in the . . . quantity of work performed." *See Bozzo*, 982 F. Supp. 2d at 1059.

Thus, for the reasons above, Counter-Defendants have failed to meet their burden at this stage of proceedings to warrant dismissal of the wage and hour counterclaim that

Horanyi was paid an adequate base salary to qualify as an exempt employee under the California Labor Code.

### 2.    Meal and Rest Periods (Cal. Lab. Code §§ 226.7, 512)

As articulated by the Ninth Circuit in *Landers v. Quality Communications, Inc.*, wage-and-hour claims need not include "detailed factual allegations," but neither may they consist solely of "conclusory allegations that merely recite the statutory language." 771 F.3d 638, 644 (9th Cir. 2014).  Although the claims in *Landers* were brought under the federal Fair Labor Standards Act, courts regularly apply the same pleading standard to claims brought in federal court under the California Labor Code.  *See, e.g., Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 942 (N.D. Cal. 2016); *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955, 2022 WL 2132916, at *4 (N.D. Cal. June 14, 2022); *Wright v. Frontier Mgmt. LLC*, No. 19-cv-01767, 2021 WL 2210739, at *2–3 (E.D. Cal. June 1, 2021).  To state a claim for failure to provide required meal or rest periods, a plaintiff must allege either a specific corporate policy prohibiting those breaks or a specific instance or instances in which he was denied a required break.  *See Ramirez*, 2022 WL 2132916, at *4 (finding plaintiff's general allegations of working events without permission to take a break insufficient under *Landers*); *see also Verduzco v. French Art Network LLC*, No. 23-CV-00771-BLF, 2023 WL 4626934, at *2 (N.D. Cal. July 18, 2023) (finding plaintiff's recitation of statutory language, without specifying concrete instances of being denied meal or rest breaks, to be insufficient to plead wage and hour claims under the California Labor Code).

Here, Horanyi brings causes of action against Counter-Defendants for failing to meet the meal period and rest period requirements set by the California Labor Code (Counts I and II).  (ECF No. 43 ¶¶ 64–74.)  More specifically, Horanyi alleges that by misclassifying him as a salary exempt employee, Counter-Defendants deprived him of meal breaks and rest breaks.    (*Id.* ¶¶ 40, 67, 68, 72.)  Conspicuously missing from Horanyi's allegations are any specific instances in which Horanyi was actively denied any meal or rest breaks, or how Counter-Defendants' "misclassification" of Horanyi as a non-exempt employee

deprived Horanyi of meal and rest breaks or compensation thereof. *See Ramirez*, 2022 WL 2132916, at *4 (finding plaintiff's general allegations of working events without permission to take a break insufficient under *Landers*). Merely alleging that Horanyi in fact, did not take a one hour meal period or rest period daily is insufficient to demonstrate Counter-Defendants *deprived* Horanyi of the opportunity to do so. Without identifying concrete instances being denied a meal or rest break by Counter-Defendants or compensation for such breaks, Horanyi's allegations are too general for wage-and-hour claims under the California Labor Code. *See Verduzco*, 2023 WL 4626934, at *2 (N.D. Cal. July 18, 2023) (finding the same).

In addition, Horanyi fails to oppose Counter-Defendants' motion to dismiss his meal and rest period causes of action (Counts I and II), which alone is grounds for dismissal without prejudice. *See Kwan v. Wells Fargo Bank, N.A.*, No. 12CV1793-GPC MDD, 2013 WL 3831275, at *8 (S.D. Cal. July 23, 2013) (granting motion to dismiss breach of contract claim without prejudice where plaintiff did not oppose motion to dismiss).

Thus, for the reasons above, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Horanyi's meal and rest period counterclaims (Counts I and II). (ECF No. 43.)

### 3. Overtime Wages and Minimum Wages (Cal. Labor Code §§ 510, 1194, 1197, 1198)

Under *Landers*, "[a]lthough plaintiffs . . . cannot be expected to allege 'with mathematical precision' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages," or in which they were "not paid minimum wages." 771 F.3d at 1146. Overtime claims are insufficiently pled where the complainant fails to include "basic factual allegations," such as "what period of time or type of conduct Plaintiffs are counting as hours worked," that would permit the court to conclude the claims were plausible. *Tan v. GrubHub, Inc*., 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016).

Here, Horanyi alleges that by misclassifying him as a salary exempt employee, Luminate also deprived him of the opportunity to be compensated for working overtime wages (Count III). (*Id*. ¶¶ 75–79.) Though Horanyi does state he regularly worked beyond forty hours per week, he again fails to specify any particular week in which he worked in excess of forty hours and was not paid overtime wages or minimum wages. *See Tan*, 171 F. Supp. 3d at 1008. Horanyi also fails to specify what tasks he performed during his alleged overtime hours. *See id*.

Horanyi also asserts a cause of action for unpaid minimum wages for working overtime hours for which he was not compensated (Count IV). (*See* ECF No. 43 ¶¶ 80–84.) Insofar as Horanyi's claim for unpaid minimum wages is founded upon his allegations that he was not paid overtime wages, Horanyi's minimum wage claim suffers from the same defects as his overtime wages claim. *See Rivera v. Jeld-Wen, Inc*., No. 21-CV-01816-AJB-AHG, 2022 WL 3702934, at *9 (S.D. Cal. Feb. 4, 2022) (dismissing Plaintiffs' claim for failure to pay minimum wages where it "is derivative of Plaintiffs' claim for failure to pay overtime"); *see also Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 1:19-cv-00484-DAD-SAB, 2022 WL 411422, at *6–7 (E.D. Cal. Feb. 10, 2022) (subjecting the plaintiffs' minimum wage claims to the same *Landers* standard as the plaintiffs' overtime wage claims and finding that they had not adequately alleged a workweek in which they were not paid minimum wages).

For the reasons above, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Horanyi's overtime and minimum wage claims (Count III and IV) (ECF No. 43).

### 4.    Liquidated Damages (Cal. Labor Code § 1194(2))

Section 1194.2 of the California Labor Code provides that "in any action . . . to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Since the Court has dismissed without prejudice Horanyi's wage claims above, the Court

**GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Horanyi's claim for liquidated damages (Count V) (ECF No. 43).

### 6.    Accurate Wage Statements (Cal. Labor Code § 226)

Accurate wage statement claims under California Labor Code § 226 that are derivative of other Labor Code claims, including wage and hour claims, collapse as a matter of law when those other claims are inadequately pled. *See Ramirez*, 2022 WL 2132916, at *4 (dismissing derivative wage statement and terminated/resigned employee wage claims where predicate wage, meal period, and rest break claims were not adequately pled); *see also Verduzco*, 2023 WL 4626934, at *3 (N.D. Cal. July 18, 2023).

Here, Horanyi's counterclaim for accurate wage statements appears to be derivative of his wage and hour counterclaims. (*See* ECF No. 43 ¶ 90 (requesting wage statements for "accurate" information regarding net wages earned, applicable hourly rates, and total number of hours worked at each rate).) Since Horanyi's other California Labor Code counterclaims are insufficiently pled, the Court also finds Horanyi has failed to plead a claim for accurate wage statements.

Further, Lee fails to provide any detail regarding the inaccuracy of her own wage statements. Courts have dismissed similarly vague claims. *See e.g., Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, No. CV171554MWFRAOX, 2017 WL 1520416, at *8 (C.D. Cal. Apr. 26, 2017) (dismissing a Cal. Labor Code § 226 claim on grounds of vagueness where plaintiff has failed to "allege a single factual exemplar of any inaccurate wage statement").

For the reasons above, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiff's counterclaim for accurate wage statements (Count VI).

### 7.    Waiting Time Penalty (Cal. Labor Code § 203)

Pursuant to California Labor Code § 203, an employer is liable for penalties if it "willfully fails to pay" wages owed to an employee at the time he or she is discharged or

quits.  Cal. Lab. Code § 203(a); *see also Wood v. N. Am. Van Lines, Inc.*, No. 820CV02092JLSADS, 2021 WL 3134203, at *6 (C.D. Cal. July 23, 2021).

