# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BETTER MORTGAGE CO., *et. al*, <br><br> Defendants. | Case No. 24-cv-02251-BAS-MSB <br><br> **ORDER GRANTING IN PART, DENYING IN PART COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AND STRIKE COUNTERCLAIMS OF BETTER MORTGAGE CO. (ECF No. 84)** |
| DANIEL HORANYI and JEANETTE LEE., <br><br> Counterclaimants, <br><br> v. <br><br> LUMINATE HOME LOANS, INC., <br><br> Counterclaim Defendant. | |

Pending before the Court is a motion to dismiss (ECF No. 84) submitted by Luminate Home Loans, Inc. ("Luminate"), Taryn Reuter ("Reuter"), Courtney Nuness ("Nuness"), and Mike Pelham ("Pelham") (collectively, "Counter-Defendants") to strike counterclaims submitted by Counter-Plaintiff Better Mortgage Co. ("Better") (ECF No. 81).

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. (ECF No. 84.)

## I.   BACKGROUND

Luminate is a mortgage loan lender. In 2022, Luminate acquired a mortgage division known as NEO Home Loans ("NEO") from a competitor, Celebrity Home Loans LLC ("Celebrity"). (ECF No. 81 ¶¶ 2, 4.) In October 2024, Luminate announced that, for business reasons, it would be shuttering the approximately 300-person NEO division by February 2025. (*Id.* ¶ 3.) In anticipation of the shut-down, Luminate terminated several senior employees in its NEO division and allegedly structured a deal with Better to finalize the term of a deal under which all of NEO would move to Better. (*Id.* ¶ 3.)

As part of the deal, Luminate allegedly worked with NEO employees who remained affiliated with Luminate to pull together lists of NEO personnel who would transition to Better and other assets developed in the NEO division to facilitate the transition to Better. (*Id.* ¶ 4.) Materials also included certain branch leases and technology details for the individual branches transitioning to Better. (*Id.* ¶ 4.) In or around November 2024, Luminate allegedly reversed course and began to interfere with, and seek to halt, NEO's transition to Better—recording NEO employees, discouraging former NEO employees to join Better, and converting NEO property. (*Id.* ¶ 5.)

Better claims NEO is a separate company from either Luminate or Better; and that NEO has never sold its intellectual property rights to any other company. (*Id.* ¶¶ 20-23.) NEO's trademark is allegedly licensed to Better, despite Luminate's continued use. (*Id.* ¶ 6.)

On December 2, 2024, Luminate initiated this action against multiple defendants, including Better. (ECF No. 1.) Better filed the operative amended counterclaims against Counter-Defendants for the following causes of action (ECF No. 81):

1. Count I: Intentional Interference with Contractual Relations (*id.* ¶¶ 112–117);
2. Count II: Intentional Interference with Economic Relations (*id.* ¶¶ 118–125);
3. Count III: Negligent Interference with Prospective Economic Relations (*id.* ¶¶ 126–133);
4. Count IV: Violation of California Penal Code § 502 (*id.* ¶¶ 134–144);
5. Count V: Invasion of Privacy, California Penal Code § 632 (*id.* ¶¶ 145–152);

    6. Count VI: Civil Conspiracy (*id*. ¶¶ 153–157);

    7. Count VII: Violation of the Lanham Act (15 U.S.C. § 1125(a)) (*id*. ¶¶ 158–165);

    8. Count VIII: Trademark Infringement (*id*. ¶¶ 166–172); and

    9. Count IX: Unfair Competition (*id*. ¶¶ 173–180).

Counter-Defendants moved to dismiss Better's amended counterclaims for Counts I, II, III, IV, V, VI, and IX. (ECF No. 84.) Better filed an opposition to Counter-Defendants' motion to dismiss. (ECF No. 93.) Counter-Defendants then filed a response in support of their motion to dismiss. (ECF No. 102).

