**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUMINATE HOME LOANS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CO., *et. al*,<br><br>Defendants. | Case No. 24-cv-02251-BAS-MSB<br><br>**ORDER GRANTING IN PART, DENYING IN PART COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS AND STRIKE COUNTERCLAIMS OF SYDNEY LYNN (ECF No. 100)** |
| SYDNEY LYNN,<br><br>Counterclaimants,<br><br>v.<br><br>LUMINATE HOME LOANS, INC.,<br><br>Counterclaim Defendants. | |

Pending before the Court is a motion to dismiss (ECF No. 100) submitted by Luminate Home Loans, Inc. ("LHL"), Luminate Bank (together with LHL, "Luminate"), Nate Raich ("Raich"), and Taryn Reuter ("Reuter") (collectively, "Counter-Defendants") and to strike counterclaims submitted by Counter-Plaintiff Sydney Lynn ("Lynn"). (ECF No. 100.)

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' motion to dismiss all counterclaims and motion to strike two counterclaims. (ECF No. 100.)

- 1 -

## I.      BACKGROUND

LHL is a mortgage loan lender owned by Luminate Bank.  (ECF No. 85 ¶ 22.)  In 2022, Luminate acquired a mortgage division known as NEO Home Loans ("NEO") from a competitor, Celebrity Home Loans LLC ("Celebrity").  (*Id*. ¶¶ 2, 18.)  In mid- to late 2024, Luminate employees working at NEO began discussions with Better Mortgage Co. ("Better") about possibly transferring to Better.  (*Id*. ¶¶ 38–55.)  Reuter was allegedly aware of the possible transition to Better by July 2024.  (*Id*. ¶ 39.)

In October 2024, Luminate began terminating senior NEO employees involved in conversations to transfer NEO to Better.  (*Id*. ¶ 40.)  Prior to the termination of her own employment in December 2025, Reuter allegedly tasked Lynn with the transfer of NEO documents, such as accounting records and loan files, to Better.  (*Id*. ¶¶ 44, 50.)  The transfer of documents allegedly required Lynn to communicate and share records with former Luminate employees who were then employed by Better—which she did over Zoom virtual meetings and telephone calls.  (*Id*. ¶¶ 45, 61–68.)

Shortly after Lynn's termination, Counter-Defendants brought a lawsuit against Lynn in Nevada federal court, in part, for misappropriation of trade secrets and other proprietary information.  (*Id*. ¶ 53.)  Counter-Defendants then transferred the lawsuit against Lynn from Nevada to its action against other former Luminate employees in this Court. (ECF No. 72.)

In the present action, Lynn filed counterclaims against Counter-Defendants for the following causes of action (ECF No. 85):

1. Count I: Failure to Timely Pay All Wages Due and Owing Upon Termination (N.R.S. § 608.020) (Against all Counter-Defendants) (*id*. ¶¶ 58–66);

2. Count II: Failure to Reimburse Expenses and Losses (Cal. Lab. Code §2802) (Against all Counter-Defendants) (*id*. ¶¶ 67–74);

3. Count III: Defamation (Against all Counter-Defendants) (*id*. ¶¶ 75–82);

4. Count IV: Tortious Interference with Prospective Economic Advantage (Against all Counter-Defendants) (*id*. ¶¶ 83–88);

24cv2251

5. Count V: Fraudulent Misrepresentation (Against Luminate and Reuter) (*id*. ¶¶ 89–99);

6. Count VI: Violation of Nevada Revised Statutes §§ 200.620, 200.630, and 200.650 (Against Luminate) (*id*. ¶¶ 100–109); and

7. Count VII: Punitive Damages (*id*. ¶¶ 110–116).

Counter-Defendants moved to dismiss Lynn's claims on all counts and to strike Counts III and IV based on anti-SLAPP legislation. (ECF No. 100.) Lynn filed an opposition. (ECF No. 107.) Counter-Defendants then filed a reply. (ECF No. 113).

The Court finds it appropriate to rule on this Motion (ECF No. 100) on the papers and without oral argument. *See* S.D. Cal. CivLR 7.1.d.1.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III.    ANALYSIS

### A.    Rule 8(a)(2) Pleading Requirements for Suing Multiple Defendants

"A plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]' " *Flores v. EMC*

24cv2251

*Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).  A complaint "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).  "[A] plaintiff's allegations must 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them,' including 'what conduct is at issue.' " *Sebastian Brown Productions, LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (quoting *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014)).

Here, Counter-Defendants argue that all of Lynn's counterclaims fail because they impermissibly group all Counter-Defendants together "without identifying what alleged conduct is attributable to whom," thereby failing to satisfy the notice requirement of Rule 8(a)(2).  (ECF No. 100-1 at 20:11-12.)  Lynn counters by providing examples of where Lynn had identified Reuter's and Raich's individual conduct as the basis for its counterclaims.  (ECF No. 107 at 16:7–17:19.)

Even if Lynn did not attribute every single act underlying its counterclaims to a specific Counter-Defendant, the Court finds that Lynn's complaint does provide all Counter-Defendants with sufficient notice as to the claims asserted against them.  *See e.g.*, *Sebastian Brown Productions, LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1042 (N.D. Cal. 2015) (finding all defendants—including a corporation and its officers—had sufficient notice because plaintiff's complaint asserted that all defendants committed trademark infringement); *see also Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 18-CV-01767-JSW, 2019 WL 13117458, at *3 (N.D. Cal. Jan. 3, 2019) (finding defendants were on sufficient notice because plaintiff's complaint asserted all defendants are severally liable for the same alleged violations).  Thus, the Court **DENIES** Counter-Defendants' motion to dismiss Lynn's counterclaims on the basis that they impermissibly group Counter-Defendants together.  (ECF No. 100.)

