UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINATE HOME LOANS, INC.,<br><br>                                   Plaintiff,<br><br>   v.<br><br>BETTER MORTGAGE CO., *et. al*,<br><br>                                   Defendants. | Case No. 24-cv-2251-BAS-MSB<br><br>**ORDER:**<br>  **(1) DENYING DEFENDANTS HORYANYI'S AND LEE'S MOTION TO DISMISS (ECF No. 119); AND**<br><br>  **(2) DENYING IN PART, GRANTING IN PART DEFENDANT BETTER MORTGAGE CO'S MOTIONS TO DISMISS (ECF No. 120).** |

For the reasons below, the Court **DENIES** Defendants Daniel Horanyi's ("Horanyi") and Jeanette Lee's ("Lee") motion to dismiss (ECF No. 119).  However, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Better Mortgage Co.'s ("Better") motion to dismiss (ECF No. 120).

**I.     BACKGROUND**

Plaintiff Luminate Home Loans, Inc. is a mortgage loan lender.  (ECF No. 106 ¶ 10.) In 2022, Plaintiff acquired a mortgage division known as NEO Home Loans from a struggling competitor, Celebrity Home Loans LLC ("Celebrity").  (*Id*. ¶ 12.)  To acquire

NEO Home Loans, Plaintiff entered into a contract with Celebrity to purchase all of its branches, data, and assets. (*Id*. ¶¶ 14–15.)

Horanyi had initially worked for NEO Home Loans as part of Celebrity; and after signing employment paperwork, had transitioned to working for Plaintiff as "Division President". (*Id*. ¶¶ 17, 29–46.)  Additionally, Lee joined Plaintiff and worked as a Vice President of Branch Operations as part of the NEO Home Loans division. (*Id*. ¶¶ 47–51.) Both Horanyi and Lee signed an agreement prohibiting dual employment. (*Id*. ¶¶ 37, 51.) Horanyi signed an additional agreement regarding his role as Division President. (*Id*. ¶ 38.)

Better is Plaintiff's competitor. (*Id*. ¶ 53.)  Better had allegedly solicited Plaintiff's employees and customers of the NEO Home Loans division—including Horanyi and Lee—to join Better. (Summarized at *id*. at 3:2-24.)

Horanyi and Lee moved to dismiss (ECF No. 119) the following causes of action in Plaintiff Luminate Home Loans, Inc.'s Second Amended Complaint (ECF No. 106):

1. Breach of Contract (Count I) (ECF No. 106 ¶¶ 121–130);
2. Promissory Estoppel (Count II) (ECF No. 106 ¶¶ 131–141);
3. Tortious Interference with Contractual Relations (Count VI) (ECF No. 106 ¶¶ 189–202); and
4. Trade Secrets (Counts IV, V) (ECF No. 106 ¶¶ 151–188).

Better moved to dismiss (ECF No.120) the following causes of action in Plaintiff Luminate Home Loans, Inc.'s Second Amended Complaint (ECF No. 106):

1. Trade Secrets (Counts IV, V) (ECF No. 106 ¶¶ 151–188);
2. Tortious Interference with Contractual Relations (Count VI) (ECF No. 106 ¶¶ 189–202); and
3. Unfair Competition Law (Count VII) (ECF No. 106 ¶¶ 203–218).

24cv2251

The Court considers Defendants' motions to dismiss (ECF Nos. 119, 120) below. The Court finds the matter appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II.    LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.    ANALYSIS

### A.    Breach of Contract (Count I) (Against Horanyi and Lee)

24cv2251

Plaintiff asserts a cause of action for breach of contract against Horanyi and Lee, alleging that Horanyi and Lee had breached a signed policy prohibiting dual employment as a condition of their employment with Luminate ("Dual Employment Policy") (*see* ECF No. 106-7); and that Horanyi had violated a separate employment agreement for his role as the Non-Producing Division President for the NEO Division of Luminate ("Horanyi Employment Agreement"). (ECF No. 106 ¶¶ 121–130.)

