**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUMINATE HOME LOANS, INC., | Case No. 24-cv-2251-BAS-MSB |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT SYDNEY LYNN'S MOTION TO DISMISS (ECF No. 118)** |
| BETTER MORTGAGE CO., *et al.*, | |
| Defendants. | |

Presently before the Court is a motion to dismiss submitted by Defendant Sydney Lynn ("Lynn").  (ECF No. 118.)  For the reasons discussed below, the Court **DENIES** Lynn's motion to dismiss.  (*Id*.)

## I. BACKGROUND

Plaintiff is a mortgage loan lender.  In 2022, Plaintiff acquired a mortgage division known as NEO Home Loans from a struggling competitor, Celebrity Home Loans LLC ("Celebrity"). (ECF No. 112 ¶¶ 9–10.)  Over the next three years, Plaintiff made significant developments to its NEO Division following acquisition—including creating new mortgage offers and training NEO managers.  (*Id*. ¶¶ 14–18.)

Lynn was initially a manager at Celebrity, and served as Director of Finance at Luminate after making the transition from Celebrity upon Luminate's acquisition of NEO in 2022.  (*Id*. ¶ 35.)  As a condition of her at-will employment, Lynn reviewed and signed

Plaintiff's policy prohibiting dual employment. (*Id*. ¶ 43.) In early December 2024, Plaintiff terminated Lynn's employment upon discovering she was coordinating with a new retail loan company, Defendant Better Mortgage Co. ("Better"), throughout the course of her employment. (*Id*. ¶¶ 27–31.) Lynn had allegedly breached her obligations to Plaintiff by sharing Plaintiff's proprietary information with Better, and soliciting Plaintiff's employees to join Better. (*Id*. ¶¶ 27–31.)

Plaintiff filed a complaint against Lynn on December 23, 2024 in United States District Court, District of Nevada. *Luminate Home Loans, Inc. v. Lynn*, 24-cv-02403, ECF No. 1 ("*Lynn* Complaint"). By Order of Hon. Richard F. Boulware of the District Court for Nevada, this action was transferred on June 2, 2025. (24-cv-02403, ECF Doc. No. 8; 3:25-cv-02014-BAS-MSB.) ("*Lynn* Action"). On August 25, 2025, the Parties filed a joint motion seeking to consolidate the *Lynn* Action with the instant Action. (ECF No. 64.) The Court granted the joint consolidation motion on September 19, 2025. (ECF No. 72.) Lynn then filed a motion to dismiss Plaintiff's claims. (ECF No. 83.) Plaintiff filed a response. (ECF No. 99.)

After the Court granted in part and denied in part Lynn's motion to dismiss several of Plaintiff's claims (ECF No. 105), Plaintiff filed an amended complaint asserting six causes of action against Lynn, including: (1) breach of contract (Count 1), (2) promissory estoppel (Count 2), (3) breach of fiduciary duties (Count 3), (4) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), (4) misappropriation of trade secrets in violation of state law, and (5) tortious interference with contractual relations. (ECF No. 112 ¶¶ 68–134.)

The Court finds Lynn's motion to dismiss (ECF No. 118) appropriate to rule on the papers and without oral argument. *See* CivLR 7.1.d.1.

## II.   LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all

24cv2251

reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although courts accept Plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. ANALYSIS

### A. Choice of Law

For the same reasons the Court previously provided (ECF No. 105 at 4:4–6:21), the Court finds that California law (rather than Nevada law) governs common law claims in the current action.

### B. Trade Secret Claims

Plaintiff has not modified her complaint regarding trade secret claims (Counts IV and V). (*See* ECF No. 112 ¶¶ 97–126.) Lynn has not raised any novel grounds for dismissing Plaintiff's trade secret claims. (*See* ECF No. 118-1 at 15:24–16:4.) Thus, for the same reasons the Court previously denied Lynn's motion to dismiss Plaintiff's trade

24cv2251

secret claims (ECF No. 105 at 6:22–11:4), the Court **DENIES** Lynn's motion to dismiss. (ECF No. 118.)

### C. Breach of Contract

Under California law, a contract "is an agreement to do or not to do a certain thing." Cal. Civ. Code § 1549. The elements of a claim for breach of contract are: (1) existence of the contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and, (4) damages to Plaintiff therefrom. *Becerra v. Allstate Northbrook Indem. Co.*, No. 22-CV-00202-BAS-MSB, 2022 WL 2392456, at *3 (S.D. Cal. July 1, 2022) (citing *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008)); *see also Novalk, LLC v. Kinsale Ins. Co.*, No. 22-CV-0290-BAS-LR, 2025 WL 896458, at *2 (S.D. Cal. Mar. 21, 2025).

Here, Plaintiff asserts a breach of contract claim against Lynn for violating the terms of a dual employment policy that Lynn signed at the start of Lynn's employment with Plaintiff ("Dual Employment Policy") (ECF No. 112-3). (ECF No. 112 ¶ 43 (citing ECF No. 112-3)).