Here, Counter-Plaintiffs' waiting time claim is premised on the failure to pay Horanyi for overtime, meal periods, and rest periods.  (ECF No. 43 at ¶¶ 92–98.)  Because the Court dismissed these claims, Horanyi also fails to state a claim for waiting time penalties.  *See Velasco v. Elliot*, No. 18-CV-03191-VKD, 2018 WL 6069009, at *6 (N.D. Cal. Nov. 20, 2018) ("Because [Plaintiff's] fifth and sixth claims for waiting time penalties and unfair business practices are derivative of his overtime and minimum wage claims, he has also failed to state a claim for those violations.")

Further, Lee fails to provide any detail regarding the amount or nature of unpaid wages—and thus does not adequately allege a waiting period claim to survive the motion to dismiss stage.  Courts have dismissed similarly vague claims.  For example in *Lopez v. Aerotek, Inc.*, the plaintiff alleged only that "Defendants willfully failed to pay their workers accrued wages due promptly upon separation, as required by [the California Labor Code]."  2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015).  The court dismissed the claim after noting that "Plaintiff does not even generally allege what wages were earned and paid at the time of termination, nor does she allege how and in what manner any final wage payment was untimely under the Labor Code."  *Id*; *see also Soratorio*, 2017 WL 1520416, at *7 (C.D. Cal. Apr. 26, 2017) (dismissing plaintiff's Cal. Lab. Code § 203 claim for failing to allege exactly what wages were earned and unpaid).

For the reasons above, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiff's counterclaim for waiting time penalties under Cal. Lab. Code § 203 (Count VII) (ECF No. 43).

### 8.    Failure to Reimburse Expenses & Losses (Cal. Labor Code § 2802)

Section 2802 of the California Labor Code requires employers to indemnify "employee[s] for all necessary expenditures or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties ...."  Cal. Lab. Code § 2802.  There are three

24cv2251

elements to a claim under Cal. Lab. Code § 2802: "(i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Perez v. Island Hosp. Mgmt. III, LLC*, No. CV-18-4903-DMG-JPRx, 2019 WL 3064113, at *7 (C.D. Cal. Feb. 8, 2019) (quoting *Gattuso v. Harte-Hanks Shoppers*, 42 Cal. 4th 554, 568 (2007)).

Here, Counter-Plaintiffs do not sufficiently allege a cause of action for failure to indemnify for expenditures or losses in violation of Section 2802 of the California Labor Code. (*See* ECF No. 43 ¶¶ 99–104.)   Though Counter-Plaintiffs assert they incurred expenses related to their duties including "costs related to travel, communication, equipment, supplies," they do not elaborate upon what travel they engaged in or what other personal costs they incurred to perform their duties.   *See e.g.*, *Paulk v. Student Transportation of Am., Inc.*, No. CV 24-3436-JFW(JPRX), 2024 WL 4868272, at *3 (C.D. Cal. July 25, 2024) (asserting out-of-pocket expenses for using personal cell phone to perform job duties is sufficient for a Cal. Lab. Code § 2802 claim to survive the motion to dismiss stage).   Even if Counter-Plaintiffs sufficiently alleged losses or expenditures incurred, they failed to allege those losses or expenditures were reasonable and necessary for them to conduct their job duties at Luminate.  *Perez*, 2019 WL 3064113, at *7.

Thus, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiff's counterclaim for waiting time penalties under the California Labor Code (Count VIII) (ECF No. 43).

### 9.    Forum Selection Clause, Cal. Lab. Code § 925

Counter-Plaintiffs argue that Counter-Defendants required Counter-Plaintiffs to sign unlawful employment agreements that include: (1) forum selection clauses for disputes arising from the agreement requiring adjudication in Minnesota, and (2) non-compete provisions.  (ECF No. 43 ¶¶ 27, 111.)  Counter-Plaintiffs assert that these clauses violate Cal. Lab. Code §§ 432.5, 925; and Cal. Bus. & Prof. Code §§ 16600, 16600.5 (Count IX).

Cal. Lab. Code § 925 provides:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>> (1) Require the employee to adjudicate outside of California a claim arising in California.
>> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

District courts have determined that § 925 expresses California's strong public policy against forum-selection clauses in employment agreements. *See e.g., Campbell v. FAF, Inc.*, No. 19-CV-142-WQH-BLM, 2019 WL 2574119, at *5 (S.D. Cal. June 20, 2019). As a limiting principle, § 925's public policy involves only employees who primarily reside and work in California during the time of employment. *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 937 (N.D. Cal. 2020) (evaluating the enforceability of forum selection clause) (quoting Cal. Lab. Code § 925). Further, for § 925 to apply to void an employment contract, that contract must be a "condition of employment." *See Eller v. Automatic Data Processing, Inc.*, No. 23-CV-0943-BAS-AHG, 2023 WL 3829723, at *5 (S.D. Cal. June 5, 2023).

Here, Counter-Plaintiffs allege that they resided and worked in California while employed at Luminate. (ECF No. 43 ¶ 110.) Counter-Plaintiffs have also alleged Luminate required them to sign agreements "governed by Minnesota law." (*Id*. ¶ 111.) However, Counter-Plaintiffs fail to provide any contractual language specifying that their agreements with Luminate should be governed by Minnesota law, or that those agreements were a condition of Counter-Plaintiffs' employment with Luminate. *See Walters*, 488 F. Supp. 3d at 937; *Eller*, 2023 WL 3829723, at *5; *cf Garcia v. TriStruX LLC*, No. 2:23-CV-08726-SVW-SSC, 2024 WL 4867234, at *6 (C.D. Cal. Sept. 18, 2024) (finding a contract stating that New Jersey law should apply "to the fullest extent permitted by law" did not violate Cal. Lab. Code § 925, since it does not prevent California law from applying to the dispute). When a dispute relies upon contract interpretation, vague assertions of contractual duties are not enough because "[t]o the extent plaintiffs rely on a written contract, plaintiffs must

attach the written contract or plead its terms verbatim." *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012).

Thus, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DENIES WITHOUT PREJUDICE** Counter-Plaintiffs' claim for violation of Cal. Lab. Code § 925 (Count IX) (ECF No. 43).

### 10.    Employment Agreement Conditions, Cal. Lab. Code § 432.5

Cal. Lab. Code § 432.5 states that no employer shall require any employee to agree to any term or condition which is known to be prohibited by law. To adequately state a claim for a violation of these sections, a plaintiff must allege that (1) an employer/employee relationship existed at the time of the alleged conduct and (2) that the employer required the employee to sign an objectionable release because it was required for the employee to receive wages owed or because the release was prohibited by law. *Smith v. Level 3 Commc'ns Inc.*, No. C 14-05036 WHA, 2014 WL 7463803, at *2 (N.D. Cal. Dec. 30, 2014).

Cal. Bus. & Prof. Code § 16600 has "specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated," subject to a few exceptions such as when noncompete provisions are necessary to protect an employer's trade secrets. *See Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900 (1998). Cal. Bus. & Prof. Code § 16600.5 provides remedies of injunctive relief and actual damages for contracts with voidable noncompete provisions.

Here, Counter-Plaintiffs assert: "Section 432.5 [of the California Labor Code] applies to unenforceable non-compete and non-solicitation provisions, which violate California's strong public policy favoring employee mobility under Business and Professions Code § 16600." (ECF No. 43 ¶ 107.) Courts have ruled against interpreting Cal. Lab. Code § 432.5 and Cal. Bus. & Prof. Code § 16600 together, however, finding that the "plain language of Labor Code § 432.5 appears to apply only to contracts that are specifically declared unlawful." *Beebe v. Mobility, Inc.*, 2008 WL 474391, at *3 (S.D. Cal. Feb. 20, 2008) (granting motion to dismiss a claim under § 432.5 where the underlying

term was void but not unlawful). "Thus, under *Beebe*, Section 16600 cannot be the predicate for a Labor Code section 432.5 violation because Section 16600 makes the provision void rather than prohibited by law." *Hamilton v. Juul Labs*, 2020 WL 5500377, at *7 (N.D. Cal. Sept. 11, 2020).

Since an alleged Cal. Bus. & Prof. Code § 16600 violation is at the bedrock of Counter-Plaintiffs' Cal. Lab. Code § 432.5 claim, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' Cal. Lab. Code § 432.5 claim (Count IX) (ECF No. 43).