The Court finds Counter-Defendants' motion to dismiss (ECF No. 84) appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III.   ANALYSIS

### A.   California Anti-SLAPP Statute (Cal. Civ. Proc. Code § 425.16)

The California Legislature enacted the anti-SLAPP statute, California Code of Civil Procedure Section 425.16, in 1992 to curtail the "disturbing increase in lawsuits brought

primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a); *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1178–79 (C.D. Cal. 2006). The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Wilcox v. Superior Ct.*, 27 Cal.App.4th 809, 816 (1994).

California's anti-SLAPP statute permits a defendant to file a "special motion to strike" to dismiss an action before trial. Cal. Civ. Proc. Code § 425.16.[1] Motions brought under the anti-SLAPP statute are evaluated in two steps. *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 928–29 (C.D. Cal. 2025). First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)). Second, "[t]he burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.* "The plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'" *Metabolife*, 264 F.3d at 840 (quoting *Wilcox*, 27 Cal.App.4th at 823).

In applying the first step of the anti-SLAPP analysis, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002).

"[The anti-SLAPP movant's] first task is to make a prima facie showing that each cause of action against him "aris[es] from" activity he took "in furtherance" of his right to

---

[1] District courts within California have permitted defendants to move to strike under Cal. Civ. Proc. Code § 425.16 and Rule 12(b)(6) in the same motion—as Counter-Defendants do here. *See e.g., Youngevity Int'l Corp. v. Smith*, No. 16-CV-0704 W (JLB), 2016 WL 7626582, at *1 (S.D. Cal. June 29, 2016).

petition or free speech." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1120 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 425.16(b)(1)). Under California Code of Civil Procedure § 425.16(e), an act qualifies as protected activity if, *inter alia*, it constitutes "any written or oral statement or writing made before a . . . judicial proceeding," "under consideration or review by a . . . judicial body," or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *See* Cal. Civ. Proc. Code § 425.16(e)(1)-(2), (4).

Here, Counter-Defendants move to dismiss Count IV (Violation of California Penal Code § 502 (ECF No. 81 ¶¶ 134–144)) and Count V (Invasion of Privacy, California Penal Code § 632 (*id*. ECF No. 81 ¶¶ 145–152)) of Better's amended counterclaims as barred by anti-SLAPP protections. In both Counts IV and V, Better bases its claims on Counter-Defendants' use of software to make unauthorized recordings of Better's conversations with NEO employees. (*See id*. ¶¶ 134–152.)

Counter-Defendants advance two separate theories that Counts IV and V "arise from" protected activity: (1) Counts IV and V are based on Counter-Defendants' declaration filed in court, § 425.16(e)(1)-(2); and (2) Counts IV and V are based on Counter-Defendants' recording which was part of Counter-Defendants' "pre-litigation investigation," § 425.16(e)(4). (*See* ECF No. 84 at 10:10–12:1.)

First, the act of recording is distinct from Counter-Defendants' use of that recording to create its court-filed declaration. Under Cal. Civ. Proc. Code § 425.16(e)(1)-(2), statements made in litigation, or in connection with litigation, are protected by the anti-SLAPP statute. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 541 F. Supp. 3d 1020, 1025 (C.D. Cal. 2021) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)); *see also Biden v. Ziegler*, 737 F. Supp. 3d 958, 977 (C.D. Cal. 2024). However, Better does not challenge Counter-Defendants' filing of the Pelham Declaration in court. Better instead challenges Counter-Defendants' use of software to record Better's conversations itself—which happens to be documented in the

Pelham Declaration (ECF No. 81 ¶¶ 134–152). *See Park v. Bd. of Trs. of California State Univ.*, 2 Cal. 5th 1057, 1060 (2017) ("[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"). Thus, the Court finds Counts IV and V do not arise from protected activity as defined by Cal. Civ. Proc. Code § 425.16(e)(1)-(2).