**B.    Counts I and II: Failure to Reimburse Expenses and Losses, Cal. Lab. Code §2802 and Nev. Rev. Stat. § 608.020**

Lynn brings causes of action against Counter-Defendants for failure to pay timely wages and to reimburse expenses and losses under Nev. Rev. Stat. § 608.020 (Count I) and Cal. Lab. Code § 2802 (Count II).  (ECF No. 85 ¶¶ 58–74.)  Counter-Defendants move to dismiss Counts I and II against Luminate Bank, Raich, and Reuter since they were never Lynn's "employer" as defined by Nevada or California state labor laws.  (ECF No. 100-1 at 12:22–13:8, 15:6–16:17.)  Lynn replies in part that Luminate Bank, Raich, and Reuter's potential personal liability is a matter to be resolved at discovery.  (ECF No. 107 at 12:1-4.)  The Court considers Lynn's wage-and-hour claims against Luminate Bank and against individual Counter-Defendants (Raich and Reuter) separately.

**1.    Luminate Bank**

LHL is owned by Luminate Bank.  In deciding if a corporation functions as plaintiff's "employer" for purposes of wage-and-hour liability, federal courts consider "the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed" on a day-to-day level as the most important factor. *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 682 (9th Cir. 2009); *see also Padock v. Amazon.com, Inc.*, No. 8:24-CV-00890-FWS-JDE, 2024 WL 3275792, at *4 (C.D. Cal. July 2, 2024) (finding Whole Foods could be treated as plaintiff's employer where plaintiff physically worked at a Whole Foods store, despite Amazon's ownership of Whole Foods). Similarly, California courts often deem "centralized control of labor relations" as the most important factor in determining if a defendant corporation can be treated as a plaintiff's employer. *See Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 738 (1998).  Though "the precise contours of an employment relationship can only be established by a careful factual inquiry," specific factors that can be accounted for include "payment of salary" and "the defendant's discretion to determine the amount of compensation earned by the employee." *See Vernon v. State of California*, 116 Cal. App. 4th 114, 125 (2004).

24cv2251

Along similar lines, Nevada courts have adopted traditional tort law principles to find that "the element of control is the pivotal factor in the determination of [corporate] liability." *Cf Scialabba v. Brandise Const. Co.*, 112 Nev. 965, 969 (1996)) (holding that a construction company owed a duty of care to residents of an apartment because the company "exercised sufficient control over the premises" where an assault occurred); *cf also Bender v. Wenevada, LLC*, 549 P.3d 518 (Nev. App. 2024) (Wendy's does not owe plaintiff a duty of care for employees' off-premises behavior since that behavior is not reasonably foreseeable to Wendy's); *cf also Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 376 (1977) (subsidiary can be held liable for parent company's behavior since the "parent corporation's board of directors controlled the subsidiary in every respect.").

Here, though Lynn frequently refers to LHL and Luminate Bank together as "Luminate" in her counterclaims, Lynn has not pled any facts specifically alleging that Luminate Bank had control of the day-to-day operations in LHL—including paying or determining employee salary and reimbursements. Thus, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** Lynn's unpaid wages claims (Nev. Rev. Stat. § 608.020 and Cal. Lab. Code § 2802) against Luminate Bank **WITHOUT PREJUDICE**.[1] (ECF No. 100.)

### 2.   Raich and Reuter

In *Boucher v. Shaw*, 124 Nev. 1164, 1170 (2008), the Nevada Supreme Court held that "individual management-level corporate employees . . . cannot be held liable as employers for the unpaid wages of employees under Nevada's wage and hour laws." *Id*.; *see also Terry v. Sapphire Gentlemen's Club*, 130 Nev. 879, 885 (2014) (Nevada Supreme Court rejected treating all workers who "as a matter of economic reality . . . depend upon the business to which they render service for the opportunity to work" as employers who can be liable for unpaid wages).

---

[1] Counter-Defendants did not move to dismiss either: (1) Lynn's counterclaims against LHL for Counts I and II, or (2) the merits of Lynn's counterclaims beyond statutory standing. As such, the Court does not reach these issues.

Unlike Nevada courts, California courts have held that managerial employees can be held liable for withholding wages under the California Labor Code—defining "employer" as "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *See e.g., Martinez v. Combs*, 49 Cal. 4th 35, 63 (2010), *as modified* (June 9, 2010); *see also Usher v. White*, 64 Cal. App. 5th 883, 886 (2021) (under Cal. Lab. Code § 558.1, effective on January 1, 2016, a "natural person who is an owner, director, officer, or managing agent" of an employer may be personally liable if that person, on behalf of the employer, "violates, or causes to be violated" certain wage and hour laws as provided in the statute).

Accordingly, the Court finds Lynn lacks statutory standing to sue Counter-Defendants Raich and Reuter for her Nev. Rev. Stat. § 608.020 claims. However, for her Cal. Lab. Code § 2802 claims, Lynn does have statutory standing to sue Counter-Defendants Raich and Reuter—who Lynn alleges "exercise[d] control over [Lynn's] working conditions," *Martinez*, 49 Cal. 4th at 63, with Raich as LHL's Executive Vice President of Retail Lending (ECF No. 85 ¶ 10) and Reuter as directly overseeing Lynn's work (*id.* ¶¶ 41–48).

Thus, the Court **GRANTS** Counter-Defendants' motion and **DISMISSES** Lynn's Nev. Rev. Stat. § 608.020 counterclaims against Raich and Reuter **WITHOUT PREJUDICE**. However, the Court **DENIES** Counter-Defendants' motion to dismiss Lynn's Cal. Lab. Code § 2802 counterclaims against Raich and Reuter.[2] (ECF No. 100.)

**C.    California (Cal. Civ. Proc. Code § 425.16) and Nevada (Nev. Sev. Stat. § 41.650) Anti-SLAPP Statutes**

The California Legislature enacted the anti-SLAPP statute, California Code of Civil Procedure Section 425.16 to curtail the "disturbing increase in lawsuits brought primarily

---

[2] Counter-Defendants did not move to dismiss either: (1) Lynn's counterclaims against LHL for Counts I and II, or (2) the merits of Lynn's counterclaims beyond statutory standing. As such, the Court does not reach these issues.