### 1. Dual Employment Policy

#### i. Whether the Dual Employment Policy is a Contract

Horanyi and Lee move to dismiss Plaintiff's breach of contract claim on the basis that the Dual Employment Policy (ECF No. 106-7) is not a contract. (ECF No. 119-1 at 9:19–12:6.) Horanyi and Lee base their dismissal on a provision of Plaintiff's employee handbook, which states:

> I understand that neither this handbook nor any other communication by a management representative or other, whether oral or written, is intended in any way to create a contract of employment. I further understand that, unless I have a written employment agreement signed by an authorized Company representative, I am employed "at-will" (to the extent permitted by law) and this handbook does not modify my "at-will" employment status.

(*See* ECF No. 106-9 at 14.) Horanyi and Lee contest that this means the Dual Employment Policy, as a written communication by a management representative, is not a contract. (ECF No. 119-1 at 9:28–10:3.) However, even if accepting that the disclaimer is binding upon Parties (which the Court previously held it was not), it only relates to the "at-will" status of Horanyi's and Lee's employment—not to conditions surrounding dual employment. As such, the employee handbook provision above would be inapplicable to interpreting the Dual Employment Policy. *See Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) ("The interpretation of a written instrument, even though it involves what might properly be called questions of fact . . . is essentially a judicial function.").

24cv2251

Thus, for the reasons above and in this Court's prior Order (ECF No. 101 at 14:20–15:16), the Court finds that Plaintiff has adequately pled that the Dual Employment Policy is a contract.

### ii. Whether Horanyi and Lee Violate the Dual Employment Policy

Next, the Court finds Plaintiff has adequately alleged that both Horanyi and Lee have violated the terms of the Dual Employment Policy. The Dual Employment Policy requires "its employees to be its employees, unless determined that the employee's other outside employment . . . does not create a prohibited conflict of interest." (ECF No. 106-7.) The Dual Employment Policy further prohibits Plaintiff's employees from "working, in any capacity, for . . . other mortgage lenders . . . or other compan[ies] that would pose a conflict of interest to the business of [Plaintiff]." (*Id*.) In addition, the Dual Employment Policy requires that all Luminate employees "disclose any and all actual *or potential* outside employment" to Plaintiff's human resources manager. (*Id*. (emphasis added).)

Here, Plaintiff has alleged that while employed at Plaintiff, Lee shared Plaintiff's proprietary financial and employee data with a competitor (Better) and conducted analyses of that data on behalf of Better. (*See e.g.,* ECF No. 106 ¶ 90.) In addition, Plaintiff has alleged that while employed at Plaintiff, Horanyi coordinated with a competitor to solicit Plaintiff's employees to transition to Better and shared Plaintiff's proprietary information (*e.g*., loan data, broker workflow) with Better. (*See e.g*., ECF Nos. 106 ¶¶ 82, 104–105; 106-14; 106-16.) Furthermore, Horanyi received a formal offer letter from Better—which Plaintiff found through its own software investigation of Horanyi's and Lee's work devices, rather than through any active disclosure by Horanyi himself. (ECF No. 106 ¶ 61.)

Horanyi and Lee have both engaged in work in some capacity for Better, another mortgage lender, while employed at Plaintiff. There is no suggestion that Plaintiff assessed whether or not Horanyi's and Lee's work for Better "create[d] a prohibited conflict of interest" (ECF No. 106-7). Therefore, their unauthorized work as alleged is a breach of

24cv2251

the plain terms of the Dual Employment Policy. Additionally, Horanyi's failure to disclose his offer letter ("potential outside employment," per ECF No. 106-7) is another ground for breach of the Dual Employment Policy.

Thus, the Court **DENIES** Horanyi's and Lee's motion to dismiss Plaintiff's breach of contract claim insofar as it relies upon their breach of the Dual Employment Policy. (ECF No. 119.)

### 2.    Horanyi Employment Agreement

Parties do not appear to dispute that the separate employment agreement Horanyi signed is a contract. (ECF No. 106 ¶¶ 121–130.) As such, the Court primarily evaluates whether Plaintiff has sufficiently alleged that Horanyi breached the employment agreement he signed. (*See* ECF No. 106-8.)