### 1. Existence of the Contract

Lynn moves to dismiss Plaintiff's breach of contract claim on the basis that the Dual Employment Policy (ECF No. 112-3) is not a valid contract.[1] (ECF No. 118-1 at 8:10–9:18.) Lynn bases her dismissal on a provision of Plaintiff's employee handbook, which states:

> I understand that neither this handbook nor any other communication by a management representative or other, whether oral or written, is intended in any way to create a contract of employment. I further understand that, unless I have a written employment agreement signed by an authorized Company representative, I am employed "at-will" (to the extent permitted by law) and this handbook does not modify my "at-will" employment status.

---

[1] For the reasons discussed in this Court's prior order (ECF No. 105 at 12:3-26), the Court finds that the employee handbook is not a binding contract.

24cv2251

(*See id.* (quoting ECF No. 112-3).)  Lynn contests that this means the Dual Employment Policy, as a written communication by a management representative, is not a contract. (ECF No. 118-1 at 8:10–9:18.)  However, even if accepting that the disclaimer is binding upon Parties (which the Court previously held it was not (ECF No. 105 at 12:3-26)), it only relates to the "at-will" status of Lynn's employment—not to conditions surrounding dual employment.  As such, the employee handbook provision above would be inapplicable to interpreting the Dual Employment Policy.  *See Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) ("The interpretation of a written instrument, even though it involves what might properly be called questions of fact . . .  is essentially a judicial function.").

### 2.    Breach of Dual Employment Policy Terms

The Dual Employment Policy requires "its employees to be its employees, unless determined that the employee's other outside employment . . . does not create a prohibited conflict of interest."  (ECF No. 112-3.)  The Dual Employment Policy further prohibits Plaintiff's employees from "working, in any capacity, for . . . other mortgage lenders . . . or other compan[ies] that would pose a conflict of interest to the business of [Plaintiff]." (*Id.*)   In addition, the Dual Employment Policy requires that all Luminate employees "disclose any and all actual **or potential** outside employment" to Plaintiff's human resources manager.  (*Id.* (emphasis added).)

Here, Plaintiff has alleged that while employed at Plaintiff, Lynn had created digital files and downloaded Plaintiff's proprietary data in coordination with Better in order to transfer Plaintiff's data to Better.  (ECF No. 112 ¶¶ 49–51.)  As part of these efforts, Lynn participated in calls with Better (*id.* ¶ 50), provided reports to other Plaintiff employees knowing it would be used by Better (*id.* ¶ 52), created spreadsheets to facilitate the formation of a new home loans division at Better using Plaintiff's proprietary information (*id.* ¶ 55), and downloaded flash drive information with Plaintiff's proprietary information (*e.g.*, training materials, employee roster and salary lists, business strategies) with the intent of transferring that information to Better (*id.* ¶ 56)—all while still employed with Plaintiff. Further, Plaintiff alleges that "Better either offered Lynn a job or promised her future

24cv2251

employment and compensation while she was still working for [Plaintiff]." (*Id*. ¶ 28.) Additionally, Lynn was hired by Better immediately after Plaintiff terminated her employment. (*Id*. ¶ 66.)

First, Plaintiff has not suggested that Plaintiff assessed whether Lynn's work for Better to "create[d] a prohibited conflict of interest" (ECF No. 112-3)—which renders Lynn's unauthorized work a breach of the plain terms of the Dual Employment Policy. Second, Plaintiff's allegation that Lynn had received a potential employment offer from Better and failed to disclose that offer another ground for breach of the Dual Employment Policy. (*See* ECF No. 112-3.) Further, Lynn's actions resulted in the disclosure of Plaintiff's proprietary information and in the resignation of several of Plaintiff's employees, who now work for Better. (ECF No. 112 ¶¶ 63–64.) They also resulted in monetary damages to Plaintiff in the form of wrongful reimbursements. (*Id*. ¶¶ 93–94.)

Thus, construing the evidence in favor of Plaintiff at the motion to dismiss stage, the Court hereby **DENIES** Lynn's motion to dismiss Plaintiff's breach of contract claim. (ECF No. 112.)

### D.    Promissory Estoppel

Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 1 P.3d 63, 66 (Cal. 2000). The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is made, (3) the reliance is both reasonable and foreseeable, and (4) the party asserting estoppel is injured by his reliance. *U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005). "Under California law, the same allegations that give rise to a breach of contract claim cannot also 'give rise to a claim for promissory estoppel, as the former [is] predicated on a promise involving bargained-for consideration, while the latter is predicated on a promise predicated on reliance in lieu of such consideration.' "

24cv2251

*JMP Securities LLP v. Altair Nanotechnologies Inc.* 880 F.Supp.2d 1029, 1040–41 (N.D. Cal. 2012) (quoting *Co-Investor, AG v. FonJax, Inc.,* C 08-01812 SBA, 2008 WL 4344581, at *3 (N.D. Cal. Sept. 22, 2008) (collecting California cases)).