### 11. Noncompete Clauses in Employment Agreements, Cal. Bus. & Prof. Code §§ 16600, 16600.5 *et. seq*.

As discussed, Cal. Bus. & Prof. Code § 16600 has "specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated." *See Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900 (1998). Cal. Bus. & Prof. Code § 16600.5 states that a "former employer shall not attempt to enforce" a non-compete contract that is void. *DER Sec. Corp v. Enetrics LLC*, No. 25-CV-00764-VC, 2025 WL 1993638, at *1 (N.D. Cal. July 17, 2025).

Counter-Plaintiffs allege that Counter-Defendants required Counter-Plaintiffs to sign contracts, "some" of which contain non-compete provisions. (ECF No. 43 ¶¶ 27, 111.) In particular, Horanyi asserts he signed a contract containing the following employment provision, Section 5.8 of the Non-Producing Division President Employment Agreement (*id*. ¶ 28):

> Employee agrees that for a period of twelve (12) months following the cessation of employment with the Company for any reason (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein) he/she will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity, solicit for the purpose of providing services of the type provided by the Company (i) any actual customer or client of the Company; (ii) any loans in process with the Company at the time of Employee's separation from the

24cv2251

Company; (iii) any actual or prospective customer or client generated by Company-driven efforts, including Company's corporate marketing efforts, preferred company relationships and call center operations; and/or (iv) any actual or prospective customer or client not generated by the Employee's own marketing efforts or referral sources.

The contract provision above appears to "prohibit [Horanyi] from working for a competitor when the employment has terminated" without being accompanied by any of the enumerated exceptions in Cal. Bus. & Prof. Code § 16600.5 (Count IX). *See Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900 (1998). Further, Counter-Plaintiffs have not alleged that any of the enumerated exceptions allowing non-compete agreements in California apply to the agreement above. Accordingly, the Court **DENIES** Counter-Defendants' motion to dismiss Horanyi's Cal. Bus. & Prof. Code § 16600.5 counterclaim to void the cited noncompete clause quoted above (Count IX) (ECF No. 43).

However, unlike Horanyi, Lee does not cite, paraphrase or reference any specific non-compete provision that she was required to sign as a condition of her employment with Luminate. Again, when a dispute relies upon contract interpretation, vague assertions of contractual duties are not enough because "[t]o the extent plaintiffs rely on a written contract, plaintiffs must attach the written contract or plead its terms verbatim." *Altman*, 850 F. Supp. 2d at 1079. There is no allegation that Lee signed the same contract or terms as Horanyi.

Thus, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Lee's Cal. Bus. & Prof. Code §§ 16600, 16600.5 claims (Count IX) (ECF No. 43).

### B.    Wrongful Termination (Gov't Code §12940 *et. seq.*)

"To state a claim for wrongful termination in violation of public policy, a plaintiff must demonstrate that: (1) he was terminated; and (2) his dismissal violated a policy that is fundamental, beneficial for the public, and embodied in a statute or constitutional provision." *See Cervantes v. Transdev Servs., Inc.*, No. 320CV02528AJBKSC, 2021 WL

24cv2251

5513512, at *9 (S.D. Cal. Oct. 4, 2021); *Jaffe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2:17-cv-03421-ODW (Ex), 2017 WL 3160561, at *4 (C.D. Cal. July 24, 2017) (citing *Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1238, 1256, 876 P.2d 1022, 1032–33 (1994)). A plaintiff may pursue such a claim if the employer terminated the plaintiff for: (1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; or (4) reporting an alleged violation of a statute of public importance. *See Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 1090-91 (1992).   The public policy violated must be fundamental, substantial, and well-established at the time of the discharge, and it must be rooted in some constitutional or statutory provision. *Id.* at 1090, 1095.

Here, Counter-Plaintiffs appear to allege that Counter-Defendants terminated Counter-Plaintiffs' employment for "exercising a statutory right or privilege," *see Gantt v. Sentry Ins.,* 1 Cal.4th at 1090-91, including "seeking lawful alternative employment opportunities" (ECF No. 43 ¶ 114).   Counter-Plaintiffs further assert that the terminations were "conducted in bad faith and with malicious intent to punish the Counter-Plaintiffs" and were "designed and conducted in such a way to harm the Counter-Plaintiffs' reputations and career prospects by disseminating false allegations of misconduct and unethical behavior." (*Id.* ¶ 116).   However, Counter-Plaintiffs fail to make any allegations that Luminate terminated their employment with the intent to prevent Counter-Plaintiffs from seeking future employment.   While "detailed factual allegations" are unnecessary, a complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss. *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

For the reasons above, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' wrongful termination claim (Count X) (ECF No. 43).

### C.    California Anti-SLAPP Statute (Cal. Civ. Proc. Code § 425.16)

24cv2251

The California Legislature enacted the anti-SLAPP statute, California Code of Civil Procedure Section 425.16, in 1992 to curtail the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a); *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1178–79 (C.D. Cal. 2006). The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Wilcox v. Superior Ct.*, 27 Cal.App.4th 809, 816 (1994).

California's anti-SLAPP statute permits a defendant to file a "special motion to strike" to dismiss an action before trial. Cal. Civ. Proc. Code § 425.16.[1] Motions brought under the anti-SLAPP statute are evaluated in two steps. *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 928–29 (C.D. Cal. 2025). First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id*. (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)). Second, "[t]he burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id*. "The plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'" *Metabolife*, 264 F.3d at 840 (quoting *Wilcox*, 27 Cal.App.4th at 823).

## 1. Step One of anti-SLAPP Analysis

In applying the first step of the anti-SLAPP analysis, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002).

---

[1] District courts within California have permitted defendants to move to strike under Cal. Civ. Proc. Code § 425.16 and Rule 12(b)(6) in the same motion—as Luminate does here. *See e.g., Youngevity Int'l Corp. v. Smith*, No. 16-CV-0704 W (JLB), 2016 WL 7626582, at *1 (S.D. Cal. June 29, 2016).

24cv2251

Under California Code of Civil Procedure § 425.16(e), an act qualifies as protected activity if, *inter alia*, it constitutes "any written or oral statement or writing made before a . . . judicial proceeding" or "under consideration or review by a . . . judicial body."  *See* Cal. Civ. Proc. Code § 425.16(e)(1)-(2).  Statements made in litigation, or in connection with litigation, are protected by the anti-SLAPP statute.  *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 541 F. Supp. 3d 1020, 1025 (C.D. Cal. 2021) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)).

Here, Counter-Defendants move to strike Counter-Plaintiffs' claims for defamation (Count XI) and tortious interference with prospective economic advantage (Count XII) pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, alleging they are premised entirely upon "false litigation claims" and "use of the judicial system" (ECF No. 57-1 at 8:25–9:1)—including statements made by Counter-Defendants in their pleadings in this action (*id*. at 9:11-21).

### i.    Defamation

First, Counter-Plaintiffs assert that Counter-Defendants' claims in their complaint are defamatory, including: (1) Counter-Plaintiffs unlawfully shared proprietary information with Better, and (2) Horanyi violated non-solicitation obligations in an agreement with Counter-Defendants.  (ECF No. 57 ¶¶ 47–49.)  If these were the only statements Counter-Plaintiffs asserted to substantiate their cause of action for defamation, their entire cause of action would likely be barred by the anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  However, also as part of their claim for defamation, Counter-Plaintiffs further assert that: (1) Counter-Defendants told multiple third parties that Counter-Plaintiffs had acted unlawfully and unethically, (2) Counter-Defendants told industry executives at a conference in Texas that Horanyi had been a "cancer" to be excised from Luminate, and (3) Counter-Defendants told NEO employees in Florida that NEO (including Horanyi) had lied to these employees about how much was being collected on loans and had therefore stolen parts of payments that belonged to the employees.  (ECF No. 57 ¶¶ 50, 51, 53.)  Unlike Counter-Defendants' statements in their complaint, these

latter alleged statements did not take place in anticipation of or as part of any legal proceeding.

California courts have held that "an anti-SLAPP motion may strike distinct claims within a cause of action, even if the entire cause of action is not subject to anti-SLAPP." *Jordan-Benel v. Universal City Studios, Inc.,* 859 F.3d 1184, 1189 n.4 (9th Cir. 2017) (citing *Baral v. Schnitt*, 1 Cal. 5th 376, 382 (2006) (holding that mixed-claims are subject to the special motion to strike to the extent they are supported by allegations consisting of protected conduct)). As such, the Court strikes only Counter-Plaintiffs' claims that Counter-Defendants' statements in their complaint are defamatory. Counter-Plaintiffs' other claims to support their cause of action for defamation proceed to step two of the anti-SLAPP analysis.