Second, accepting that Counter-Defendants' allegedly unauthorized recording (rather than use of that recording in the Pelham Declaration) could be the challenged conduct, Counter-Defendants assert that Counts IV and V should qualify as protected activity under § 425.16(e)(4) as "conduct in furtherance of the exercise of the constitutional right of petition" because the recording was part of Counter-Defendants' "pre-litigation investigation." (ECF No. 84 at 10:10–12:1.) The "right to petition" includes the "filing of a lawsuit, as well as conduct 'incidental to the prosecution of the suit'." *See Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018) (citing several Ninth Circuit cases). "[P]relitigation investigation to support a potential claim is sufficiently related to the right to petition as to fall within the protected 'breathing space' of that right." *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1071 (2009). Importantly, "whether [prelitigation investigation] does in a particular case [fall within protected activity] further depends on whether the potential claim being investigated was legitimate or a sham." *Id*; *see also Gamble*, 348 F. Supp. 3d at 1027. Counter-Defendants do not specify what potential claims they sought to investigate with their allegedly unlawful recording. (ECF No. 84 at 10:10–12:1.) Thus, the Court cannot determine whether the potential claims being investigated were legitimate, and whether Counter-Defendants' investigation should be protected by the right to petition. As such, the Court finds Counter-Defendants have not met their burden to demonstrate that Counts IV and V arise from protected activity as defined by § 425.16(e)(4).

Accordingly, the Court **DENIES** Counter-Defendants' motion to dismiss (ECF No. 84) Better's amended counterclaims in Counts IV and V (ECF No. 81 ¶¶ 134–152) on the basis they are barred by anti-SLAPP protections.

### B. Tortious Interference

#### 1. Intentional Interference with Contractual Relations (Count I)

To state a claim for tortious interference of contractual relations, Plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1141 (2020).

Here, Better claims Counter-Defendants intentionally interfered with Better's contract with NEO. (ECF No. 81 ¶¶ 112–117.) Better alleges the existence of a valid contract with NEO (*id.* ¶ 113), and claims Luminate knew of the existence of the contract with NEO (*id.* ¶ 114). However, Better has failed to allege any actual breach or disruption of its contract with NEO resulting from Luminate's termination of its own partnership with NEO—and only alleges that Luminate made it "substantially more difficult" to perform the contract (*id.* ¶ 116). *See Ellison v. Ventura Port Dist.*, 80 Cal. App. 3d 574, 582 (Ct. App. 1978) ("A mere change of circumstances which makes performance more difficult or more expensive should not be a bar to specific performance of a contract.").

Thus, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) Better's counterclaim for intentional interference with contractual relations (Count I) (ECF No. 81).

#### 2. Intentional Interference with Prospective Economic Relations (Count II)

To plead the tort of intentional interference with prospective economic relations, a plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's

knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). The California Supreme Court has clarified that to meet the third element, "a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself." *Id.* at 1154; *see also Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1120 (E.D. Cal. 2024), *aff'd sub nom. Republican Nat'l Comm. v. Google Inc.*, No. 24-5358, 2026 WL 125195 (9th Cir. Jan. 16, 2026). Plaintiffs also must show that "defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself." *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 19-08420-CJC(EX), 2020 WL 2510652, at *5 (C.D. Cal. Feb. 12, 2020) (citing *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007)).

To the extent Better bases its claim on Counter-Defendants' allegedly defamatory statements, Better must show they can form the basis for an independent cause of action for defamation. *See id*. To assert a prima facie case for defamation in California, plaintiffs need to allege: (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false" (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999). Additionally, to prevent a defamation claim from being barred by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, counter-plaintiffs' defamation claims cannot be based on counter-defendants' statements to the Court in a motion for relief. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 541 F. Supp. 3d 1020, 1025 (C.D. Cal. 2021) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)). If Better has not sufficiently alleged facts that can form the basis for a defamation claim, Better's tortious interference with prospective economic relations claims fails for the same reason. *See Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 19-08420-CJC(EX), 2020 WL 2510652, at *5 (C.D. Cal. Feb. 12, 2020) (citing *Contemp. Servs. Corp. v. Staff Pro*

*Inc.*, 152 Cal. App. 4th 1043, 1060 (2007) (dismissing intentional interference claim because it was premised on allegedly wrongful conduct that could not serve as the basis for a defamation claim)).