24cv2251

to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Civ. Proc. Code § 425.16(a); *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1178–79 (C.D. Cal. 2006).

California's anti-SLAPP statute permits a defendant to file a "special motion to strike" to dismiss an action before trial.  Cal. Civ. Proc. Code § 425.16.[3]  Motions brought under the anti-SLAPP statute are evaluated in two steps.  *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 928–29 (C.D. Cal. 2025).  First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."  *Id*. (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)).  Second, "[t]he burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal."  *Id.*  "The plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'"  *Metabolife*, 264 F.3d at 840 (quoting *Wilcox*, 27 Cal.App.4th at 823).

Nevada's and California's anti-SLAPP statutes are similar in structure, purpose, and language and "share a near-identical structure for anti-SLAPP review."  *See Coker v. Sassone*, 432 P.3d 746, 749, 749 n.3 (Nev. 2019); *compare* Nev. Rev. Stat. §§ 41.660, 41.670 (regarding claims based upon a communication in furtherance of the right to petition or free speech in direct connection with an issue of public concern, allowing for special motions to strike and award of attorneys' fees upon prevailing on that motion), *with* Cal. Civ. Proc. Code §§ 425.16(b), 425.16(c) (same).  In fact, the Nevada legislature specifically states in its declaration regarding the plaintiff's burden of proof for anti-SLAPP special motions that the standard is the same standard required by California's statute.  Nev.

---

[3] District courts within the Ninth Circuit have permitted defendants to move to strike under anti-SLAPP protections and Rule 12(b)(6) in the same motion—as Counter-Defendants do here.  *See e.g., Youngevity Int'l Corp. v. Smith*, No. 16-CV-0704 W (JLB), 2016 WL 7626582, at *1 (S.D. Cal. June 29, 2016).

24cv2251

Rev. Stat. § 41.665. As such, the Court applies the same anti-SLAPP analysis to Counter-Defendants' requests to dismiss Lynn's defamation (ECF No. 85 ¶¶ 75–82, Count III) and tortious interference with prospective economic advantage (*id*. ¶¶ 75–82, Count IV) counterclaims on the basis they are barred by anti-SLAPP protections in both states (ECF No. 100-1 at 16:18–20:6). *See Wealthy Inc., vs. John Mulehill, et. al,* No. 23-16132, 2026 WL 544972, at *4 n. 3 (9th Cir. Feb. 25, 2026) (Mem. Disp.); *Allstate Ins. Co. v. Belsky*, No. 2:15-CV-02265-MMD-CWH, 2017 WL 7199651, at *2 (D. Nev. Mar. 31, 2017) ("Nevada's anti-SLAPP law is substantially similar to California's in both meaning and purpose, and the Nevada Supreme Court has repeatedly turned to California courts for guidance on interpreting and applying the statutes.").

### 1.    Step One of anti-SLAPP Protections

In applying the first step of the anti-SLAPP analysis, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002); *see also Omerza v. Fore Stars, Ltd*, 136 Nev. 856, 455 P.3d 841 (2020) (citing Nev. Rev. Stat. § 41.660(1))(anti-SLAPP statutes apply to "an action [that] is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern.").

"[The anti-SLAPP movant's] first task is to make a prima facie showing that each cause of action against him "aris[es] from" activity he took "in furtherance" of his right to petition or free speech." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1120 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 425.16(b)(1)); *see also Spirtos v. Yemenidjian*, 137 Nev. 711, 720, 499 P.3d 611, 620 (2021) (citing Nev. Rev. Stat. § 41.660(3)(a)) (finding the same). An act qualifies as protected activity if it is made in furtherance of one's right to petition, including if the communicative act is made in connection with an issue under consideration before a judicial body (such as the present litigation). *See* Cal. Civ. Proc. Code § 425.16(e)(1)-(4); *see also* Nev. Rev. Stat. §§ 41.637, 41.660(1).

24cv2251

Here, Counter-Defendants argue that Lynn bases her counterclaims for defamation and for tortious interference on litigation-related communications protected by anti-SLAPP statutes. (*See* ECF No. 100-1 at 18:8-17.) More specifically, Counter-Defendants state that Lynn bases these counterclaims on Luminate's allegedly "baseless claims of theft and misappropriation" in Luminate's complaint in this action; and for tortious interference on "baseless legal threats" and "use[] [of] the judicial system to punish Ms. Lynn." (*See id*.) Lynn contests instead that her counterclaims are based on statements that are "wholly unrelated to any of Luminate's allegations or claims in this Action"—such as Raich's statements that Lynn engaged in "unethical conduct" to third parties. (ECF No. 107 at 13:14-25.)

To the extent Lynn's counterclaims are based on Raich's statements (as Luminate's agent) that Lynn engaged in unethical conduct, including that Lynn was manipulating the accounting and not reporting all revenue to branch leaders to other NEO employees (ECF No. 85 ¶ 57, 107 at 13:14–25), the Court **DENIES WITH PREJUDICE** Counter-Defendants' motion to strike for failing to meet the first step of anti-SLAPP analysis. (ECF No. 100.)

However, to the extent Lynn's counterclaims are based on Counter-Defendants' "baseless claims of theft and misappropriation" in Luminate's complaint (ECF No. 85 ¶¶ 57, 60), "baseless legal threats" (*id*. ¶ 85), "false litigation claims" (*id*. ¶ 59), or use of the "judicial system to punish Ms. Lynn for seeking partnership and employment opportunities with a different entity" (*id*. ¶ 87), Counter-Defendants have fulfilled their task of showing that Lynn's counterclaims meet the first step of the anti-SLAPP analysis. As such, the Court proceeds to the second step of anti-SLAPP analysis for Lynn's counterclaims based on these actions.