Here, the employment agreement states that as part of the terms of his employment, Horanyi has agreed that Horanyi will not disclose Plaintiff's "business methods, leads, loan programs, advertising programs, referral sources, marketing strategies, software, investor lists, and employer's documentation" to any "third party (except as [Horanyi's] duties may require) without [Plaintiff's] prior express written authorization" as part of Horanyi's employment agreement with Plaintiff. (*See* ECF Nos. 106 ¶ 40; 106-8 § 5.3.) Further, Horanyi's agreement provides that Horanyi is prohibited from soliciting employees from Plaintiff to work for another company for a period of twelve months following Horanyi's employment—except for "any individuals [Horanyi] recruited to join [Plaintiff] to work at [the NEO Home Loans Division]." (ECF Nos. 106 ¶ 41; 106-8 § 5.8.)

First, Plaintiff alleges that Horanyi has shared Plaintiff's proprietary information with Better without Plaintiff's authorization, in violation of § 5.3 of Horanyi's employment agreement with Plaintiff. (*See* ECF Nos. 106 ¶¶ 40, 82; 106-8 § 5.3.) In addition, Plaintiff alleges that Horanyi has solicited Plaintiff's "top overall producer" to join Better while employed at Plaintiff, in violation of § 5.8 of Horanyi's employment agreement with Plaintiff. (*See* ECF Nos. 106 ¶ 108; 106-8 § 5.8.) Though Plaintiff has not alleged that any of the employees Horanyi allegedly solicited or planned to solicit were originally

- 6 -

recruited by Horanyi (and thus, not subject to the non-solicitation clause in § 5.8), the Court finds Plaintiff has adequately alleged Horanyi's breach of contract to survive the motion to dismiss stage.

As such, the Court **DENIES** Horanyi's and Lee's motion to dismiss Plaintiff's breach of contract claim insofar as it relies upon Horanyi's breach of his employment agreement.  (ECF No. 119.)

**B.     Promissory Estoppel (Count II) (Against Lee)**

Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 1 P.3d 63, 66 (Cal. 2000).  The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is made, (3) the reliance is both reasonable and foreseeable, and (4) the party asserting estoppel is injured by his reliance.  *U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005).  "Under California law, the same allegations that give rise to a breach of contract claim cannot also 'give rise to a claim for promissory estoppel, as the former [is] predicated on a promise involving bargained-for consideration, while the latter is predicated on a promise predicated on reliance in lieu of such consideration.' " *JMP Securities LLP v. Altair Nanotechnologies Inc.* 880 F.Supp.2d 1029, 1040–41 (N.D. Cal. 2012) (quoting *Co-Investor, AG v. FonJax, Inc.,* C 08-01812 SBA, 2008 WL 4344581, at *3 (N.D. Cal. Sept. 22, 2008) (collecting California cases)).

Here, Plaintiff asserts a promissory estoppel claim against Defendant Lee for disclosing Plaintiff's confidential information and trade secrets to Better, contrary to the terms of the Dual Employment Policy and employee handbook—both of which Plaintiff had signed. (ECF No. 106 ¶¶ 133–134.)  Horanyi's and Lee's motion asserts that Plaintiff's promissory estoppel claim should be dismissed since Plaintiff's claim is based on: (1) the same facts as Plaintiff's breach of contract claim, and/or (2) a company handbook and

24cv2251

employee policy that are not legitimate sources of legally actionable promises against a former employee under the doctrine of promissory estoppel.  (ECF No. 119-1 at 16:16–18:16.)

The Court finds that Plaintiff is precluded from asserting a promissory estoppel claim based on Lee's alleged violation of the terms of the Dual Employment Policy, since Plaintiff has asserted a breach of contract action regarding the same.  *JMP Securities LLP*, 880 F.Supp.2d at 1040–41.  Further, the Court finds that to the extent that Plaintiff asserts a promissory estoppel claim based on Lee's alleged violation of the employee handbook's terms prohibiting violation of Plaintiff's other employment policies (*i.e.*, a violation of the Dual Employment Policy), Plaintiff's promissory estoppel claim is precluded for the same reason.  *Id*.