Here, Plaintiff asserts a promissory estoppel claim against Lynn for disclosing Plaintiff's confidential information and trade secrets to Better, contrary to the terms of the Dual Employment Policy and employee handbook—both of which Plaintiff had signed. (ECF No. 112 ¶¶ 76–86.) Lynn's motion asserts that Plaintiff's promissory estoppel claim should be dismissed since Plaintiff's claim is based on: (1) the same facts as Plaintiff's breach of contract claim, and/or (2) a company handbook and employee policy that are not legitimate sources of legally actionable promises against a former employee under the doctrine of promissory estoppel. (ECF No. 118-1 at 11:11–12:20.)

The Court finds that Plaintiff is precluded from asserting a promissory estoppel claim based on Lynn's alleged violation of the terms of the Dual Employment Policy, since Plaintiff has asserted a breach of contract action regarding the same. *JMP Securities LLP*, 880 F.Supp.2d at 1040–41. Further, the Court finds that to the extent that Plaintiff asserts a promissory estoppel claim based on Lynn's alleged violation of the employee handbook's terms prohibiting violation of Plaintiff's other employment policies (*i.e.*, a violation of the Dual Employment Policy), Plaintiff's promissory estoppel claim is precluded for the same reason. *Id*.

However, to the extent that Plaintiff's promissory estoppel claim against Lynn depends on a breach of the employee handbook terms divorced from a violation of the Dual Employment Policy, the Court finds Plaintiff has sufficiently alleged a claim for promissory estoppel.

More specifically, the Court finds that Plaintiff alleges Lynn has contradicted promises Lee made when signing the employee handbook in its amended complaint. For example, Plaintiff claims Lynn's sharing of Plaintiff's proprietary information with Better is independently prohibited by § 9.1 of the employee handbook, which states:

24cv2251

> [P]rotection of confidential business information is critical to the success of Luminate Home Loans. Information about the company, its clients or employees should not be divulged to anyone other than persons who have a right to know or are authorized to receive such information.

(*See* ECF No. 112 ¶ 78.)

Though the employee handbook is not a binding contract, it may constitute an actionable promise under the promissory estoppel doctrine. *Blix St. Recs., Inc. v. Cassidy*, 191 Cal. App. 4th 39, 50 (2010) (citing rule in *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 413 (1958)) ("[E]stoppel can preclude a party from denying the existence, validity, or enforceability of what otherwise would not constitute an enforceable contract . . . [when the] party making a promise is reasonably relied upon."). Here, the Court finds Plaintiff has sufficiently alleged that Plaintiff relied upon Lynn's promise to safeguard Plaintiff's proprietary information while employing and providing a salary to Lynn. (ECF No. 112 ¶¶ 37, 44–55.)

As such, the Court **DENIES** Lynn's motion to dismiss Plaintiff's promissory estoppel claim insofar as it relies upon Lynn's breach of the terms of the employee handbook. (ECF No. 118.)

### E.    Tortious Interference of Contractual Relations

To state a claim for tortious interference of contractual relations, a plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1141 (2020).

In its complaint against Lynn, Plaintiff has alleged that all of Plaintiff's employees had signed the Dual Employment Policy—which the Court has found to be a valid contract, *supra* § III.C.1. (ECF No. 112 ¶ 128.) Plaintiff also alleges that Lynn induced Plaintiff's employees to breach the Dual Employment Policy by coordinating offers for Plaintiff's

- 8 -

employees to meet with Better. (*Id.* ¶¶ 130–131.) Lynn further involved Plaintiff's high-level managers to coordinate trips for over 50 of Plaintiff's employees to travel to Dallas and New York City; and obtained reimbursements for these trips to Plaintiff. (*Id.* ¶¶ 93–94.) Additionally, there is no suggestion that Plaintiff's employees had reported their offers of employment from Better, coordinated by Lynn.

For the reasons above, Plaintiff has adequately alleged Lynn has tortiously interfered with Plaintiff's non-party employees' contracts with Plaintiff (*i.e.*, the Dual Employment Policy). More specifically, Plaintiff adequately alleged Lynn induced Plaintiff's non-party employees to work in some capacity on behalf of Better and by offering Plaintiff's non-party employees employment with Better (which those employees do not appear to have reported). Additionally, these efforts have resulted in damages to Plaintiff—as several of Plaintiff's employees now work for Better (ECF No. 112 ¶¶ 63–64) and Plaintiff paid monetary reimbursements for Lynn's tortious recruitment efforts (*id.* ¶¶ 93–94). Accordingly, the Court finds Lynn's actions had resulted in an "actual breach or disruption" of Plaintiff's employees' signed Dual Employment Policies. *Ixchel Pharma, LLC*, 9 Cal.5th at 1141.

For the reasons above, the Court **DENIES** Lynn's motion to dismiss Plaintiff's claims for tortious interference. (ECF No. 118.)

## V.    CONCLUSION

For the reasons discussed herein, the Court **DENIES** Lynn's motion to dismiss Plaintiff's amended complaint. (ECF No. 118.)

Since the Court has denied Lynn's motion to dismiss (*id.*), Lynn must now file her Answer. Accordingly, Defendants will be given two weeks from the date of this Order to respond to Plaintiff's amended complaint by **May 13, 2026**.

**IT IS SO ORDERED.**

**DATED: April 29, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 9 -

24cv2251