### ii.    Tortious Interference

Unlike Counter-Plaintiffs' cause of action for defamation, claims supporting Counter-Plaintiffs' cause of action for tortious interference are based entirely upon anti-SLAPP protected speech. Counter-Plaintiffs assert that Counter-Defendants tortiously interfered with Counter-Plaintiffs' "existing and prospective economic relationships with Better Mortgage Co. [and] other potential employers or partners" by "issuing baseless legal threats against Better Mortgage Co. and other third parties to discourage collaboration" and "us[ing] the judicial system to punish Counter-Plaintiffs." (ECF No. 57 ¶¶ 129–132.) Since these "legal threats" are all related to Counter-Defendants' protected use of the judicial system to bring cases to court, Counter-Plaintiffs' cause of action for tortious interference is barred by step one of the anti-SLAPP analysis. *See Diamond Resorts U.S. Collection Dev., LLC*, 541 F. Supp. 3d at 1025 (finding statements made in litigation, or in connection with litigation, are protected by the anti-SLAPP statute).

### 2.    Step Two of anti-SLAPP Analysis

Under the second step of the anti-SLAPP framework, Counter-Plaintiffs bear the burden of demonstrating a probability of prevailing on the merits of their claims. "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

- 21 -

24cv2251

court should apply the Rule 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). There is no dispute that the anti-SLAPP motion targets the legal sufficiency of Plaintiffs' claims. Therefore, Counter-Plaintiffs' claims are analyzed under a 12(b)(6) standard.

Since the claims involving threats of litigation and during litigation are barred by step one of the anti-SLAPP analysis, *supra* § III.C.1, the Court only considers whether Counter-Plaintiffs' claims that Counter-Defendants' statements taking place outside of court are sufficient to state a claim under Rule 12(b)(6) for defamation.

To assert a prima facie case for defamation in California, Counter-Plaintiffs need to allege: (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false" (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado,* 72 Cal.App.4th 637, 645 (1999).

First, Counter-Defendants' alleged statement that Horanyi had been a "cancer" to be excised from Luminate, ECF No. 43 ¶ 51, constitutes a metaphoric statement of opinion rather than fact, since a person cannot literally be cancer. "It is an essential element of defamation that the publication be of a false statement of fact rather than opinion." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1181 (2000). "Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 685 (2017). Thus, rhetorical hyperbole, vigorous epithet[s], lusty and imaginative expression[s] of . . . contempt, and language used in a loose, figurative sense have all been accorded constitutional protection." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809, 119 Cal.Rptr.2d 108 (2002). As such, Counter-Defendants' statement referring to Horanyi as "cancer" cannot provide the basis for a prima facie claim of defamation.

Second, Counter-Defendants' alleged statement that Counter-Plaintiffs had acted "unlawfully and unethically," ECF No. 43 ¶ 50, constitutes a "'broad, unfocused and

wholly subjective comment,' " such as stating that "plaintiff was a 'shady practitioner', 'crook', or 'crooked politician'." *Copp v. Paxton*, 45 Cal. App. 4th 829, 837 (1996). Without providing any additional detail as to the contents of Counter-Defendants' statements, the Court cannot discern whether Counter-Defendants' statements were instead, "factually specific," "earnest" and "'serious' in tone." *Bowles v. Constellation Brands, Inc.*, 444 F. Supp. 3d 1161, 1175 (E.D. Cal. 2020) (citing *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017)). As such, the Court finds that Counter-Defendants' alleged statement that Counter-Plaintiffs had acted "unlawfully and unethically" is not specific enough to plead a defamation claim at the motion to dismiss stage. *See id*; *see also* Rule 12(b)(6).

Third, Counter-Defendants' alleged statement to NEO employees in Florida that Counter-Plaintiffs had "lied to these employees about how much was being collected on loans and had therefore stolen parts of payments that belonged to the employees," ECF No. 57 ¶ 53 is a statement of fact (unlike the two preceding statements). *See Maldonado*, at 72 Cal.App.4th at 645. Additionally, Counter-Plaintiffs have alleged that Counter-Defendants' statements were intentionally "published" (*i.e.*, made to independent third parties, the Florida NEO employees) and can injure Counter-Plaintiffs' prospective business relationships with these third parties going forward (ECF No. 57 ¶ 53). *See Maldonado*, at 72 Cal.App.4th at 645. Thus, regarding Counter-Defendants' statement to NEO employees in Florida, Counter-Plaintiffs sufficiently alleged a claim for defamation.

Counter-Defendants' statement to NEO's Florida employees could be subject to privilege if made in the context of explaining Counter-Defendants' decision to terminate Horanyi's and/or Lee's employment. *See King v. United Parcel Service, Inc.*, 152 Cal.App.4th 426, 440 (2007) ("[B]ecause an employer and its employees have a common interest in protecting the workplace from abuse, an employer's statements to employees regarding the reasons for termination of another employee generally" are made without malice and are privileged); *see also Carver v. Bonds*, 135 Cal. App. 4th 328, 343 (2005) ("A statement as to why an employee was terminated [is] protected under subdivision (e)(4)

- 23 -

[of California's Anti-SLAPP law]"); *see also McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1538 (a statement is made on a privileged occasion when it is a "statement[ ] by management and coworkers to other coworkers explaining why an employer disciplined an employee"). However, Counter-Plaintiffs have not alleged that Counter-Defendants' statement to NEO's Florida employees was made in the context of explaining why Horanyi and Lee were terminated—or any other reason that the statement was privileged. As such, the Court finds that Counter-Plaintiffs have adequately alleged a claim for defamation regarding Counter-Defendants' statement to NEO's Florida employees.

* * *

In sum, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) Counter-Plaintiffs' cause of action for tortious interference (Count XII) and Counter-Plaintiffs' defamation claims regarding Counter-Defendants' alleged statements that: (1) Counter-Plaintiffs unlawfully shared proprietary information with Better, (2) Horanyi had violated non-solicitation obligations in an agreement with Counter-Defendants, (3) Horanyi is "cancer" (ECF No. 43 ¶ 51), and (4) that Counter-Plaintiffs acted "unlawfully and unethically" (*id*. ¶ 50) (Count XI). These claims are **DISMISSED WITHOUT PREJUDICE**.

By contrast, the Court **DENIES** Counter-Defendants' motion to dismiss Counter-Defendants' allegedly defamatory statement to NEO's Florida employees (*id*. ¶ 53) (Count XI).

## D.    Breach of Contract

In California, a party asserting a breach of contract claim must plead "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co.,* 14 Cal.App.3d 887, 913 (Ct. App. 1971).

Here, Counter-Plaintiffs bring a cause of action for breach of contract (Count XIII) against Counter-Defendants for violating "express and implied agreements," including

violating terms related to: (1) payment for all work performed, (2) promises ensuring NEO's operational autonomy and intellectual property rights, and (3) commitments to provide adequate operational support to enable the Counter-Plaintiff's to perform their duties effectively."  (ECF No. 43 ¶ 134.)  The only contract provision Counter-Plaintiffs explicitly cite is Section 5.8 of the Non-Producing Division President Employment Agreement.  (*Id*. ¶ 135.)

First, since Counter-Plaintiffs allege that Section 5.8 of the Non-Producing Division President Employment Agreement ("Section 5.8") relates to Horanyi and not Lee, the Court dismisses Lee's breach of contract claims for failure to cite a violation of specific contractual provision.  *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016) (Without "refer[ring] to any contractual language or any contractual provisions that [Defendant] allegedly breached . . . Plaintiffs' conclusory statements ... are insufficient to survive a motion to dismiss."); *see also Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.").

Second, since Counter-Plaintiffs do not allege that Section 5.8 relates to payments or operational support, the Court dismisses Counter-Plaintiffs' claims for breach of contract regarding Counter-Defendants' failure to provide payments or operational support.  *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 979; *see also Young*, 790 F. Supp. 2d at 1117.