Here, Better claims Counter-Defendants intentionally interfered in Better's prospective economic relationship with NEO's employees. (ECF No. 81 ¶¶ 118–125.) More specifically, Better alleges Counter-Defendants deterred NEO employees from joining Better by withholding software access and by making false and disparaging statements about Better and NEO. (*Id.* ¶ 122.)

First, Better fails to show that Counter-Defendants' withholding software access (*i.e.*, withholding NEO intranet or temporarily withholding the @neohomeloans.com email domain) forms the basis for independently wrongful conduct (*id*. ¶¶ 60–61). Nor does the Court find there to be any legal basis that Counter-Defendants' withholding of software access is wrongful. *See Korea Supply Co.*, 63 P.3d 937, 953 (Cal. 2003) ("An act is not independently wrongful merely because defendant acted with an improper motive"); *cf Norsat Int'l, Inc. v. B.I.P. Corp.*, No. 12CV674-WQH-NLS, 2014 WL 2453034, at *6 (S.D. Cal. May 30, 2014) (citing *FLIR Sys., Inc. v. Parrish,* 174 Cal.App.4th 1270, 1279 (2009)) ("'Mere possession of trade secrets by a departing employee' is not sufficient to establish misappropriation or show injury").

Second, Better fails to show that Counter-Defendants' allegedly "false and defamatory" statements form the basis for independently wrongful conduct. Most of Better's alleged false or defamatory statements cannot provide the basis for an independent cause of action for defamation because they are based on statements: (1) Counter-Defendants made as part of their complaint or motion for preliminary injunction in this Court (ECF No. 81 ¶¶ 73, 79, 80), or; (2) made by corporate officers of Luminate who are not defendants to Better's counterclaim action (*id*. ¶¶ 69, 70, 71), *cf In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1093 (C.D. Cal. 2008) ("[C]orporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the

corporation's affairs is pleaded"); or (3) are not "statement[s] of fact" (*id.* ¶¶ 71, 74), *see Maldonado*, 72 Cal.App.4th at 645 (defamation claims must be based on false statements of fact).

However, some of alleged statements by Counterclaim Defendant Reuter to industry executives at a conference in Texas—that "NEO was unprofitable" and that "NEO was the reason Celebrity had gone out of business" (ECF No. 81 ¶ 71)—are plausibly false statements of fact that could cause reputational damage, *Maldonado*, 72 Cal.App.4th at 645. Even so, Better does not allege Counter-Defendant's false statements were designed to disrupt a third-party relationship (*e.g.*, to prevent Luminate employees from working at Better)—as necessary to allege a claim for tortious interference with economic relations. *Korea Supply Co.*, 29 Cal. 4th at 1153.

Thus, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) Better's intentional interference with economic relationship cause of action (Count II) (ECF No. 81).

### 3. Negligent Interference with Prospective Economic Relations (Count III)

A plaintiff establishes the tort of negligent interference with prospective economic advantage by demonstrating: (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship. *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997).

Here, Better alleges it had a "*prospective* economic relationship with NEO's employees that offered a high probability of future economic benefit to Better in the form of mortgages originated by the NEO employees." (ECF No. 81 ¶ 127 (emphasis added).) However, California courts have held that "[a]n actual economic relationship with a third party is required, and liability cannot be premised on . . . the more speculative expectation that a potentially beneficial relationship will arise . . . in the future." *See Muddy Waters, LLC v. Superior Ct.*, 62 Cal.App.5th 905, 926 (2021) (citing *Sole Energy Co. v. Petrominerals Corp.* 128 Cal.App.4th 212, 243 (2005)). Since Better fails to allege any actual existing economic relationship between itself and NEO employees, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) Better's negligent interference with economic relationship cause of action (Count III) (ECF No. 81).