### 2.    Step Two of anti-SLAPP Protections

Under the second step of the anti-SLAPP framework, Counter-Plaintiffs bear the burden of demonstrating a probability of prevailing on the merits of their claims. "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

- 10 -

24cv2251

court should apply the Rule 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). There is no dispute that Counter-Defendants' anti-SLAPP motion targets the legal sufficiency of Lynn's remaining claims in Counts III and IV. Therefore, Lynn's remaining claims in Counts III and IV are analyzed under a 12(b)(6) standard.

### i. Count III: Defamation

"As a federal court sitting in diversity [over Plaintiff's California state law claims], '[the Court] must apply the substantive law of California, as interpreted by the California Supreme Court.' " *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013)). To assert a prima facie case for defamation in California, plaintiffs need to allege: (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false" (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999).

Regarding the second factor, the Ninth Circuit has noted that statements made by one party to a legal dispute are "less likely to be understood as a statement of fact rather than as a statement of opinion." *Info. Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir. 1995). In such a setting, "the audience may anticipate efforts by the parties to persuade others to their positions by the use of epithets, fiery rhetoric or hyperbole" so that even language that "generally might be considered as statements of fact may well assume the character of statements of opinion." *Id.* at 784. Further, a statement of opinion will not suffice to state a claim for defamation. *Avenmarg v. Humboldt Cty.*, No. 19-cv-05891-RMI, 2020 WL 4464876, at *12 (N.D. Cal. Aug. 4, 2020), *appeal dismissed*, No. 20-16716, 2020 WL 7212390 (9th Cir. Nov. 25, 2020).

Here, Lynn's defamation counterclaims based on Counter-Defendants' "baseless claims of theft and misappropriation" in Luminate's complaint (ECF No. 85 ¶¶ 57, 60), "false litigation claims" (*id*. ¶ 59), or use of the "judicial system to punish Ms. Lynn for seeking partnership and employment opportunities with a different entity" (*id*. ¶ 87)

24cv2251

constitute statements of opinion because they are based on Counter-Defendants' statements made in court as a party to this action. *Info. Control Corp.*, 611 F.2d at 784.

As such, Lynn has failed to meet her burden of demonstrating a reasonable probability of success on the merits of these claims and the Court **GRANTS** Counter-Defendants' motion to strike Lynn's defamation counterclaims to the extent it is based on those statements; and **DISMISSES** those counterclaims **WITHOUT PREJUDICE**. (ECF No. 100.)

### ii.    Count IV: Tortious Interference

To plead a tort of intentional interference with prospective economic relations in California, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). The California Supreme Court has clarified that to meet the third element, "a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself." *Id.* at 1154; *see also Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1120 (E.D. Cal. 2024), *aff'd sub nom. Republican Nat'l Comm. v. Google Inc.*, No. 24-5358, 2026 WL 125195 (9th Cir. Jan. 16, 2026). Plaintiffs also must show that "defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself." *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 19-08420-CJC(EX), 2020 WL 2510652, at *5 (C.D. Cal. Feb. 12, 2020) (citing *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007)).

Lynn brings a cause of action for tortious interference with prospective economic advantage, and alleges Counter-Defendants "intentionally interfered" with her relationship with Better and others in the mortgage industry by at least in part, "us[ing] the judicial

system to punish Lynn" and issuing "baseless legal threats" against Better and other third parties to discourage collaboration. [4]  (ECF No. 85 ¶¶ 83–88.)

Pursuing a lawsuit and threatening to sue are not standalone illegal acts, and thus, cannot provide the basis for Lynn's tortious interference counterclaim.  *Cf Weiser L. Firm PC v. Hartleib*, No. 23-55693, 2024 WL 4987351, at *4 (9th Cir. Dec. 5, 2024) (citing *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006)) ("Mere threats of future legal action between parties do not amount to abuse of process, because there is no 'misuse of the power of the court.' "); *cf also Philippine Exp. & Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1079 (Ct. App. 1990), *reh'g denied and opinion modified* (Apr. 13, 1990) (" '[A] person, generally speaking, has a perfect right to prosecute a lawsuit in good faith . . . Language can be found in many decisions that it is not an illegal threat for a person to do " 'what he has a legal right to do.' ").

Thus, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to strike (ECF No. 100) Lynn's intentional interference with economic relationship cause of action (Count IV) to the extent it's based on Counter-Defendants' "us[e of] the judicial system to punish Lynn" and "baseless legal threats" against Better and other third parties to discourage collaboration  (ECF No. 85 ¶¶ 83–88).

**D.    Count III: Remaining Issue in Defamation Counterclaim Based on Raich's Statements**

Lynn bases her defamation counterclaim, in part, on Raich's statements (as Luminate's agent) that Lynn engaged in unethical conduct, including that Lynn was manipulating the accounting and not reporting all revenue to branch leaders to other NEO employees (ECF No. 85 ¶ 57, 107 at 13:14–25). [5]  The Court finds sufficient allegations that Raich's statements were made intentionally to third parties (other NEO employees),

---

[4] The Court denied Counter-Defendants' motion to strike the other statements Lynn depends upon in asserting her defamation cause of action, *supra* § III.C.1.

[5] The Court has already dismissed Lynn's defamation counterclaim to the extent it relies upon Counter-Defendants' participation in the legal system when ruling on Counter-Defendants' motion to strike, *supra* § III.C.2.i.

- 13 -

24cv2251

were falsifiable statements of fact (Lynn either was or was not manipulating accounting or reporting revenue), were not privileged, and can cause reputational damage to Lynn. *See Maldonado*, 72 Cal.App.4th at 645. As such, the Court **DENIES** Counter-Defendants' motion to dismiss Lynn's defamation counterclaim to the extent it is based on Raich's statements above. (ECF No. 100.)

**E.    Count IV: Tortious Interference Counterclaim Based on Raich's Statements**

Lynn brings a cause of action for tortious interference with prospective economic advantage, and alleges at least in part, that Counter-Defendants "intentionally interfered" with her relationship with Better and others in the mortgage industry by spreading false defamatory statements.[6] (ECF No. 85 ¶¶ 83–88.)