However, to the extent that Plaintiff's promissory estoppel claim against Lee depends on a breach of the employee handbook terms divorced from a violation of the Dual Employment Policy, the Court finds Plaintiff has sufficiently alleged a claim for promissory estoppel.  As the Court previously found, the employee handbook is not a contract but may constitute an actionable promise under the promissory estoppel doctrine.  (ECF No. 101 at 13:22–14:19, 21:21–24:6.)  The Court finds that Plaintiff alleges Lee has contradicted promises Lee made when signing the employee handbook in its second amended complaint.  For example, Plaintiff claims Lee's sharing of Plaintiff's proprietary information with Better is independently prohibited by § 9.1 of the employee handbook, which states:

> [P]rotection of confidential business information is critical to the success of Luminate Home Loans. Information about the company, its clients or employees should not be divulged to anyone other than persons who have a right to know or are authorized to receive such information.

(*See* ECF No. 106-1 ¶¶ 35, 133.)

24cv2251

As such, the Court **DENIES** Horanyi's and Lee's motion to dismiss Plaintiff's promissory estoppel claim insofar as it relies upon Lee's breach of the terms of the employee handbook.  (ECF No. 119.)

### C.    Tortious Interference with Contractual Relations (Count VI) (Against Horanyi, Lee and Better)

To state a claim for tortious interference with contractual relations, Plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal.5th 1130, 1141 (2020).

Here, Plaintiff brings a cause of action for tortious interference of contractual relations against Horanyi, Lee, and Better on grounds that Horanyi, Lee, and Better had each induced Plaintiff's employees to break their contractual obligations not to engage in outside employment by: (1) Horanyi, Lee and Better induced non-party employees to not engage in outside employment; and (2) Better induced Horanyi and Lee to breach their employment contracts with Plaintiff.  (ECF No. 106 ¶¶ 189–202.)  Defendants all move to dismiss Plaintiff's tortious interference of contractual relations claim on bases that: (1) the Dual Employment Policy (signed by all of Plaintiff's employees) is not a contract; and (2) the non-solicitation clause of Horanyi's contract is unenforceable as a matter of law.  (ECF No. 119-1 at 18:17–22:9.)

As discussed *supra* § III.A.1.i, the Court finds that the Dual Employment Policy is a contract.[1]    Additionally, Plaintiff has alleged Defendants have solicited Plaintiff's employees to perform work for Better while those employees were still working for Plaintiff in breach of the Dual Employment Policy (*see e.g.*, ECF No. 106 ¶ 196).  Thus,

---

[1] As such, the Court finds it unnecessary to reach the issue of whether the non-solicitation clause of Horanyi's contract is unenforceable as a matter of law in order to rule on Defendants' motions to dismiss.  (ECF Nos. 119, 120.)

24cv2251

for the same reasons discussed in the Court's prior order (ECF No. 101 at 24:7–25:16), the Court **DENIES** Defendants' motions to dismiss Plaintiff's tortious interference with contractual relations claims against them. (ECF Nos. 119, 120.)

### D. Trade Secrets (Counts IV, V) (Against Horanyi, Lee, and Better)

Plaintiff asserts causes of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Gen. Stat. § 3426 (Count V) (ECF No. 106 ¶¶ 166–188); and under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3) (Count IV) (ECF No. 106 ¶¶ 151–165).

To state a claim for misappropriation of trade secrets under CUTSA, a plaintiff must allege: (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret. *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231- BAS-BGS, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018) (citing *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)). A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836.

Moreover, courts have construed "ownership" of a trade secret under the CUTSA and DTSA as having a license to those trade secrets. *See e.g., Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX), 2019 WL 12521480, at *5 (C.D. Cal. Aug. 9, 2019) (quoting 18 U.S.C. § 1836) ("[T]he DTSA states that an 'owner' of a trade secret may bring a civil action . . . and defines 'owner' as 'the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed.' "); *see also BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990–91 (N.D. Cal. 2017) (holding a licensee of a trade secret, e.g., a method of manufacturing and installing pre-fabricated data, had standing to assert a misappropriation of trade secret claim under the CUTSA).

Here, Defendants move to dismiss Plaintiff's trade secret claims on the bases that Plaintiff has failed to allege ownership of the trade secrets at issue; and has not identified any trade secrets with reasonable particularity. (ECF Nos. 119-1 at 22:10-18, 120-1 at 14:15–17:18.)

24cv2251

First, for the reasons discussed in the Court's prior order, Plaintiff has sufficiently alleged the existence of trade secrets and Defendants' misappropriation of those trade secrets. (*See* ECF Nos. 106 ¶¶ 170–171, 101 at 4:15–13:2.)