Third, Counter-Plaintiffs have not provided adequate detail regarding the scope of NEO's alleged intellectual property rights and "operational autonomy" afforded by Section 5.8.  Accordingly, the Court finds Counter-Plaintiffs have insufficiently pled claims for breach of contract regarding NEO's intellectual property rights and operational autonomy. *See e.g., GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV 15-04125 MMM (JEMX), 2015 WL 12731920, at *16 (C.D. Cal. Sept. 21, 2015) (dismissing breach of contract claims where plaintiff failed to allege "sufficient intelligible facts that the court

or defendants can discern the contract terms relating to the intellectual property or the contractual obligation [defendant] allegedly breached").

Fourth, Counter-Plaintiffs allege that Section 5.8 permitted Horanyi to solicit NEO employees without violating any "restrictive covenants" within Luminate's structure. Yet, Counter-Plaintiffs have failed to describe any actions expressly prohibited by Section 5.8 that Counter-Defendants have taken to restrict Horanyi's solicitation of NEO employees. Without adequately describing Counter-Defendants' violative conduct, the Court finds Horanyi has failed to plead Counter-Defendants' breach of any contractual obligation to permit Horanyi to solicit NEO employees to work at Better. *See e.g., Jackson v. Rhino Ent. Co.*, No. CV1601668BROPJWX, 2016 WL 11002546, at *5 (C.D. Cal. Nov. 10, 2016) (dismissing breach of contract claim where plaintiff failed to provide facts regarding defendant's specific failures to pay royalties).

For the reasons above, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' breach of contract cause of action (Count XIII) (ECF No. 43).

### E. Breach of Implied Covenant of Good Faith and Fair Dealing

In California, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co*., 50 Cal. 2d 654, 659 (1958). The factual elements necessary to establish a breach of the covenant of good faith and fair dealing in California are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. *Rosenfeld v. JPMorgan Chase Bank*, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction 325).

Importantly, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the

24cv2251

specific terms of their agreement." *Rosenfeld*, 732 F. Supp. 2d at 968 (citing *Agosta v. Astor,* 120 Cal.App.4th 596, 607 (2004)).  "Absent [a] contractual right ... the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995).

Here, Counter-Plaintiffs bring a cause of action for breach of implied covenant of good faith and fair dealing against Counter-Defendants for: (1) failing to pay wages and commissions owed to the Counter-Plaintiffs in a timely manner; (2) interfering with NEO's operational autonomy despite promises to protect it; (3) failing to provide services as agreed; (4) deducting more from NEO's Profit and Loss ("P&L") than agreed for the services that were provided; and (5) restricting Horanyi's ability to solicit NEO employees. (ECF No. 43 ¶ 146.)

As discussed in the prior section, *supra* § III.D, Counter-Plaintiffs have failed to allege Counter-Defendants' contractual obligations regarding paying wages and commissions, NEO's operational autonomy, providing services or operational support, granting Horanyi's ability to solicit NEO employees.  Moreover, Counter-Plaintiffs have failed to allege any contractual provision or language specifying the amount that Counter-Defendants allegedly agreed to deduct from NEO's P&L for services rendered—or even that Counter-Defendants only agreed to deduct an established amount of money from NEO's P&L.  In the absence of adequately pled contractual obligations regarding the above, the Court finds that Counter-Plaintiffs have also failed to plead a breach of implied covenant of good faith and fair dealing for the same.  *See Rosenfeld*, 732 F. Supp. 2d at 968 (N.D. Cal. 2010); *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 36 (Oct. 26, 1995).

For the reasons above, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' breach of implied covenant of good faith and fair dealing (Count XIV) (ECF No. 43).

**F.     Unjust Enrichment**

Unjust enrichment is not an independent cause of action under California law; though, can be treated as a quasi-contract claim for restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."); *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action. It is just a restitution claim.").

Here, Counter-Plaintiffs bring an independent cause of action for unjust enrichment—which is procedurally incorrect. *See e.g., Patrick v. Volkswagen Grp. of Am., Inc.*, No. SACV191908JVSADSX, 2020 WL 3883275, at *7 (C.D. Cal. Mar. 5, 2020) (citing *Melchior v. New Line Prods., Inc.* 106 Cal. App. 4th 779, 793 (2003)) ("There is no cause of action for unjust enrichment in California."). Though, as part of Counter-Plaintiffs' cause of action for unjust enrichment (Count XV), Counter-Plaintiffs seek restitution for "unpaid wages, commissions, and other compensation and benefits" (ECF No. 43 ¶ 158); and "court[s] may construe [a] cause of action [for unjust enrichment] as a quasi-contract claim seeking restitution." *Melchior*, 106 Cal. App. 4th at 793.

Even if the Court were to reconstrue Counter-Plaintiffs' unjust enrichment cause of action as a quasi-contract restitution claim, restitution is not available where Counter-Plaintiffs also seek monetary damages for the same conduct and do not explain how monetary damages alone are insufficient to compensate Counter-Plaintiffs. *See Rodriguez v. Just Brands USA, Inc.,* No. CV 20-4829-ODW (PLAx), 2021 WL 1985031, at *8 (C.D. Cal. May 18, 2021) ("Plaintiff fails to plausibly allege it lacks an adequate remedy at law for restitution beyond the damages it already seeks through its other claims."); *cf Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1082-83 (N.D. Cal. 2022) (finding claims for damages were based on precisely the same conduct as equitable claims for restitution and dismissing based on availability of equitable remedies). Here, Counter-Plaintiffs request compensatory damages for "economic losses, such as back pay, front pay, commissions, and benefits" without addressing how restitution is an additionally necessary

remedy for the same alleged loss of wages and compensation (*see* ECF No. 43 at 36). In sum, even as a quasi-contract claim for restitution, Counter-Plaintiffs have inadequately pled the necessary facts to support an unjust enrichment cause of action.

For the reasons above, the Court thus **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' cause of action for unjust enrichment (Count XV) (ECF No. 43).[2]

### G.    Fraudulent Misrepresentation

Counter-Plaintiffs assert a cause of action for fraudulent misrepresentation (Count XVI) based on Counter-Defendants' alleged "false and misleading statements . . . to induce [Counter-Plaintiffs] to join and remain employed by Luminate," including "promises that NEO would retain operational autonomy, that its proprietary systems and intellectual property would remain protected, and that the Counter-Plaintiffs would have job security and stable leadership roles within the organization" (ECF No. 43 ¶ 160). Counter-Plaintiffs also state that "Reuter and Luminate further assured the Counter-Plaintiffs that Luminate would provide the resources and support necessary to ensure NEO's success and growth." (*Id.*)

Counter-Defendants argue that Counter-Plaintiffs' fraudulent misrepresentation cause of action should be dismissed because their claims fail to meet the heightened pleading standard for fraud claims established by Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Lincoln Imports*

---

[2] Counter-Defendants assert that Counter-Plaintiffs' cause of action for unjust enrichment also fails here because in California, parties cannot assert unjust enrichment claims when they've asserted breach of contract claims covering the same subject matter. (ECF No. 57-1 at 25 (citing *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996)). Though this may be true, the Court does not reach this issue here because the Court has found that Counter-Plaintiffs have inadequately pled their breach of contract claim. Further, even if Counter-Plaintiffs did adequately plead the existence of a valid and enforceable contract, the Court would still find that Counter-Plaintiffs had inadequately pled their cause of action for unjust enrichment on that basis. *See Lance Camper Mfg. Corp.*, 44 Cal. App. 4th at 203.

*Ltd., Inc. v. Weaver Flower Co.*, No. SACV 11-1098-JST ANX, 2012 WL 1048531, at *2 (C.D. Cal. Mar. 27, 2012) (citing *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.* at 1106 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).  In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written. authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written.  *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 434 (2010) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996)).  A corporation is responsible for a corporate officer's fraud committed "within the scope of his employment" or "for a misleading statement made by an employee or other agent who has actual or apparent authority."  *In Re ChinaCast Educ. Corp Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015).  While the Rule 9(b) requirement is a federally imposed rule, "a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action."  *Id.* at 1103.

Regarding "who" made the alleged fraudulent misrepresentations, Counter-Plaintiffs allege that Luminate and Reuter allegedly made fraudulent statements directly to Counter-Plaintiffs.  Counter-Plaintiffs identify Reuter as the agent of Luminate in making the alleged misrepresentation.  Counter-Plaintiff further allege that Reuter is the CEO of Luminate (ECF No. 43 ¶ 18), meaning he has "authority to speak for the corporation." *Perlas*, 187 Cal. 4th at 434.   The Court thus, assumes that Counter-Plaintiff is asserting fraudulent misrepresentation claims against both Luminate and Reuter based on Reuter's misrepresentations.  *Cf PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (2000) (corporate officers acting in their official capacity committing intentional torts can be personally liable for those torts).