### C. California Penal Code § 502 (Count IV)

California's Comprehensive Computer Data and Access Fraud Act ("CDAFA"), California Penal Code § 502, creates a private cause of action against defendants who accessed plaintiffs' computer systems and used software to record plaintiffs' conversations without permission. *See* Cal. Penal Code §§ 502(c)(2) (prohibits making unauthorized copies of data from computer without permission), (c)(7) (prohibits unauthorized access to computer network), (c)(8) (prohibits unauthorized introduction of any "computer contaminant," defined in § 502(b)(12) as "set of computer instructions that are designed to . . . record," to a computer network). To bring a CDAFA claim, a private owner of data must adequately allege that she "suffer[ed] *damage or loss* by reason of a violation of" CDAFA. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1044 (N.D. Cal. 2021) (citing Cal. Penal Code § 502(e)(1)).

Here, Better alleges Counter-Defendants Pelham and Luminate "used the Teramind spy software to monitor and record communications between Better and NEO employees [who were working with Luminate at the time]" without Better's consent. (ECF No. 81 ¶ 137.) Better further alleges it was damaged because it expended "employee time and

money" in an investigation to "determine the extent of the material accessed by Luminate through its recordings of Better employees' meetings with NEO employees" as a result. (*Id.* ¶ 143.)

Regardless of whether the recording qualifies as an unauthorized "access" prohibited by the CDAFA, the Court finds Better has not pled any damage or loss as a result of the alleged CDAFA violation. The CDAFA, § 502(e)(1), allows compensatory damages for "any expenditure reasonably and necessarily incurred" by the computer owner "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted" by unlawful access. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846–47 (N.D. Cal. 2024). As alleged, Better's investigative costs cannot qualify as damages under the CDAFA. *See Google LLC*, 741 F. Supp. 3d at 847 (dismissing plaintiff's CDAFA claim under § 502(e)(1) where plaintiff's "conclusory allegation that they expended time and resources to investigate Google's conduct" does not demonstrate that the investigation's purpose was to "verify that their data was or was not altered, damaged, or deleted.").

The Court, thus, **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) Better's California Penal Code § 502 cause of action (Count IV) (ECF No. 81).

### D. Invasion of Privacy, California Penal Code § 632 (Count V)

Better also brings a cause of action for violation of the California Invasion of Privacy Act, California Penal Code § 632(a) ("CIPA § 632(a)") (Count V) for Counter-Defendants' alleged recordings of their Zoom calls and "other communications." (ECF No. 81 ¶¶ 145–152.) CIPA § 632(a) prohibits the making of a recording without the consent of all parties. *Safari Club Int'l v. Rudolph*, No. SACV131989JVSANX, 2014 WL 12577408, at *5 (C.D. Cal. May 14, 2014). The three elements of a CIPA § 632(a) claim include: "(1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent." *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (citing *Flanagan v. Flanagan*, 27 Cal.4th 766, 774–76 (2002)).

First, Better has adequately pled Counter-Defendants Pelham and Luminate electronically recorded the conversation, meeting the first element of a CIPA § 632(a) claim. (ECF No. 81 ¶¶ 148–149.)

Next, to demonstrate that the communications at issue are confidential under the second element of CIPA § 632(a), Better must show it "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022) (citing *Flanagan*, 27 Cal. 4th at 777). To establish confidential communications, Better must demonstrate—despite that the Zoom calls at issue were conducted on employer computers and over the internet—it is still entitled to an objectively reasonable expectation of privacy. *See Doe v. City & Cnty. of San Francisco*, 835 F. Supp. 2d 762, 769 (N.D. Cal. 2011) (citing *TBG Ins. Services Corp. v. Sup. Ct.,* 96 Cal.App.4th 443, 452 (2002)) ("[T]he use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to the use of his employer's computers"); *see also Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (citing and collecting authorities)(California courts have developed a presumption that Internet communications do not reasonably give rise to the reasonable expectation of privacy); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022)(plaintiff must demonstrate "something unique about these particular internet communications which justify departing from the presumption.")