To the extent Lynn bases its claim on Counter-Defendants' allegedly defamatory statements, Lynn must show they can form the basis for an independent cause of action for defamation. *See id*. Here, as discussed, the only actionable defamatory statements Lynn pled were Raich's statements to NEO employees, *supra* §§ III.C.2.i, III.D. Though Raich's statements allegedly caused reputational damage, Lynn has not identified any "actual disruption of [her] relationship [with the NEO employees hearing Raich's statements]" or "economic harm proximately caused by [Raich's statements]." *Korea Supply Co.*, 29 Cal. 4th at 1153. Further, Lynn has not specified how Raich's statements affected the terms of her employment with Better. *Id*. (requiring plaintiff to demonstrate proximate cause). As such, Raich's statements cannot provide the basis for Lynn's intentional interference with economic relations.

Thus, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 100) Lynn's intentional interference with economic relationship cause of action (Count IV) to the extent it's based on Raich's statements above (ECF No. 85).

---

[6] The Court has already dismissed Lynn's tortious interference counterclaim to the extent it relies upon Counter-Defendants' current or threatened participation in the legal system when ruling on Counter-Defendants' motion to strike, *supra* § III.C.2.ii.

24cv2251

### F. Count V: Fraudulent Misrepresentation

The elements of fraudulent misrepresentation are the same as the elements for a fraud claim. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015). Under California law, the elements of a claim for fraud are: (1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996); *Bankers Life & Cas. Co. v. Mallin*, 808 F. Supp. 3d 1062, 1076 (N.D. Cal. 2025).

Courts have found that plaintiffs have properly alleged standing for fraudulent misrepresentation claims where plaintiffs: (1) assert they were exposed to the alleged misrepresentation or assert defendants directed the misrepresentation to them; (2) relied upon the misrepresentation in making a financial decision; and (3) that reliance resulted in harm to themselves. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1006 (N.D. Cal. 2020) (finding standing where plaintiffs affirmed reading Apple's misleading advertisements prior to purchasing the iPhone XR); *Hoffman v. Goli Nutrition, Inc.*, No. 2:23-CV-06597-CAS(MAAX), 2024 WL 5482681, at *12 (C.D. Cal. Dec. 2, 2024) (declining to find standing where defendants' alleged misrepresentations were directed solely to third parties and where third parties were the only parties who suffered direct monetary damages).

Under Rule 9(b), "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Lincoln Imports Ltd., Inc. v. Weaver Flower Co.*, No. SACV 11-1098-JST ANX, 2012 WL 1048531, at *2 (C.D. Cal. Mar. 27, 2012) (citing *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)). In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written.

authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written. *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 434 (2010) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996)). A corporation is responsible for a corporate officer's fraud committed "within the scope of his employment" or "for a misleading statement made by an employee or other agent who has actual or apparent authority." *In Re ChinaCast Educ. Corp Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015). While the Rule 9(b) requirement is a federally imposed rule, "a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action." *Id.* at 1103.

Here, Lynn brings a cause of action for fraudulent misrepresentation against Luminate and Reuter. (ECF No. 85 ¶¶ 89–99.) Counter-Defendants move to dismiss Lynn's fraudulent misrepresentation counterclaim arguing: (1) Lynn does not have standing for her fraudulent misrepresentation claim; (2) Lynn fails to meet the heightened pleading standard for fraud-based claims by failing to differentiate between Luminate and Reuter (ECF No. 100-1 at 20:7–21:21); and (3) Lynn fails to plead the elements of fraudulent misrepresentation claims (ECF No. 100-1 at 27:27–30:5). Lynn replies that her counterclaim meets the elements for fraudulent misrepresentation and provides detailed accounts of "two distinct 'sets' of misrepresentations made by Luminate: (1) misrepresentations that were made to induce NEO employees, including Lynn, to join Luminate . . . and (2) misrepresentations that were made by Reuter to Lynn to induce her to remain employed by Luminate to assist with facilitating NEO's transition to Better." (ECF No. 107 at 21:7–22:21.) The Court considers each set of alleged misrepresentations separately.

### 1.    Misrepresentations to Induce Lynn Joining LHL

First, the Court finds Lynn has standing to assert a fraudulent misrepresentation claim against Luminate and Reuter for their alleged misrepresentations to induce NEO employees, including Lynn, to join Luminate. These statements were made to Lynn

24cv2251

directly, and Lynn relied upon them to make the career decision to join Luminate.  *See Anderson v. Apple Inc.*, 500 F. Supp. 3d at 1006; *Hoffman*, 2024 WL 5482681, at *12.

Next, the Court turns to whether this first set of misrepresentations meets the pleading standards in Rule 9(b).  Regarding "who" made the first set of alleged fraudulent misrepresentations, Lynn alleges that Reuter (CEO of LHL) made several misrepresentations to induce Lynn to join LHL (ECF No. 85 ¶¶ 23–30, 90).  However, Lynn also attributes various statements to Luminate without identifying any particular corporate officer as the speaker, such as guarantees of Lynn's job security.  (*Id*. ¶ 90.)  For the statements attributed to Luminate at-large, the Court finds Lynn has not met the Rule 9(b) standard.

Regarding "what" Reuter said, Lynn states that Reuter had represented that NEO would be able to continue to operate with the same degree of freedom and independence it had at Celebrity, NEO—as a separate corporate entity—would continue to own its own intellectual property assets, and that NEO could eventually purchase a "shell" of Luminate's retail loan division.  (ECF No. 85 ¶¶ 23–30.)  Reuter also allegedly "assured Ms. Lynn and the Counter-Plaintiffs that Luminate would provide the resources and support necessary to ensure NEO's success and growth."  (*Id*. ¶ 90.)  Without more detail regarding how NEO operated autonomously at Celebrity or Reuter's promises for NEO's continued autonomy, the Court finds it cannot discern whether there are sufficient allegations that Reuter's misrepresentations were fraudulent.