Next, Plaintiff has also sufficiently alleged legal rights to the identified trade secrets to establish standing to sue for them. More specifically, Plaintiff demonstrates that Plaintiff has entered into an agreement with Celebrity to acquire the NEO Home Loans Division and to use and develop NEO-related trade secrets (ECF No. 106 ¶¶ 14-15 (citing ECF No. 106-2 § 6.5(a)) ("Seller acknowledges and agrees it would be unfair to divulge or utilize such information relating to such businesses and the Purchased Assets or goodwill related thereto in competition with [Plaintiff].") At the very least, Plaintiff's agreement with Celebrity reads as an exclusive license to use the trade secrets at issue in this dispute in commerce—and licensees of trade secrets have standing to sue for misappropriation under the DTSA and CUTSA. *See Cedars Sinai Med. Ctr.*, 2019 WL 12521480, at *5; *see also BladeRoom Grp. Ltd.*, 219 F. Supp. 3d at 990–91.

For the reasons above, the Court **DENIES** Defendants' motions to dismiss Plaintiff's trade secret causes of action under the CUTSA (Count V) and DTSA (Count IV). (ECF Nos. 119, 120.)

### E.    Unfair Competition Law (Count VII) (Against Better)

Cal. Bus. & Prof. Code §§ 17200, *et. seq.*, ("UCL") prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." To establish a violation of the UCL, a plaintiff may establish a violation under any one of these prongs. An unlawful business practice is one that is "prohibited by law, where possible sources of law are defined broadly." *Multimedia Patent Trust v. Microsoft Corp.*, 2007 WL 2696675 (S.D. Cal. September 10, 2007) (citation omitted).

Plaintiff brings a UCL cause of action against Better based on the following allegedly unlawful predicate violations: (1) the Lanham Act, 15 U.S.C. § 1125 *et seq.*, for false advertising; (2) the Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et seq*.

### 1.    Lanham Act § 43(a) False Advertising

- 11 -

"The elements of a Lanham Act § 43(a) false advertising claim [(15 U.S.C. § § 1125(a)(1)(B))] are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Longbridge Fin., LLC v. Mut. of Omaha Mortg., Inc.*, No. 24-CV-1730-DMS-VET, 2025 WL 1382866, at *4 (S.D. Cal. May 13, 2025) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

Importantly, Lanham Act and UCL claims based on alleged false advertising must meet the heightened pleading requirements of Rule 9(b). *See Okyn Holdings Inc. v. Hori (U.S.A.) Inc.*, No. 2:21-CV-09213-AB-PDX, 2022 WL 21805919, at *4 (C.D. Cal. Feb. 24, 2022) ("False advertising claims under the Lanham Act are subject to Federal Rule of Civil Procedure 9(b)'s . . . heightened pleading requirements."); *see also Albrigo v. Chobani, LLC*, No. 3:24-CV-01418-BJC-KSC, 2025 WL 1930007, at *4 (S.D. Cal. July 11, 2025) ("UCL claims must meet the heightened pleading standards of Rule 9"). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."

To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about that purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). For corporate defendants, Rule 9(b) also requires

- 12 -

24cv2251

specifying which of the corporate defendant's employees or agents made the statements and those agents' authority to speak on behalf of the defendant. *See Erde v. E. Sav. Bank, FSB*, No. CV 09-2711-VBF(SSX), 2009 WL 10673329, at *1 (C.D. Cal. June 17, 2009) (citing Rule 9(b)).

Here, Plaintiff alleges that Better "directed its agents, Luminate loan officers . . . who would later announce their resignations to join Better . . . to false[ly] advertise to Luminate customers . . . that there was a merger or acquisition of Luminate's NEO division with Better to move their business to Better." (ECF No. 106-1 ¶ 207.)

Specific examples include:

1. December 12 and 18, 2024: A "Colorado Branch Leader" who was "transitioning to Better" had "sent emails over the internet" to real estate agents representing that NEO had "merge[d]" with Better. (ECF No. 106-1 ¶ 208.)