Regarding "what" was said, Counter-Plaintiffs allege *inter alia*, that Counter-Defendants misrepresented that NEO would have "the same degree of freedom and

independence that it had at Celebrity," "continue to own its own assets," "would remain a functionally independent partner of Luminate, and that NEO could eventually purchase the 'shell' of Luminate's . . . loan division," and "NEO executives, including Horanyi, would be free to solicit other NEO employees to leave."   (ECF No. 43 ¶¶ 20–22, 24.)

Regarding "when," Reuter and Luminate allegedly stated the above in 2022, the year that Luminate was in the process of acquiring NEO, including NEO's employees.   (*Id*. ¶ 18).

Though Counter-Plaintiffs do not allege "where" the statements were made and "how" they were made, the Court finds the above facts to be sufficiently specific for Counter-Defendants to identify the relevant violative statements and challenge the claim. As such, Counter-Plaintiffs meet the heightened pleading standard of Rule 9(b).

Next, the Court evaluates whether Counter-Plaintiffs have adequately pleaded a claim for fraudulent misrepresentation.  In California, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v. Fritz Companies, Inc.,* 30 Cal.4th 167, 173 (2003); *Lazar,* 12 Cal.4th at 638.  The statute of limitations in California for fraud is three years. Cal. Civ. Proc. Code § 338; *Solomon v. North American Life and Cas. Ins. Co.,* 151 F.3d 1132, 1137–38 (9th Cir. 1998); *General Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir. 1991).

Again, Counter-Plaintiffs assert, *inter alia*, that Counter-Defendants misrepresented that NEO would have "the same degree of freedom and independence that it had at Celebrity," "continue to own its own assets," "would remain a functionally independent partner of Luminate, and that NEO could eventually purchase the 'shell' of Luminate's . . . loan division," and "NEO executives, including Horanyi, would be free to solicit other NEO employees to leave."   (ECF No. 43 ¶¶ 20–22, 24.)

Counter-Plaintiffs have failed to make sufficient allegations supporting their claim that the preceding statements are false.  First, Counter-Plaintiffs do not provide detail

regarding how Luminate has deprived NEO of the "same degree of freedom and independence" it had at Celebrity, how NEO does not qualify as a "functionally independent partner of Luminate." (*See id.*)  Also, Counter-Plaintiffs allege that they still own their own assets, meaning Counter-Defendants' representation that NEO would "continue to own its own assets" is not false.  (*See* ECF No. 43 ¶¶ 16, 26 ("NEO owns (and has always owned) its own brand and intellectual property.")).  Next, Counter-Plaintiffs alleges that they *could* have purchased a "shell" of Luminate's loan division, but that the terms of the relevant purchasing agreement were ultimately unfavorable.  (*Id.* ¶ 35.)  Since Counter-Plaintiffs fail to allege a misrepresentation, they also failed to allege a cause of action for fraudulent misrepresentation.[3]

For the reasons above, the Court thus **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' cause of action for fraudulent misrepresentation (Count XVI) (ECF No. 43).

### H.  Unfair Business Practices (Bus. & Prof. Code § 17200)

Counter-Plaintiffs bring a cause of action for violation of Cal. Bus. & Prof. Code § 17200 ("UCL") (Count XVII) (ECF No. 43).  California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  The UCL's coverage is "sweeping," and its standard for wrongful business conduct "intentionally broad."  *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir.2006) (citing *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 83

---

[3] Additionally, Counter-Defendants argue that Counter-Plaintiffs' fraudulent misrepresentation claims should be dismissed in their entirety, since the claim "rests on alleged oral promises made in the context of an at-will employment relationship" which "cannot form the basis for a fraud claim under well-settled California law."  (ECF No. 57-1 at 25:25-28.)  As discussed, Counter-Plaintiffs do not allege how the statements were made (*e.g.*, oral or written).  Even if Counter-Plaintiffs had alleged that the statements were made orally, it is only well-settled that oral promises of continuing employment cannot form the basis for a fraud claim under California law.  *See e.g.*, *Nisbet v. Am. Nat'l Red Cros*s, 795 F. App'x 505, 508 (9th Cir. 2019) (citing *Slivinsky v. Watkins-Johnson Co*., 221 Cal.App.3d 799, 270 Cal. Rptr. 585, 589 (1990)).  Accordingly, the Court would only dismiss Counter-Plaintiffs' claims that Counter-Defendants fraudulently misrepresented that "Counter-Plaintiffs would have job security and stable leadership roles within the organization" (ECF No. 43 ¶ 160) on that basis.

Cal.Rptr.2d 548, 973 P.2d 527 (1999)).   The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable." *Cel–Tech Commc'ns, Inc.,* 20 Cal.4th at 180.

First, Counter-Plaintiffs allege a UCL claim based on the same conduct underlying Counter-Plaintiff's Cal. Bus. & Prof. Code § 16600 cause of action (Count IX)—that Counter-Defendants "sought to impose non-compete restrictions . . . unenforceable under [Cal. Bus. & Prof. Code § 16600 *et seq*.], which voids any agreement that restrains an individual's ability to engage in lawful profession." (ECF No. 43 ¶ 166.)  Since Horanyi adequately alleged a Cal. Bus. & Prof. Code § 16600 claim, *supra* § III.A.11, Horanyi has also adequately alleged a separate UCL claim on the basis that Counter-Defendants engaged in "unlawful" business practices.   However, the Court finds the opposite for Lee, who has not adequately alleged a Cal. Bus. & Prof. Code § 16600 claim, *supra* § III.A.11.

Second, Counter-Plaintiffs allege a UCL claim based on the same conduct underlying Counter-Plaintiff's defamation cause of action – that Counter-Defendants "disseminated false and defamatory statements about the Counter-Plaintiffs to deter prospective employers and business partners." (ECF No. 43 ¶ 166.)  For the same reasons some of Counter-Plaintiffs' defamation claims (Count XI) fail, *supra* § III.C, Counter-Plaintiffs also fail to allege that Counter-Defendants engaged in "unlawful," "unfair," or "fraudulent" conduct prohibited by the UCL regarding Counter-Defendants' alleged statement that Horanyi is "cancer" (ECF No. 43 ¶ 51), and Counter-Defendants' alleged statement that Counter-Plaintiffs acted "unlawfully and unethically" (*id*. ¶ 50) (Count XI). However, Counter-Plaintiffs have adequately alleged a claim for defamation regarding Counter-Plaintiff's statement to NEO's Florida employees (*id*. ¶ 53) (Count XI).  As such, Counter-Plaintiffs have also adequately alleged a UCL claim based on that statement.

Third, Counter-Plaintiffs allege a UCL claim based on Counter-Plaintiff's tortious interference with prospective economic advantage cause of action—that Counter-Defendants "threatened legal action against the Counter-Plaintiffs and their prospective employers." (ECF No. 43 ¶ 166.)  For the same reasons Counter-Plaintiffs' tortious

24cv2251

interference cause of action (Count XII) fails, *supra* § III.C.1.ii, Counter-Plaintiffs also fail to prove that Counter-Defendants engaged in "unlawful," "unfair," or "fraudulent" conduct prohibited by the UCL.

Fourth, Counter-Plaintiffs allege a UCL claim based on Counter-Plaintiff's breach of contract cause of action – that Counter-Defendants "misappropriated NEO's intellectual property and attempted to leverage its operational and proprietary resources for Counter-Defendants' benefit in violation of contractual and legal obligations." (ECF No. 43 ¶ 166.) "[A] breach of contract may in fact form the predicate for Section 17200 claims, provided it also constitutes conduct that is "unlawful, or unfair, or fraudulent." *Watson Labs., Inc. v. Rhone–Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1117 n. 12 (C.D. Cal. 2001). However, in this case, (1) Plaintiff has failed to properly state a cause of action for breach of contract, and (2) Plaintiff has failed to properly state a cause of action for fraud, or otherwise unfair business conduct.

In sum, the Court **DENIES** Counter-Defendants' motion to dismiss (ECF No. 57) Horanyi's UCL claim against Counter-Defendants based on an alleged violation of Cal. Bus. Code. § 16600 (Count XVII) (ECF No. 43).  However, the Court **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' remaining UCL claims (Count XVII) (ECF No. 43).  For the latter claims, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57).