Better claims the Zoom calls (and the "other communications") discussed in Count V are nonetheless confidential communications because: (1) they took place among a small group of people, (2) they were related to the development of a business venture among participants, and (3) they involved "sensitive" information like "market data and business strategy." (*See* ECF No. 93 at 28:20-29-4.) Courts have found similar circumstances to those alleged by Better can provide the basis for finding an objectively reasonable expectation of privacy. *See e.g., Williams v. United Airlines, Inc.*, No. C 19-02988 WHA, 2021 WL 77932, at *4 (N.D. Cal. Jan. 8, 2021) (citing *United States v. McIntyre*, 582 F.2d

1221, 1223 (9th Cir. 1978)) (meetings with limited participants); *see also Akopian v. VW Credit, Inc.*, No. 2:12-CV-8679-SVW-RZ, 2012 WL 12884413, at *4 (C.D. Cal. Dec. 19, 2012) (calls related to a profitable venture reasonably expected to be confined to the parties); *see also Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) (citing *Flanagan v. Flanagan,* 27 Cal.4th 766, 776–77 (2002)) (communications that include "sensitive . . . market data [and] business strategy"). Thus, the Court finds Better has sufficiently alleged that the communications at issue qualify as "confidential" communications under the second element of CIPA § 632(a).

Lastly, regarding the third element of CIPA § 632(a), Better claims it did not consent to the recording of the calls at issue. California is a two-party consent state with respect to recording private conversations, meaning it is illegal to record a conversation unless all parties (here, including Better) agree to the recording. *See Green v. City & Cnty. of San Francisco*, No. 17-CV-00607-TSH, 2021 WL 3810243, at *38 (N.D. Cal. Aug. 26, 2021), *aff'd*, No. 21-16465, 2023 WL 7211421 (9th Cir. Nov. 2, 2023) (citing CIPA § 632).

On the one hand, Better cites the Pelham Declaration[2] as the basis for its CIPA § 632(a) claim. (*See* ECF Nos. 81 ¶¶ 84-99, 145-152; 23-2.) According to the Pelham Declaration, all Luminate employees were notified by an employee handbook that their work devices were monitored by Luminate and communications may be recorded and had signed the handbook (*id.* ¶ 5). Since Better's allegations are based solely on the Pelham Declaration, the Court assumes for purposes of this order that NEO employees had used Luminate devices to converse with Better. Regardless, neither the Pelham Declaration nor Better's amended counterclaims provide that Better has signed the employee handbook, or otherwise expressly agreed to be recorded. Further, though NEO employees received notice through the handbook that conversations taking place on Luminate devices may be

---

[2] Generally, the Court in a motion to dismiss is limited to corresponding facts on the face of the complaint. However, the Court may take judicial notice of document outside complaint in the motion to dismiss when the complaint references these documents. *See Van v. Cameron*, No. 10CV1051 AJB (WVG), 2011 WL 13121345, at *1 (S.D. Cal. July 13, 2011) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005)).

recorded, neither the Pelham Declaration nor Better's amended counterclaims provide that Better was informed of the same. *See Portillo v. J.D. Mellberg Fin. of Texas, L.L.C.*, No. CV 16-9663 PA (EX), 2017 WL 11634948, at *2 (C.D. Cal. Aug. 31, 2017) ("In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system after receiving notice the communications are being intercepted."). Construing the evidence in favor of Better, the Court finds Better has sufficiently demonstrated it did not provide either explicit or implied consent to the recording of the communications at issue.

Thus, the Court **DENIES** Counter-Defendants' motion (ECF No. 84) to dismiss Better's CIPA § 632(a) cause of action (Count V) (ECF No. 81).