In addition, though Lynn states Reuter misrepresented that NEO would have the opportunity to purchase a shell of Luminate's retail loan division on "favorable terms," Lynn does not specify any detail regarding what terms were initially discussed.  (*Id*. ¶ 28.) Lynn also does not specify what "resources and support necessary to ensure NEO's success and growth" were initially promised by Reuter.  (*Id*. ¶ 90.)

As such, the Court finds Lynn has not met the Rule 9(b) standard for Reuter's alleged misrepresentation that NEO could continue to operate autonomously, that NEO would be given "resources and support necessary [for] success and growth," or that NEO's

24cv2251

opportunity to purchase a shell of Luminate's retail loan division was guaranteed to involve "favorable terms." (*Id*. ¶¶ 23–30, 90.)

Though Lynn has met the Rule 9(b) pleading standard for Reuter's statements that NEO would continue to own its own intellectual property assets and that NEO would be given an opportunity to purchase a shell of Luminate's retail mortgage division, Lynn has not alleged that these statements are indeed false misrepresentations. *See Lazar*, 12 Cal. 4th at 638; *Bankers Life & Cas. Co. v. Mallin*, 808 F. Supp. 3d at 1076.

First, Lynn has not claimed that Luminate misrepresented NEO's ownership over its intellectual property assets. Lynn states that: "NEO owns (and always has owned) its own brand and intellectual property, including the 'Neo Home Loans' trademark (for which the application was filed well before any involvement with Luminate or its affiliates), proprietary information, email domain (@neohomeloans.com), and company intranet where much of its proprietary information is stored (known as the 'NEONet')." (ECF No. 85 ¶ 19.) If NEO (as a distinct corporate entity) does still indeed own its assets, then Luminate's representation that "NEO *would* continue to own its own material" is not fraudulent. (*Id*. ¶ 34.) Second, Lynn has not pled that Luminate misrepresented that NEO would be given an opportunity to purchase Luminate's retail mortgage division. Indeed, Lynn states that NEO was granted such an opportunity. (ECF No. 85 ¶ 37.)

For the reasons above, Lynn cannot base her cause of action for fraudulent misrepresentation on Reuter's statements discussed in this section. As such, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss to the extent they seek to dismiss Lynn's fraudulent misrepresentation claims based on Counter-Defendants' statements to induce Lynn to join Luminate. (ECF No. 100.)

### 2.    Misrepresentations to Induce Lynn Staying at LHL

First, the Court finds Lynn has standing to assert a fraudulent misrepresentation claim against Luminate and Reuter for their alleged misrepresentations to induce Lynn to remain at Luminate during the alleged transfer of NEO to Better. These statements were made to Lynn directly, and Lynn relied upon them to make the career decision to remain

24cv2251

at Luminate—which resulted in a financial loss in the form of unpaid wages. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d at 1006; *Hoffman*, 2024 WL 5482681, at *12.

Next, the Court turns to whether this first set of misrepresentations meets the pleading standards in Rule 9(b). Regarding "who" made the second set of alleged fraudulent misrepresentations, Lynn alleges that Reuter (CEO of LHL) made misrepresentations to induce Lynn to stay at LHL and assist in transitioning NEO employees to Better in October 2024 (ECF No. 85 ¶¶ 90–98). More specifically, Reuter allegedly represented that "the transition of NEO employees had been planned to occur over the course of several months and that Lynn was expected to assist in the transfer of NEO branches from Luminate to Better" and that "all NEO documents, such as accounting records, loan files, and NEO's CRM, would ultimately be transferred to Better." (*Id*. ¶ 96.) Lynn stated that she relied upon Reuter's representation of Luminate's intention to facilitate a smooth transition in agreeing to continue working for Luminate during the alleged transition period. (*Id*. ¶ 97.) Lynn also alleges that Luminate "had no intention of facilitating NEO's transition from Luminate to Better." (*Id*. ¶ 98.) Based on the preceding facts, the Court finds Lynn has pled her first set of alleged misrepresentations with adequate specificity to meet the standard in Rule 9(b).

The Court also finds that Lynn has adequately pled the elements of her fraud claim for the second set of statements. Lynn has stated that Luminate did not support transitioning NEO to Better, despite falsely representing otherwise (misrepresentation with knowledge of falsity and intent to induce reliance), that she had worked at Luminate for longer than she otherwise would have in reliance upon those statements (justifiable reliance), and that she did not receive any owed wages for the time she remained at Luminate during the alleged transfer of NEO to Better (resulting damage). *See Lazar*, 12 Cal. 4th at 638; *Bankers Life & Cas. Co.*, 808 F. Supp. 3d at 1076.

Thus, the Court **DENIES** Counter-Defendants' motion to dismiss to the extent they seek to dismiss Lynn's fraudulent misrepresentation claims based on Counter-Defendants'

24cv2251

statements to induce Lynn to stay employed at Luminate throughout the alleged transition period of NEO to Luminate.  (ECF No. 100.)

### G.    Count VI: Invasion of Privacy, Nevada Revised Statutes §§ 200.620, 200.630, and 200.650

#### 1.    Nev. Rev. Stat. § 200.650

As an initial matter, Nev. Rev. Stat. § 200.650 prohibits "surreptitious intrusion upon **<u>in-person</u>**, private conversations by means of any listening device."  *Edwards v. Juan Martinez, Inc.*, No. 2:20-CV-00570-ART-MDC, 2026 WL 242345, at *6 (D. Nev. Jan. 28, 2026) (citing *Lane v. Allstate Ins. Co.*, 969 P.2d 938, 940 (Nev. 1998)) (emphasis added).  Since the conversations that were allegedly recorded took place over Zoom or telephone (ECF No. 85 ¶ 102), rather than in-person, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss Lynn's Nev. Rev. Stat. § 200.650 counterclaim. (ECF No. 100.)