2. January 2, 2025: A "Luminate Branch Leader" who "met in person with an Oklahoma borrower and represented that, due to a 'coming merger,' " the borrower he was required to move his application from Luminate to Better. (*Id.*)

3. January 15 and 17, 2025: A "Vermont loan originator" who "sent emails over the internet" to borrowers directing the borrowers to delay their loan application with Luminate and instead complete it with Better after the merger. (*Id.*)

4. January 17, 2025: A "transitioning employee" who "represented to the borrower in a phone call that there was an 'acquisition of NEO' by Better". (*Id.*)

As a threshold matter, the Court finds that based on the above, Plaintiff has met the Rule 9(b) pleading standard. Plaintiff has identified who made misrepresentations, what they said, when they said them, and to whom. *Cf Arakelian v. Mercedes-Benz USA, LLC*, No. CV1706240TJHRAOX, 2018 WL 6422649, at *4 (C.D. Cal. June 4, 2018) (citing

- 13 -

*Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976)) ("Deceptive representations by employees can be considered false advertisements" and satisfy the heightened pleading standards of Rule 9(b)).

Furthermore, Plaintiff has adequately alleged falsifiable statements (*i.e.*, that there is a pending merger between Plaintiff and Better), that are likely to deceive and to influence consumer decisions, and the harm that they would cause Plaintiff (*e.g.*, diversion of sales, such as the Verman loan originator directing borrowers to delay their loan application with Plaintiff and to complete it with Better instead). *See Southland Sod Farms*, 108 F.3d at 1139. Moreover, curing the deficiency from Plaintiff's previous complaint, Plaintiff has sufficiently pled that such statements have "entered interstate commerce" by demonstrating that the statements made by Better's agents took place over email and were made by Better's agents in various states.

Thus, the Court **DENIES** Better's motion to dismiss Plaintiff's UCL cause of action to the extent it depends on a violation of Lanham Act § 43(a) false advertising. (ECF No. 120.)

### 2.      Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et seq*

Plaintiff also alleges Better violated the Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et. seq*, through using Plaintiff's loan officers to knowingly initiate loans on behalf of Better while working for Plaintiff. (ECF No. 106-1 ¶ 209.)

However, there is no private cause of action under the Gramm Leach Bliley Act. *See Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1079–80 (N.D.Cal.1979); see *also Earle v. Aramark Corp.,* 2005 WL 473675 at *3 (N.D.Tex. Feb.28, 2005). As such, Plaintiff's UCL claim based on a violation of the Gramm Leach Bliley Act also cannot proceed. *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010) ("Because Plaintiff has failed to state claims for any underlying violation of state or federal law, he cannot proceed on his unfair competition law claim under § 17200.").

24cv2251

Finding this claim incurable as a matter of law, the Court **GRANTS WITH PREJUDICE** Better's motion to dismiss Plaintiff's UCL cause of action to the extent it depends on a violation of the Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et. seq.* (ECF No. 120.)

**IV.    CONCLUSION**

For the reasons above, the Court **DENIES** Horanyi's and Lee's motion to dismiss (ECF No. 119).  However, the Court **DENIES IN PART** and **GRANTS IN PART** Better's motion to dismiss (ECF No. 120).

Regarding the latter, the Court **DENIES** Better's motion to dismiss (*id*.) the following:

4. Trade Secrets (Counts IV, V) (ECF No. 106 ¶¶ 151–188);

5. Tortious Interference with Contractual Relations (Count VI) (ECF No. 106 ¶¶ 189–202); and

6. Unfair Competition Law (Count VII) (ECF No. 106 ¶¶ 203–218), to the extent Plaintiff's UCL claim is based on a violation of the Lanham Act's false advertising provisions, 15 U.S.C. § 1125(a)(1)(B).

However, the Court **GRANTS WITH PREJUDICE** Better's motion to dismiss (ECF No. 120) the following:

1. Unfair Competition Law (Count VII) (ECF No. 106 ¶¶ 203–218), to the extent Plaintiff's UCL claim is based on a violation of the Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et seq*.

Since the Court has either granted Defendants' requests to dismiss Plaintiff's claims with prejudice or denied Defendants' requests to dismiss Plaintiff's claims, Defendants must now file their Answer.  Accordingly, Defendants will be given two weeks from the date of this Order to respond to Plaintiff's Second Amended Complaint by **May 13, 2026** (ECF No. 106).

**IT IS SO ORDERED.**

**DATED: April 29, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 15 -

24cv2251