## I.    Conversion

Counter-Plaintiffs assert a cause of action for conversion (Count XVIII) (ECF No. 43 ¶¶ 169–173).  In California, three elements comprise a cause of action for conversion. First, the plaintiff owned, possessed, or had the right to possess an item of personal property.  Second, the defendant intentionally took wrongful possession of, disposed of, and/or prevented the plaintiff from having access to the property for a significant period of time.  Third, the plaintiff was harmed by the defendant's actions. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996)).

24cv2251

Here, Counter-Plaintiffs allege that Luminate had wrongfully failed to reimburse them for money Counter-Plaintiffs spent in the course of their work at Luminate—which was accounted for through "cost centers" at Luminate.  (ECF No. 43 ¶¶ 170–173.)  Counter-Plaintiffs' conversion claim principally fails because Counter-Plaintiffs do not adequately allege ownership rights over the funds allegedly withheld by Luminate.  Though Counter-Plaintiffs assert that Luminate had created a process to account for costs incurred by Counter-Plaintiffs pursuant to an agreement, "[the] contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion."  *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) (citing *Imperial Valley Co. v. Globe Grain & Milling Co.,* 187 Cal. 352, 202 P. 129 (1921)).  Though Luminate had allegedly agreed to pay the funds at issue after terminating Counter-Plaintiffs, "the simple failure to pay money owed does not constitute conversion."  *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019) (citing *Kim v. Westmoore Partners, Inc.* 201 Cal.App.4th 267, 284  (2011)).

In addition, Counter-Plaintiffs fail to oppose Counter-Defendants' motion to dismiss their conversion cause of action (Count XVIII), which alone is grounds for dismissal without prejudice.  *See Kwan*, 2013 WL 3831275, at *8.

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' conversion claim (Count XVIII) (ECF No. 43).  Regarding Counter-Plaintiffs' conversion claim, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57).

### J.    Accounting

Counter-Plaintiffs assert a cause of action for accounting (Count XIX) (ECF No. 43 ¶¶ 174–179).  In California, "[a]n accounting may be brought to compel a defendant to account to a plaintiff for money where (1) a fiduciary duty exists; or (2) where no fiduciary exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012).

24cv2251

The right to an accounting is derivative of other claims as an equitable remedy. *Arostegui v. Bank of Am.,* No. C 13-6009 PJH, 2014 WL 1230762, at *7 (N.D. Cal. Mar. 21, 2014) (citing *Janis v. California State Lottery Com.,* 68 Cal.App. 4th 824, 833–34 (1998)). Here, Counter-Plaintiffs appear to assert a cause of action for accounting as derivative of Counter-Plaintiffs' cause of action for conversion (Count XVIII). The Court's dismissal of Counter-Plaintiffs' cause of action for conversion also provides grounds to dismiss Counter-Plaintiffs' cause of action for accounting (Count XIX). *See e.g., Attilius LLC v. Larsen-Haslem Dental, LLC*, No. 22-CV-0899-L-KSC, 2022 WL 16824495, at *6 (S.D. Cal. Nov. 7, 2022) (granting dismissal of plaintiff's accounting claim, as it rises and falls with the conversion claim).

Even if Counter-Plaintiffs' counterclaim for accounting could proceed, Counter-Plaintiffs fail to assert that Luminate owes Counter-Plaintiffs a fiduciary duty. Counter-Plaintiffs allege that the relationship between Luminate and Counter-Plaintiffs is one of former employer-employee; and relatedly, one in which Luminate had tracked expenses Counter-Plaintiffs had spent in the course of their employment. In California, the employer-employee relationship does not give rise to a fiduciary duty absent a special circumstance, such as when "unusual circumstances give rise to an unusual level of trust or vulnerability." *Turner-Gray v. Avis Budget Grp. Inc.*, No. 23-CV-05507-SI, 2024 WL 4504529, at *5 (N.D. Cal. Oct. 15, 2024) (citing *Amid v. Hawthorne Cmty. Med. Grp., Inc.*, 212 Cal. App. 3d 1383, 1391 (1989)); *Kabushiki Kaisha Megahouse v. Anjar Co. LLC*, No. 2:14-CV-00598-CAS, 2014 WL 5456523, at *10 (C.D. Cal. Oct. 20, 2014) (applying California law). Further, simply tracking expenses does not give rise to a special relationship that can establish a fiduciary duty between an employer and employee. *Cf IT Corp. v. Gen. Am. Life Ins. Co.,* 107 F.3d 1415, 1419 (9th Cir. 1997) ("bookkeeping service" is not a fiduciary, since "ministerial duties" do not transform non-fiduciaries into fiduciaries).

In the alternative, Counter-Plaintiffs fail to assert that "accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Wise*, 850 F. Supp.

2d at 1055. Here, Counter-Plaintiffs allege that Luminate has not paid outstanding balances calculated by their accounting methodology, and that "Luminate has never properly identified or otherwise accounted for all monies held by Luminate in the NEO Cost Center Funds or Personal Cost Center." (ECF No. 43 ¶¶ 169–176.) However, "[s]imply stating that the amount owed to Plaintiff is unknown is insufficient to show that the accounts are so complicated that an ordinary claim for breach of contract would be inadequate to afford proper relief." *Attilius LLC v. Larsen-Haslem Dental, LLC*, No. 22-CV-0899-L-KSC, 2022 WL 16824495, at *6 (S.D. Cal. Nov. 7, 2022).

In addition, Counter-Plaintiffs fail to oppose Counter-Defendants' motion to dismiss their accounting cause of action (Count XIX), which alone is grounds for dismissal without prejudice. *See Kwan*, 2013 WL 3831275, at *8.

Thus, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' conversion claim (Count XIX) (ECF No. 43).

### K.    Declaratory Relief

Counter-Plaintiffs seek declaratory relief (Count XX) to establish the following: (1) the agreements Counter-Defendants required Counter-Plaintiffs to sign agreements violating California law, both in seeking to impose foreign choice of law and by prohibiting solicitation and competition (ECF No. 43 ¶ 181); (2) Parties' rights and obligations concerning accounts and/or funds accounted by Luminate's NEO Cost Center or Personal Cost Center (*id*. ¶¶ 183, 187).

These claims for declaratory relief relate to Counter-Plaintiffs' substantive claims regarding: (1) Cal. Lab. Code § 925 and Cal. Bus. & Prof. Code § 16600 (Count IX) (ECF No. 43 ¶¶ 105–112) and (2) conversion (Count XVIII) (*id*. ¶¶ 169–173). Since Counter-Plaintiffs have failed to plead their cause of action for conversion (Count XVIII), the Court also **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' counterclaim for declaratory relief regarding Parties' rights and obligations concerning accounts and/or funds accounted by Luminate's NEO Cost Center or Personal Cost Center (*id.* ¶¶ 183, 187).

Relatedly, since the Court dismissed Lee's Cal. Bus. & Prof. Code §§ 16600, 16600.5 counterclaim (Count IX), the Court also **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' request to impose declaratory relief that Counter-Defendants required Lee to sign an agreement violating California law, both in seeking to impose foreign choice of law and by prohibiting solicitation and competition. (ECF No. 43 ¶ 181).

However, since the Court denied dismissal of Horanyi's Cal. Bus. & Prof. Code §§ 16600, 16600.5 claim (Count IX), the Court further evaluates whether to grant declaratory relief that Counter-Defendants required Horanyi to sign an agreement with a noncompete clause (*see* ECF No. 43 ¶ 28) in violation of California law. Declaratory relief is appropriate where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Boeing Co v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). Here, there is an actual controversy as to the legal validity of a contract between Counter-Defendants and Horanyi. Accordingly, for the same reasons the Court denied dismissal of Horanyi's Cal. Bus. & Prof. Code §§ 16600, 16600.5 claim (Count IX), the Court **DENIES** Counter-Defendants' motion to dismiss.