### E. Civil Conspiracy (Count VI)

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp.*, 869 P.2d at 457.

The fact that Better cannot bring an independent cause of action for conspiracy is alone, sufficient grounds for dismissing Better's claims with prejudice. *See Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 588 (9th Cir. 2020) (finding the same); *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) (finding the same); *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406, at *23 (S.D. Cal. Mar. 26, 2020) (finding the same).

Even if Better had brought its civil conspiracy claim as part of the other claims it "incorporates" into its civil conspiracy cause of action in its amended counterclaims (ECF No. 81 ¶ 153), the Court has also dismissed those claims above. *See e.g., Krisel v. Contempo Homes, Inc.,* 2006 WL 5668181, at *3 (C.D. Cal. Sept. 27, 2006) (dismissing the plaintiff's civil conspiracy claim "[b]ecause plaintiff has not pleaded a separate tort claim" to form the basis for the conspiracy).

Thus, the Court **GRANTS WITH PREJUDICE** Counter-Defendants' motion (ECF No. 84) to dismiss Better's civil conspiracy cause of action (Count VI) (ECF No. 81).

### F. Unfair Business Practices (Bus. & Prof. Code § 17200) (Count IX)

Better brings a cause of action for violation of Cal. Bus. & Prof. Code § 17200 ("UCL") (Count IX) (ECF No. 81). California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir.2006) (citing *Cel–Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)). The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable." *Cel–Tech Commc'ns, Inc.,* 20 Cal.4th at 180.

Here, Better alleges that Counter-Defendants' unlawful acts under the UCL include: tortious interference (Counts I, II, III); CDAFA violation (Count IV); CIPA § 632(a) violation (Count V); and Lanham Act violations (Count VII).

Given that the Court has dismissed Better's claims for Counts I, II, III and IV, the Court **GRANTS IN PART, WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss Better's UCL claims to the extent that they are based on Counts I, II, III and IV.

The Court, however, refrains from ruling on Better's UCL claim to the extent it is based on the Lanham Act claims (Count VII)—given that Counter-Defendants have not moved to dismiss Better's independent cause of action under the Lanham Act. As such, the Court **DENIES IN PART** Counter-Defendants' motion to dismiss Better's UCL claim

to the extent it is based on Count VII. Additionally, the Court **DENIES IN PART** Counter-Defendants' motion to dismiss Better's UCL claim to the extent it is based on Count V, since the Court has denied dismissal of Count V.

## IV. CONCLUSION

The Court **DENIES IN PART** and **GRANTS IN PART** Counter-Defendants' motion to dismiss (ECF No. 84) Better's amended counterclaims (ECF No. 81).

The Court **DENIES** Counter-Defendant's motion to dismiss Better's claims based on the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, to dismiss Better's CIPA § 632(a) cause of action (Count V), and to dismiss Better's UCL cause of action to the extent it's based on Count V or Counter-Defendants' Lanham Act cause of action (Count VII) or Count V.

Next, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) and **DISMISSES** Better's causes of action (ECF No. 81) for:

1. Count I: Intentional Interference with Contractual Relations (*id.* ¶¶ 112–117);
2. Count II: Intentional Interference with Economic Relations (*id.* ¶¶ 118–125);
3. Count III: Negligent Interference with Prospective Economic Relations (*id.* ¶¶ 126–133);
4. Count IV: Violation of CDAFA (*id.* ¶¶ 134–144); and
5. Count IX: Unfair Competition, to the extent Better's claims are based on Counts I–IV (*id.* ¶¶ 173–180).

For these claims, the Court **GRANTS** Better leave to amend.

Lastly, the Court **GRANTS WITH PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 84) and **DISMISSES** Better's cause of action for civil conspiracy (Count VI) (ECF No. 81).

**IT IS SO ORDERED.**

**DATED: February 26, 2026**

Hon. Cynthia Bashant, Chief Judge
United States District Court