#### 2.    Nev. Rev. Stat. §§ 200.620–.630

Next, the Nevada Supreme Court explicitly held that Nev. Rev. Stat. § 200.620 prohibits the recording of telephone calls unless both parties consent to the recording.  *See Edwards v. Juan Martinez, Inc.*, No. 2:20-CV-00570-ART-MDC, 2026 WL 242345, at *6 (D. Nev. Jan. 28, 2026) (citing *Ditech Fin. LLC v. Buckles*, 401 P.3d 215, 217 (Nev. 2017)). In addition, Nevada courts have found that the protections in the Nevada Wiretap Act, including Nev. Rev. Stat. § 200.630, mirror the federal Wiretap Act which "prohibits the interception, disclosure, or use in court of oral communications obtained in violation of the Act."  *Pyankovska v. Abid*, No. 2:16-CV-2942 JCM (DJA), 2025 WL 2402012, at *3 (D. Nev. Aug. 19, 2025) (citing Nev. Rev. Stat. §§ 200.620–.690).

However, federal courts have interpreted Nevada law to mean that, so long as the recording was "intercepted" in a jurisdiction that permits one-party consent, the recording and any evidence derived from that recording is admissible in any action or proceeding. *Andrews v. Raphaelson*, No. 2:06-CV-0209-RCJ-GWF, 2007 WL 9724912, at *5–6 (D. Nev. May 4, 2007).  Further, an "interception" occurs where the "tapped phone is located"

24cv2251

and where the individual overhears the call.  *Id*. (citing *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006)).

Here, Lynn alleges that Luminate had recorded telephone calls and Zoom conversations between Lynn, Better, and non-parties (ECF No. 85 ¶ 102) by having its Executive Vice President for IT and Security, Mike Pelham, deploy recording software. Lynn cites Pelham's court declaration as providing the factual basis for her wiretapping and invasion of privacy counterclaim.  (ECF No. 85 ¶ 62 (citing ECF No. 23-2).)  In his declaration, Pelham makes clear that: (1) all Luminate employees signed an employee handbook at the beginning of their employment, which states that "the company reserves the right to monitor, intercept, and/or review all data transmitted, received, or downloaded over Company IT resources" (*id*. ¶ 5); and (2) all of the telephone and Zoom conversations involving Lynn took place between Lynn and either current or former Luminate employees (*id*. ¶¶ 17, 19, 20).

Based on Lynn's counterclaims, there are three possible states where the "interception" could have taken place: Nevada, California, or Minnesota.  (ECF No. 85 ¶¶ 7, 8).  Without deciding which state's wiretapping laws ultimately apply given that Lynn has not explicitly alleged where the "interception" took place, the Court evaluates whether Lynn and her conversation partners adequately consented to Luminate's recording under all three states' laws.

Since Lynn's allegations are allegedly based solely on Pelham's declaration, the Court assumes for purposes of this order that Lynn had used Luminate devices to converse with others; and that Lynn and her conversation partners had consented to having their conversations recorded by Luminate.  Under Nevada, California, or Minnesota state wiretapping laws, all parties to Lynn's conversations consented to Luminate's recording by proceeding to talk on Luminate devices and networks, even after receiving notice of possible recording via Luminate's employee handbook.  *See Troyer v. The Yerba Mate Co., LLC,* No. 20-06065-WHA, 2021 WL 2662109, at *10 (N.D. Cal. June 29, 2021) (employee did not have reasonable expectation of privacy under CIPA § 632 where employee had

24cv2251

some reason to suspect that the cameras in employer warehouse also recorded audio); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 886 (2023) (plaintiff did not have reasonable expectation of privacy where cardmember agreement contained disclosures of recording calls); *cf Levin v. Red Rock Fin. Servs., LLC*, 133 Nev. 1043 (Nev. App. 2017) (finding sufficient consent existed for recording under Nev. Rev. Stat. § 200.620 where plaintiff continued to speak on the phone after hearing a pre-recorded message announcing call would be recorded); *cf also Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 453–54 (1998) ("[H]andbooks and statements of policy or procedures received by an employee at or shortly after beginning employment can be viewed as setting forth all or a portion of the contract of employment between the employer and employee."); *cf also Koenig v. Koenig*, No. A12-2282, 2013 WL 4711195, at *4 (Minn. Ct. App. Sept. 3, 2013) (citing *Rakas v. Illinois,* 439 U.S. 128, 143 (1978) ("Michael was recording on corporation property, and therefore Arnold and Andrea did not have a 'legitimate expectation of privacy in the premises [they were] using.'")).

In sum, regardless of which states' laws apply here and in lieu of evidence Lynn or her conversants took additional measures to secure the privacy of her recorded conversations, the Court finds that all parties consented to the recordings at issue. So, the Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss Lynn's Nev. Rev. Stat. §§ 200.620–.630 counterclaims. (ECF No. 100.)

### H.    Count VII: Punitive Damages

A request for punitive damages is not an independent cause of action. *Ismail v. County of Orange*, 917 F.Supp.2d 1060, 1073 (C.D. Cal. 2012); *see London v. v. Sears, Roebuck & Co.*, 458 F. App'x 649, 651 (9th Cir. 2011) ("Because we affirm the district court's summary judgment dismissal, we need not consider London's claims for punitive damages."). Regardless, courts within the Ninth Circuit have refused to grant Rule 12(b)(6) requests for dismissing punitive damages on the basis that doing so would be procedurally improper. *See Glodney v. Travelers Commercial Insurance Company*, 2020 WL 5015272, *3 (C.D. Cal. Mar. 11, 2020) ("In the absence of any controlling precedent

on the question, this Court concludes that there is no obvious reason why allegations in support of punitive damages would not be subject to the same pleading requirements as the Complaint generally."); *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 (N.D. Cal. 2018) (the "proper procedural mechanism for challenging punitive damages" is a Rule 12(b)(6) motion)); *Vera v. Walmart, Inc.*, No. EDCV 22-751 JGB (KKX), 2022 WL 22969854, at *2 (C.D. Cal. July 28, 2022)("Dismissal of a punitive damages request at [the 12(b)(6) dismissal] stage is illogical because it places the cart before the horse.").