### L.    California Invasion of Privacy Act (California Penal Code § 632)

Counter-Plaintiffs bring a cause of action for violation of the California Invasion of Privacy Act, California Penal Code § 632(a) ("CIPA § 632(a)") (Count XXI) for Counter-Defendants' alleged recordings of their telephone calls and Zoom calls (ECF No. 43 ¶¶ 188–198). CIPA § 632(a) prohibits the making of a recording without the consent of all parties. *Safari Club Int'l v. Rudolph*, No. SACV131989JVSANX, 2014 WL 12577408, at *5 (C.D. Cal. May 14, 2014). The three elements of a CIPA § 632(a) claim include: "(1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent." *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (citing *Flanagan v. Flanagan*, 27 Cal.4th 766, 774–76 (2002)). A communication is confidential under CIPA § 632(a) if one of the parties "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *In re*

*Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022) (citing *Flanagan*, 27 Cal. 4th at 777).

In California, courts have developed a presumption that Internet communications do not reasonably give rise to the reasonable expectation of privacy. *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (citing and collecting authorities); *see also Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726 at *7 (N.D. Cal. May 21, 2021) (explaining that plaintiffs "must plead unique, definite circumstances" to rebut California's presumption against online confidentiality). Since Zoom calls take place over the internet, the Court finds they are not "confidential communications" that can provide the basis for a CIPA § 632(a) claim.

Next, the Court evaluates whether Counter-Plaintiffs' telephone calls can constitute "confidential" communications for which Counter-Plaintiffs had a reasonable expectation of privacy. Factors affecting whether Counter-Plaintiffs had a reasonable expectation of privacy include: whether Counter-Plaintiffs had "some reason to suspect" that their employer was recording their phone conversations and whether Counter-Plaintiffs had received written disclosure that their phone conversations would be recorded. *See Troyer v. The Yerba Mate Co., LLC,* No. 20-06065-WHA, 2021 WL 2662109, at *10 (N.D. Cal. June 29, 2021) (employee did not have reasonable expectation of privacy under CIPA § 632 where employee had some reason to suspect that the cameras in employer warehouse also recorded audio); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 886 (2023) (plaintiff did not have reasonable expectation of privacy where cardmember agreement contained disclosures of recording calls).

Here, Counter-Plaintiffs cite Counter-Defendants' expert declaration by Luminate's Executive Vice President for IT and Security, Mike Pelham (*see* ECF Nos. 23-2 ¶ 3; 43 ¶¶ 58–60). In the declaration, Pelham makes clear that all Luminate employees were notified by an employee handbook that their work devices were monitored by Luminate and communications may be recorded (*id*. ¶ 5). Since Counter-Plaintiffs' allegations are allegedly based solely on Pelham's declaration, the Court assumes for purposes of this

order that Counter-Plaintiffs had used their work devices to place the telephone calls at issue in their claims, and that Counter-Plaintiffs had written notice that their calls may be recorded by Counter-Defendants.    Accordingly, Counter-Plaintiffs' fail to plead a reasonable expectation of privacy regarding their phone calls.  *See Rojas*, 93 Cal. App. 5th at 886.

Thus, the Court **GRANTS** Counter-Defendants' motion (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' CIPA § 632(a) claim (Count XX) (ECF No. 43).

### M.    Punitive Damages

Counter-Plaintiffs seek punitive damages (Count XXII) based on the following alleged conduct by Counter-Defendants (ECF No. 43 ¶ 201):

1. Disseminating false and defamatory statements about the Counter-Plaintiffs, accusing them of unethical conduct and trade secret misappropriation without factual basis;

2. Interfering with the Counter-Plaintiffs' lawful employment opportunities by threatening legal action against prospective employers and spreading false information to harm their reputations;

3. Improperly accessing and wiping the Counter-Plaintiffs' computers without authorization, destroying personal and professional data;

4. Failing to pay earned wages and benefits owed to the Counter-Plaintiffs while making baseless accusations to justify their wrongful termination; and

5. Illegal recording and eavesdropping of Counter-Plaintiffs' private telephone and virtual conversations.

Respectively, the above conduct also underlies Counter-Plaintiffs' substantive claims for: defamation (Count XI), tortious interference with economic prospects (Count XII), California Labor Code wage claims (Counts III, IV, VII), and CIPA § 632(a) (Count XXI).

24cv2251

Since Counter-Plaintiffs failed to allege the aforementioned substantive claims, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) and **DISMISSES WITHOUT PREJUDICE** Counter-Plaintiffs' claim for punitive damages. *See e.g., Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1050 n.5 (C.D. Cal. 2019) ("As the Court finds that the claims on which [plaintiff] seeks punitive damages have not been sufficiently pleaded, [plaintiff]'s request for punitive damages is also DISMISSED with leave to amend").

## IV.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) the following causes of action, which are **DISMISSED WITHOUT PREJUDICE** and **GRANTED** leave to amend:

1. Count I: Failure to Provide Required Meal Periods (Horanyi) (Cal. Labor Code §§ 226.7, 512)

2. Count II: Failure to Provide Required Rest Periods (Horanyi) (Cal. Lab. Code §§ 226.7, 512)

3. Count III: Failure to Pay Overtime Wages (Horanyi) (Cal. Lab. Code §§ 510, 1194, 1198)

4. Count IV: Failure to Pay Minimum Wages (Horanyi) (Cal. Lab. Code §§ 1194, 1197)

5. Count V: Liquidated Damages (Horanyi) (Cal. Lab. Code § 1194.2)

6. Count VI: Failure to Provide Accurate Wage Statements (Cal. Lab. Code § 226)

7. Count VII: Failure to Pay Final Wages/Waiting-Time Penalties for Nonpayment of Wages under the California Labor Code

8. Count VIII: Failure to Reimburse Expenses & Losses (Cal. Lab. Code §2802)

9. Count X: Wrongful Termination in Violation of Public Policy (Gov't Code §12940 *et. seq.*)

10. Count XII: Tortious Interference with Prospective Economic Advantage

24cv2251

11. Count XIII: Breach of Contract

12. Count XIV: Breach of Implied Covenant of Good Faith and Fair Dealing

13. Count XV: Unjust Enrichment

14. Count XVI: Fraudulent Misrepresentation

15. Count XVIII: Conversion

16. Count XIX: Accounting

17. Count XXI: Violation of California Invasion of Privacy Act (California Penal Code § 632)

18. Count XXII: Punitive Damages

The Court also **GRANTS** Counter-Defendants' motion to dismiss (ECF No. 57) regarding the following claims, which are **DISMISSED WITHOUT PREJUDICE** and **GRANTED** leave to amend:

1. Count IX: Lee's tortious interference claim

2. Count XX: Lee's declaratory relief claim

3. Count XI: Counter-Plaintiffs' defamation claim, to the extent it is based on any of the following alleged statements by Counter-Defendants:

   a. Counter-Plaintiffs shared unlawfully shared proprietary information with Better

   b. Horanyi had violated non-solicitation obligations in an agreement with Counter-Defendants

   c. Horanyi is cancer to Luminate as an organization

   d. Counter-Plaintiffs acted unlawfully and unethically

4. Count XVII: Counter-Plaintiffs' UCL claims, to the extent they are based on Counter-Defendants' allegedly defamatory statements that:

   a. Counter-Plaintiffs shared unlawfully shared proprietary information with Better

   b. Horanyi had violated non-solicitation obligations in an agreement with Counter-Defendants

24cv2251

c. Horanyi is cancer to Luminate as an organization

d. Counter-Plaintiffs acted unlawfully and unethically

However, the Court **DENIES** Counter-Defendants' motion to dismiss (ECF No. 57) regarding the following claims:

1. Count IX: Horanyi's Cal. Bus. & Prof. Code § 16600.5 claim to void Section 5.8

2. Count XI: Counter-Plaintiffs claim for defamation, to the extent it is based on Counter-Defendants' allegedly defamatory statements to NEO's Florida employees

3. Count XVII:

   a. Counter-Plaintiffs' UCL claim, to the extent it is based on Counter-Defendants' allegedly defamatory statements to NEO's Florida employees

   b. Horanyi's UCL claim against Counter-Defendants, to the extent it is based on an alleged violation of Cal. Bus. Code. § 16600

4. Count XX: Horanyi's request for declaratory relief that Counter-Defendants required Horanyi to sign an agreement containing Section 5.8 in violation of California law

Counter-Plaintiffs may file an amended complaint on or before **February 4, 2026**. Any amended complaint must follow the formatting requirements set forth in Civil Local Rule 15.1.c.

**IT IS SO ORDERED.**

DATED: January 14, 2026

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**