Moreover, if construing Lynn's request for punitive damages as part of an underlying claim, Lynn must demonstrate it can prevail on the underlying claim prior to requesting punitive damages. *See e.g., Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1050 n.5 (C.D. Cal. 2019) ("As the Court finds that the claims on which [plaintiff] seeks punitive damages have not been sufficiently pleaded, [plaintiff]'s request for punitive damages is also DISMISSED with leave to amend"); *see also Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1090 (E.D. Cal. 2018) (California civil procedure requires the party to establish a "substantial probability that the plaintiff will prevail on the claim" before being permitted to include a claim for punitive damages); *see also Roberts v. Gallagher*, No. CV-21-08255-PCT-DJH, 2024 WL 1299640, at *8 (D. Ariz. Mar. 27, 2024) ("the Court must dismiss Plaintiff's punitive damages claim against VW as "the availability of punitive damages ultimately depends on the viability of Plaintiff's underlying tort claims" and Plaintiff's underlying claims have been dismissed"); *see also Elliott v. Versa CIC, L.P.*, No. 16-CV-0288-BAS-AGS, 2019 WL 414499, at *15 n. 15 (S.D. Cal. Feb. 1, 2019) ("Without viable underlying claims, Plaintiffs have no viable request for punitive damages")

Here, Lynn seeks punitive damages (Count VII) based on the following alleged conduct by Counter-Defendants (ECF No. 85 ¶ 113):

1. Disseminating false and defamatory statements about Lynn, accusing her of improper conduct and trade secret misappropriation without factual basis;

24cv2251

2. Interfering with Lynn's lawful employment opportunities by spreading false information to harm her reputation, including statements that Lynn had manipulated the accounting and had not reported all revenue to NEO's branch leaders;

3. Improperly accessing and wiping the Lynn's computers without authorization, destroying personal and professional data;

4. Failing to pay earned wages and benefits owed to Lynn while making baseless accusations to justify their wrongful termination; and

5. Illegal recording and eavesdropping of Lynn's private telephone and virtual conversations.

First, given that Counter-Defendants currently moves to dismiss Lynn's punitive damages claim under Rule 12(b)(6), the Court may deny Counter-Defendants' request on that basis alone. *Vera*, 2022 WL 22969854, at \*2.

In addition, Lynn relies upon above conduct to provide the factual basis for the following causes of action: Nevada and California wage and hour laws (Counts I and II), defamation (Count III), intentional tortious interference with economic prospects (Count IV), and fraudulent misrepresentation (Count V), Nevada Wiretap Act (Count VI).  Given that the Court has at least partially denied Counter-Defendants' motion to dismiss Counts II, III, and V, the Court declines to rule on Lynn's request for punitive damages at this stage.

Accordingly, the Court **DENIES** Counter-Defendants' motion to dismiss Lynn's claim for punitive damages.  (ECF Nos. 100, 100-1.)

## IV.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' motion to dismiss all of Lynn's counterclaims and to strike two of Lynn's counterclaims. (ECF No. 100.)

The Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss (ECF No. 100) and **DISMISSES** Lynn's causes of action (ECF No. 85) for:

- 24 -

1. **Count I**: Failure to Timely Pay All Wages Due and Owing Upon Termination (N.R.S. § 608.020) (Against all Counter-Defendants) (ECF No. 85 ¶¶ 58–66);

2. **Count IV:** Tortious Interference with Prospective Economic Advantage (Against all Counter-Defendants) (ECF No. 85 ¶¶ 83–88); and

3. **Count VI:** Violation of Nevada Revised Statutes §§ 200.620, 200.630, and 200.650 (Against Luminate) (ECF No. 85 ¶¶ 100–109).

Regarding Counter-Defendants' motion to dismiss (ECF No. 100) the following causes of action:

4. **Count II:** Failure to Reimburse Expenses and Losses (Cal. Lab. Code §2802) (ECF No. 85 ¶¶ 67–74);

    a. The Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss Lynn's unpaid wages claims (Nev. Rev. Stat. § 608.020 and Cal. Lab. Code § 2802) against Luminate Bank; and

    b. The Court **DENIES** Counter-Defendants' motion to dismiss Lynn's Cal. Lab. Code § 2802 claims against Raich and Reuter.

5. **Count III**: Defamation (Against all Counter-Defendants) (*id*. ¶¶ 75–82);

    a. The Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss to the extent Lynn's counterclaims are based on Counter-Defendants' "baseless claims of theft and misappropriation" in Luminate's complaint (ECF No. 85 ¶¶ 57, 60), "baseless legal threats" (*id*. ¶ 85), "false litigation claims" (*id*. ¶ 59), or use of the "judicial system to punish Ms. Lynn for seeking partnership and employment opportunities with a different entity" (*id*. ¶ 87); and

    b. The Court **DENIES** Counter-Defendants' motion to dismiss Lynn's defamation counterclaim to the extent it is based on Raich's statements that Lynn engaged in unethical conduct, including that Lynn was manipulating the accounting and not reporting all revenue to branch leaders to other NEO employees.

24cv2251

6. **Count V**: Fraudulent Misrepresentation (Against Luminate and Reuter) (*id.* ¶¶ 88–99);

    a. The Court **GRANTS WITHOUT PREJUDICE** Counter-Defendants' motion to dismiss to the extent they seek to dismiss Lynn's fraudulent misrepresentation claims based on Counter-Defendants' statements to induce Lynn to join Luminate; and

    b. The Court **DENIES** Counter-Defendants' motion to dismiss to the extent they seek to dismiss Lynn's fraudulent misrepresentation claims based on Counter-Defendants' statements to induce Lynn to stay employed at Luminate throughout the alleged transition period of NEO to Luminate.

For all dismissed claims, Lynn is **GRANTED** leave to amend her counterclaims (ECF No. 85) by **April 16, 2026**.

**IT IS SO ORDERED.**

**DATED: March 26, 2026**

_____

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 26 -

24cv2251